**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

REGINALD BYRON CLEMONS,           )
                                  )
            Plaintiffs,           )
                                  )
      v.                          )          No. 4:22-CV-00158 SRW
                                  )
MICHELLE BASHAM, et al.,          )
                                  )
            Defendants.           )

## <u>MEMORANDUM AND ORDER</u>

Self-represented Plaintiff Reginald Byron Clemons filed this civil action under 42 U.S.C. § 1983, alleging violations of his right to the free exercise of religion and rights to be free from excessive force, retaliation, and deliberately indifferent medical care.  This matter is now before the Court on Plaintiff's motion to file an amended complaint out of time (ECF No. 11) and motion to supplement the record (ECF No. 12).  As discussed herein, the Court will grant both of Plaintiff's motions.  However, as the Court warned Plaintiff in its April 27, 2022, Order, the allegations of the amended complaint must be reviewed under 28 U.S.C. § 1915(e)(2).  *See* ECF No. 9 at 9. Based on such review, the Court finds that all of Plaintiff's claims are subject to dismissal for failure to state a claim except for his excessive force claim brought against defendant Carl Miller in his individual capacity.  The Court will direct the Clerk of Court to issue process as to defendant Hart on this claim only.

### Background and Pending Motions

On April 27, 2022, the Court granted Plaintiff's request to proceed *in forma pauperis* in this matter and ordered him to file an amended complaint by May 26, 2022, in an attempt to cure

pleading deficiencies in his original complaint.[1]  ECF No. 9.  On June 13, 2022, the Court received

Plaintiff's motion for an extension of time to file an amended complaint.  ECF No. 11.  Plaintiff

attached an amended complaint and over a hundred pages of exhibits to the motion.  *See* ECF Nos.

11-1 & 11-2.  Plaintiff explained his tardiness as "excusable neglect due to postal delays."  ECF

No. 11 at 1.  For good cause shown, the Court will grant Plaintiff's motion for an extension of time

and direct the Clerk of Court to detach and docket the amended complaint in this matter.

On July 13, 2022, Plaintiff filed a motion to supplement the amended complaint with a list

of his past cases before the Court.  ECF No. 12.  The motion to supplement will be granted.  The

Court will consider the amended complaint and supplement upon review of this matter under 28

U.S.C. § 1915(e)(2)(B).

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis*

if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or

seeks monetary relief against a defendant who is immune from such relief.  When reviewing a

complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-

pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes

the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520

(1972).  A "liberal construction" means that if the essence of an allegation is discernible, the district

court should construe the plaintiff's complaint in a way that permits the claim to be considered

within the proper legal framework.  *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015).

However, even self-represented plaintiffs are required to allege facts which, if true, state a claim

---

[1] The Court provided a detailed account of the procedural background of this case in its Order dated April 27, 2022.  *See* ECF No. 9 at 1-2.  As such, only background relevant to the issues now before the Court will be discussed in this Order.

for relief as a matter of law.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct."  *Id.* at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  *Id.* at 679.

### Amended Complaint and Supplement

Plaintiff[2] is a convicted and sentenced Missouri state prisoner.  ECF No. 11-1 at 2.  He is currently confined at Jefferson City Correctional Center, but the 42 U.S.C. § 1983 allegations of his amended complaint pertain to his time of confinement at the Eastern Reception, Diagnostic and Correctional Center (ERDCC).  *Id.*  Plaintiff names two employees of ERDCC as defendants

---

[2] When asked about "Previous Lawsuits" on the form amended complaint, Plaintiff states that he has had a case dismissed on the basis of the "three strikes rule."  *See* ECF No. 11-1 at 8.  Plaintiff then asks the Court for time "to accumulate documents and information to adequately answer this question."  *Id.*  His motion to supplement, received July 13, 2022, seems to be his supplemental response to the amended complaint, in that he provides a list of three cases he previously filed.  *See* ECF No. 12 at 1, 4.  Plaintiff also included website printouts of the orders which disposed of those three cases.  *Id.* at 6-18.

However, contrary to Plaintiff's assertion, only one of the three cases he lists in his supplement was dismissed for failure to state a claim for relief.  Therefore, only one of these cases counts as a strike under the Prison Litigation Reform Act's three-strike rule, 28 U.S.C. § 1915(g).  *See Clemons v. Lombardi*, No. 4:11-cv-1629-RWS, ECF No. 6 (E.D. Mo. Sept. 28, 2011) (dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)).  As such, Plaintiff is not subject to the filing fee restrictions imposed by the three-strikes rule.

in this matter: Michelle Basham (lieutenant/shift commander) and Carl Hart (corrections security sergeant).[3]  *Id.* at 2-3.  Both defendants are named in both their individual and official capacities. *Id.*

Plaintiff is Muslim and a follower of the Islamic faith.  ECF No. 11-2 at 3.  By way of background for his claims, Plaintiff explains certain tenants or guidelines of his faith and how he tries to follow them while incarcerated.  *Id.* at 3-4.  He describes that there are "levels of stages and degrees to prayers that are superior."  *Id.* at 12.  For example, there are preferred places and methods for prayer.  Muslims are not supposed to pray near "where one uses the restroom" and praying by oneself "is a lesser form of worship than praying with three or more believers."  *Id.* at 3.  In addition, Muslims pray in cycles of "two, three or four rakats" and once prayer is initiated, it should not stop until the prayer cycle is complete.  *Id.* at 4.  According to Plaintiff, prayer "is the most important part of the Islamic Faith and central to the Islamic practice in exercising our Faith." *Id.* at 11.

Plaintiff's claims stem from a February 28, 2021, incident; however, Plaintiff never provides a clear account of exactly what happened during and after the incident.  *Id.* at 2-25.  The Court has attempted to piece together details from Plaintiff's extensive 'Statement of Claim' to understand what happened on February 28, 2021.  *Id.* at 2-25.  As best the Court can determine, Plaintiff and other Muslim prisoners were "peacefully" praying in the open living area of Plaintiff's honor-dorm prison wing at ERDCC on the evening of February 28, when he was attacked with mace.  *Id.* at 2, 4-5, 8.  The attacker was defendant Carl Hart, along with the

---

[3] Plaintiff's original complaint named a third defendant, Mike Miller, who is not named in the amended complaint.  *See* ECF No. 1 at 1.  As the amended complaint completely replaces the original complaint, Plaintiff has abandoned his claims against defendant Miller, who will be terminated from the case. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect").

"assistance of … coordinating officer[] in charge" defendant Lieutenant Basham.  *Id.* at 8.  Plaintiff alleges that he and other praying prisoners were not "given an opportunity to comply with Sgt. Hart's directive to submit to restraints or be maced."  *Id.* at 10.  Plaintiff asserts that Hart never gave him "a chance to submit to restraints, because there was no one behind [Plaintiff] trying to place [him] in restraints."  *Id.* at 8.  Plaintiff alleges that Hart used an "excessive amount" of pepper spray, in that a "large riot cannister" was emptied during the "chemical attack."  *Id.* at 4, 8, 15.  Plaintiff believes that Hart hoped that the praying Muslims would "retaliate or respond aggressively thereby justify[ing]" the "unprovoked" attack.  But the Muslims "showed no signs of aggression" during this "coordinated attack."  *Id.*

Plaintiff attached an ERDCC Conduct Violation Report regarding the February 2021 incident, as an exhibit[4] to his amended complaint.  *Id.* at 33.  According to defendant Hart, he was called to Plaintiff's wing "for a group of offenders who were praying and refusing to disperse from the immediate area."  Hart states that he gave "several directives" to Plaintiff "to submit to wrist restraints to which [Plaintiff] refused."  After a final warning and Plaintiff's continued refusal, Hart "applied a short burst of O/C pepper spray" to Plaintiff's face.  Additional staff then entered and helped place Plaintiff in restraints.  Hart summarized the incident as a "spontaneous use of force."  *Id.*

Plaintiff alleges that the February 2021 group prayer session was not against prison policy.  Plaintiff states that at the time of the incident, the prison chapel was closed due to the COVID-19

---

[4] In assessing whether a complaint sufficiently states a valid claim for relief, courts may consider materials that are attached to the complaint as exhibits.  *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (citations omitted); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  However, the Court notes that some of the exhibits attached to Plaintiff's amended complaint do not appear to have any connection or relevance to the allegations made in his 'Statement of Claim' and therefore will not be considered in this Order's analysis.  *See* ECF No. 11-2 at 110-12 (allegations pertaining to an April 13, 2021 incident), 113-19 (details on a May 23, 2021 incident).

-5-

pandemic so Plaintiff had been praying and holding prayer services in the living area of the prison wing for "several months … without incident." *Id.* at 2. Plaintiff was never informed, at those prior prayer sessions, that praying in the living area of the wing was not allowed. *Id.* Plaintiff explains that this living area is commonly used for group exercise and for prisoners "conducting drills together." *Id.* at 2. Plaintiff does not explicitly state that the group had permission for the February 28 group prayer session, instead he states that "permission had been granted several times prior to February 28, 2021 and after February 28, 2021, for me and the other Muslims to pray together." *Id.* at 20. Plaintiff alleges that "[n]o [ERDCC] rule exists that says prisoners are not allowed to pray outside of the chaple [sic] building." *Id.* at 17. On the other hand, Plaintiff also states that Defendant Basham told him "[a]t one point" that "prisoners are only allowed to pray in their cells." *Id.* at 2, 4. Plaintiff argues that this is not true. *Id.* at 4.

Plaintiff alleges that excessive force was used to break up the February 2021 group prayer session. Plaintiff states that since it "only takes five minutes or less for us to pray, … the only way they could have maced us that fast is if they abandoned all protocols and procedures[] for using chemical agents for a use of force" and this demonstrates that the group praying was "not given enough time to comply." *Id.* at 9-10. Plaintiff asserts further that there was no "physical threat" and as such, Hart's actions "abandoned or ignored the Use of Force protocols to minimize esculating [sic] force." *Id.* at 15.

It is unclear what happened after the February 2021 incident. Plaintiff mentions something about "transport … to medical," but he also states that all the praying prisoners were "thrown in strip cells with no medical treatment for over 16 hours of being covered with mace." *Id.* at 8, 10. As for Plaintiff, he alleges that he was placed in "seditary [sic] isolation under punitive confinement, for praying." *Id.* at 9. Apparently, there was an "emergency" meeting held in the

ERDCC chapel on the day after the incident.  It does not appear that Plaintiff attended the meeting, but he was later told that at the meeting, the ERDCC deputy warden assured Muslim prisoners "that [the February 28 incident] was [an] anomaly" and that "Muslims are allowed to pray in the wing." *Id.* at 11.  As such, Plaintiff and other Muslim prisoners resumed praying in the wing.

Two weeks after the incident, on March 13, 2021, Plaintiff was told by a nondefendant correctional officer that Plaintiff and other Muslims would need to pray in their cells and not the wing.  *Id.* at 12.  This correctional officer did not disturb the group prayer session in progress but "waited until [they] finished" and then informed them that they could not pray in that location.  *Id.* Plaintiff's cellmate informed the directing correctional officer that they had been told in a March 1st meeting that they could pray in the wing.  However, the correctional officer said that he had not been informed of that meeting and therefore he would not allow it.  Because a "prison cell is actually a bathroom or restroom with a bunk," Plaintiff felt that he was being "unreasonably ordered to pray alone in a desecrated space."  *Id.* at 12-13.  Later that day, Plaintiff's cellmate was allegedly told by an ERDCC employee in the "back offices" that "they don't care what the Warden said, they are not going to allow us to ever pray in the wing together."  *Id.* at 13-14.  Plaintiff alleges that defendant Hart was present at some point in the "staff only back offices" on that day, but there is no allegation that Hart was the person directing the prisoners to only pray in their cells and not the wing.  *Id.* at 14.  Furthermore, Plaintiff does not allege that there were any subsequent incidents where group prayer was not allowed in the living area.

The February 2021 incident was later "submitted … for investigation" at ERDCC.  *Id.* at 4, 38.  ERDCC officials found that there was no excessive use of force by Hart.  *Id.* at 40, 97. Plaintiff, however, was found guilty of a conduct violation by the Adjustment Board "based on the evidence."  *Id.* at 34.  It is unclear whether there is videotape evidence of the incident as Plaintiff

alleges both that the videotape was "destroyed, misplaced, or recorded over" but also just that it is "highly likely" that it was destroyed by Missouri Department of Corrections ("MDOC") staff.  *Id.* at 5, 8.  After the incident, Plaintiff was told that the Warden believed the Muslim prayer group was engaged in some kind of "prayer protest and that is the reason that the prayer was stopped." *Id.* at 9.

Plaintiff further alleges that the February 2021 incident constitutes a "hate crime."  *Id.* at 16.  According to Plaintiff, Hart is liable as the person who "assaulted and attacked" Plaintiff "for praying a Muslim prayer," and also because Hart was "in a supervisory position of authority" and he "broke with the protocol for the Use of Force."  *Id.*  Plaintiff states that Hart has "home-grown extremist views" and that Hart had previously espoused anti-Islamic rhetoric when he explained to the prisoners that he has "Post Traumatic Stress Disorder, because of the War when [he] was trained to kill Muslims."  *Id.* at 16, 21, 23.

Plaintiff states that defendant Lieutenant Basham "is just as responsible for Sgt. Hart's actions" because "she is the liable catalyst that initiated this attack[] when she called in, 'an officer in distress,'" and "she knew what these directives and actions for the Use of Force would call for." *Id.* at 15-16.  Plaintiff also states that Basham has "atheist beliefs" based on her "past pronouncements that she does not believe in God."  *Id.* at 21.  Plaintiff summarizes his beliefs regarding defendants as follows:

> Lt. Michelle Basham and Sgt. Carl Hart's actions and conduct were intended to advance the proliferation and implementation of the corporate confederate white supremacist agenda, to repress the freedom and liberty of all but their own, through terror, exploitation and violent attacks such as making examples of Muslims who [were] praying.

*Id.* at 22.

In terms of injuries, Plaintiff states that he has suffered the "loss of [his] First Amendment right to pray" but that he has also suffered physical and emotional injuries including: chemical burns "for over sixteen hours" to his eyes, ears, nose, and throat; bronchial tube irritation of his asthma; unwarranted punitive confinement resulting in loss of general population liberties; mental trauma triggering dissociative social disorder, post-traumatic stress, and/or depression.  ECF No. 11-1 at 4.  Plaintiff lists other injuries but doesn't explain their link to the February incident, including "loss of opportunity to participate in college programs," "loss of privileges to have access to personal property," and "traumatic fear induced upon family."  ECF No. 11-2 at 25.

Plaintiff seeks damages and injunctive relief in this suit.  *Id.* at 26.  The requested injunctive relief varies from a "refrigerator in the chapel to store religious food items" to requiring "a Muslim faith[-]based chaplain when the predominant faith of prisoners is Al-Islam."  *Id.* at 26-27.

## Discussion

Based on a careful review and liberal construction of the allegations of the amended complaint, the Court finds that all of Plaintiff's claims fail to state a claim upon which relief may be granted pursuant to 28 U.S.C. 1915(e)(2)(B)(ii), except for his individual-capacity claim against defendant Carl Hart for excessive force.  This case shall proceed on this claim alone.

Plaintiff's request for injunctive relief regarding allegedly unconstitutional activity at ERDCC is mooted by his transfer to a different facility.  Furthermore, Plaintiff's official-capacity claims fail because neither a State nor its officials acting in their official capacities are 'persons' under § 1983, and because the State is protected by immunity.  As for the remaining individual capacity claims against the two named defendants, the Court construes Plaintiff's allegations as asserting claims involving free exercise of religion, excessive force, retaliation, and deliberately indifferent medical care.  *See* ECF No. 11-2 at 24 (Plaintiff summarizes his allegations as

"religious persecution, assault, a hate crime, excessive use of force, retaliation, abuse and medical neglect by staff members of the Missouri Department of Corrections."). Many of the factual allegations asserted in the amended complaint are not directed at the two named defendants and these defendants can only be liable under § 1983 for conduct they were personally involved in. Applying the appropriate legal standards to Plaintiff's constitutional claims and assuming the facts as alleged are true, the Court finds that there are insufficient facts to support Plaintiff's claims except for his claim of excessive force against defendant Carl Hart.

As such, all of Plaintiff's claims against defendant Michelle Basham will be dismissed. In addition, Plaintiff's claims against defendant Hart for violations of his right to the free exercise of religion, and for retaliation and deliberately indifferent medical care, shall also be dismissed under 28 U.S.C. 1915(e)(2)(B)(ii).

## I.   Injunctive Relief

The allegations of Plaintiff's amended complaint stem from a February 2021 incident which occurred at ERDCC. Plaintiff is now incarcerated at Jefferson City Correctional Center. The Eighth Circuit has consistently held that a prisoner's transfer to a different facility where the alleged unlawful conduct does not exist, renders moot a prisoner's request for injunctive relief. *Hansler v. Kelley*, 783 F. App'x 639 (8th Cir. 2019) (affirming district court's ruling that claims for prospective injunctive relief became moot when prisoner transferred to another correctional facility); *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (dismissed as moot prisoner plaintiff's claim for injunctive relief to improve prison conditions because plaintiff was transferred to a different unit). *See also Small v. Wetzel*, 528 F. App'x 202, 208 (3d Cir. 2013) (prisoner-plaintiff lacks standing to bring suit for prospective relief on religious freedom claims after transfer to a different facility).

-10-

In this case, Plaintiff has been transferred to a different MDOC institution and he does allege that the same problems exist at his new facility, that transfer back to ERDCC is likely, or that his transfer out of ERDCC was for the purpose of mooting his claims. *See Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012). Plaintiff's requests for injunctive relief are moot, therefore such claims fail to state a claim for relief and will be dismissed.

## II.    Official-Capacity Claims

Plaintiff names defendants Hart and Basham in both their individual and official capacities. In an official-capacity claim against an individual, the claim is actually "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (internal citation omitted). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Defendants are both employees of the MDOC, which is a state agency. Naming a state official in his or her official capacity is the equivalent of naming the government entity that employs the official – the State itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). However, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will,* 491 U.S. at 71.

In addition, in the absence of a waiver, the Eleventh Amendment[5] bars a § 1983 suit against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998). Accordingly, Plaintiff's official-capacity claims seeking monetary damages against the defendants are barred by the Eleventh Amendment. *Andrus ex rel. Andrus v.*

---

[5] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

*Ark.*, 197 F.3d 953, 955 (8th Cir. 1999).  Because Plaintiff's official-capacity claims against the two defendants fail to state a § 1983 claim and are barred by immunity, they will be dismissed.

## III.  Constitutional Claims Against Defendants in their Individual Capacities

### A.  Free Exercise of Religion Claim

Plaintiff alleges that group prayer in the living area of his prison dorm is "protected conduct engrained in the FIRST Amendment to the United States Constitution."[6]  ECF No. 11-2 at 13.  The First Amendment provides that "Congress shall make no law ... prohibiting the free exercise [of religion]."  U.S. Const. amend. I.  The Free Exercise Clause prohibits government from enacting laws, promulgating regulations, or adopting policies that "compel affirmation of religious belief, punish the expression of religious doctrines it believes to be false, impose special disabilities on the basis of religious views or religious status, or lend its power to one or the other side in controversies over religious authority or dogma."  *Mbonyunkiza v. Beasley*, 956 F.3d 1048, 1052 (8th Cir. 2020) (internal citations omitted).

Inmates retain their First Amendment right to free exercise of religion in prison.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  However, there are limitations on those rights "in light of the needs of the penal system."  *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 982 (8th Cir. 2004).  A prison regulation infringing on an inmate's constitutional rights is valid so long as it is

---

[6] Plaintiff's amended complaint does not expressly seek relief under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") which prohibits a government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution."  42 U.S.C. § 2000cc-1(a).  However, liberally construing the allegations of the amended complaint, the Court notes that even if Plaintiff did attempt to assert a RLUIPA claim, it would be dismissed.  RLUIPA does not authorize individual capacity claims against prison officials.  *Blake v. Cooper,* 2013 WL 523710, *1 (W.D. Mo. Feb. 12, 2013).  While RLUIPA does allow official capacity claims against prison officials, it does not authorize monetary damages based on official capacity claims.  *See Van Wyhe v. Reisch*, 581 F.3d 639, 655 (8th Cir. 2009).  As such, any claims Plaintiff could bring under RLUIPA for injunctive relief would be mooted by his transfer to a different prison institution.  *Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012) (finding injunctive relief claims under RLUIPA moot where prisoner-plaintiff transferred to a new incarceration facility).

reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security. *Id.*

 In this case, Plaintiff does not name a defendant who is responsible for promulgating or adopting any prison policy that allegedly infringes Plaintiff's free exercise rights.  There are no allegations that defendants Hart or Basham were responsible for creating or promoting any prison policy regarding group prayer at ERDCC.  Furthermore, although Plaintiff cites *Turner v. Safely* in his amended complaint for the factors to consider under the reasonableness test for a regulation that impinges on an inmate's constitutional rights, Plaintiff does not state what prison regulation he is actually contesting.  ECF No. 11-2 at 18-20.

Liberally construing the amended complaint, the Court assumes that Plaintiff is contesting the prison policy stated in his ERDCC grievance responses.  That policy is as follows:

> All meetings and activities of a religious or spiritual nature shall be scheduled through the chaplain and shall be held in the chapel or other designated areas under the control and supervision of the chaplain or designee. Offenders may individually engage in private religious practice in their living quarters unless the practice poses a threat to the safety and security of the institution.

*Id.* at 96, 104-05.

Even if Plaintiff had named a defendant in this matter who was responsible for this prison policy, Plaintiff fails to allege how the policy substantially burdens his free exercise of religion. As a threshold matter, "when faced with [] a Free Exercise claim … a court must … inquire as to whether the prison has placed a 'substantial burden' on a prisoner's ability to practice his religion." *Gladson v. Iowa Dep't of Corr.*, 551 F.3d 825, 833 (8th Cir. 2009).  "If the prisoner fails to put forth sufficient evidence that his ability to practice his religion has been substantially burdened,

then the court need not apply the *Turner* test to the Free Exercise claim." *Id.*  In order for a governmental policy or action to constitute a 'substantial burden,' it:

> (1) must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs;
> (2) must meaningfully curtail a person's ability to express adherence to his or her faith; or
> (3) must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

*Id.* at 832 (numbering added and internal citations omitted).

In this case, Plaintiff puts forth little support for the assertion that the free exercise of his religion has been significantly inhibited, meaningfully curtailed, or that he has been denied opportunities to engage in group prayer.  The ERDCC policy does not prohibit Plaintiff and other Muslims from participating in group prayer sessions in the living area.  Plaintiff admits that his prayer group has prayed in the living area of his prison wing in the past without incident and that there is no prison rule prohibiting prayer outside the chapel.  After the February 2021 incident and resulting "emergency" meeting where it was "explained that Muslims are allowed to pray in the wing," Plaintiff states that his prayer group "proceeded to pray in the wing whenever the opportunity provided."  ECF No. 11-2 at 11.  Presumably, Plaintiff is alleging that the burden on his free exercise is due to the policy's requirement that group prayer must be "scheduled through the chaplain" and therefore requires advance planning and permission request.  However, Plaintiff admits that his group has been granted permission for group prayer in the living area on certain occasions before and after the February 28th incident.  Plaintiff does not allege that any of his group's requests for a prayer session were denied.

Plaintiff only describes two occasions when group prayer in the living area was curtailed. The first is the February 28, 2021 incident.  Plaintiff does not allege that his group had advance permission for a group prayer session on that date.  The second occasion was two weeks later when

a non-defendant correctional officer told Plaintiff's group that they were not allowed to pray in the living area.  However, according to Plaintiff, the correctional officer "came and stood over [them] while [they] prayed and waited until [they] finished" and then he informed them that they could not pray in that location.  ECF No. 11-2 at 12.  As such, it does not appear that the group prayer session was actually disrupted because the group was finished when the officer made the statement.

Based on a liberal construction of the amended complaint, the Court finds that Plaintiff fails to allege sufficient facts to suggest that his ability to practice his religion was substantially burdened.  *See Mbonyunkiza*, 956 F.3d at 1054 (discussing how an isolated, intermittent, or otherwise *de minimis* denial or interruption of an inmate's free exercise of religion does not substantially burden his religious belief); *see also Patel v. U.S. Bureau of Prisons,* 515 F.3d 807, 815 (8th Cir. 2008) (holding a prisoner-plaintiff must show he "has exhausted alternative means of accommodating his religious ... needs" to prove a substantial burden).  As such, Plaintiff's claims regarding violations of Free Exercise rights will be dismissed.

### B.  Excessive Force

Plaintiff alleges that defendant Hart's actions on February 28, 2021, violated the Eighth Amendment's protection against cruel and unusual punishment.  ECF No. 11-2 at 15.  Although Plaintiff does not assert that defendant Basham used excessive force on him, he alleges that Basham is also liable due to her "official authority" and as the "coordinating officer[] in charge" because she was the "Shift Commander and/or Supervisor over the whole prison" on the evening of the incident at issue.  *Id.* at 2, 8.

"[Correctional] Officers may reasonably use force in a good-faith effort to maintain or restore discipline but may not apply force maliciously and sadistically to cause harm."  *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992))

(internal quotation marks omitted).   "Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically." *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) (citing *Hudson*, 503 U.S. at 9).  The test for reasonableness or the good-faith application of force depends on the following:

> whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury.

*Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002) (citing *Hudson*, 503 U.S. at 7).

Here, Plaintiff argues that there was no objective need for force because Plaintiff was simply "peacefully" praying.  ECF No. 11-2 at 8.  Plaintiff alleges that the amount of pepper spray used by Hart – an entire large riot cannister – was excessive in light of the lack of physical resistance by the praying prisoners.  *Id.* at 15.  Plaintiff further asserts that he was not allowed time by Hart to comply with Hart's directive to submit to restraints before Hart sprayed him.  *Id.* at 8.  Finally, Plaintiff states that he suffered chemical burns to his eyes, ears, nose, and throat.  ECF No. 11-1 at 4.  Accepting the facts as true and liberally construing the amended complaint – as the Court must on initial review – the Court finds that Plaintiff has alleged sufficient facts for his excessive force claim against defendant Hart to survive review.  *See Furnace v. Sullivan*, 705 F.3d 1021 (9th Cir. 2013) (finding genuine issue of material fact as to excessive force claim where prisoner alleged that defendant used excessive quantity of pepper spray).

However, Plaintiff cannot hold defendant Basham liable simply because she held a supervisory position in the prison.  "A supervisor may not be held liable under § 1983 for the constitutional violations of a subordinate on a respondeat superior theory." *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (*citing Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995)).  "Liability

under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990).  To be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights.  *Martin*, 780 F.2d at 1338.  *See also Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (discussing how a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability).

A plaintiff may, under a theory of direct liability, maintain a claim against a prison official whose failure to train, supervise, direct, or control actions of a subordinate is such that it constitutes deliberate indifference.  *See Moyers v. Buescher*, 806 F. Supp. 218, 220 (E.D. Mo. 1992).  "[A] supervisor's liability arises if: 'he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights.'" *Tlamka*, 244 F.3d at 635 (*quoting Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996) (citations omitted)); *see also Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997).  Further, a prisoner may assert an excessive-use-of-force claim against a correctional officer who knew or had reason to know another officer was using excessive force, and who had the opportunity to intervene to prevent the excessive use of force by his fellow correctional officer, but failed to do so.  *Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012); *Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981). The question is whether the officer's inaction amounts to deliberate indifference to the inmate's health and safety.  *Buckner v. Hollins*, 983 F.2d 119, 122 (8th Cir. 1993).

Based on the allegations of the pleadings, Plaintiff claims that Basham observed his group praying in the living area, ordered them to discontinue their prayer, and then radioed in an "officer in duress" code before they could complete their prayer cycle.  ECF No. 11-2 at 51.  Plaintiff

alleges that this duress call resulted in Hart's response and excessive use of force.  *Id.* at 51-52.

Plaintiff also asserts that Basham had "enough training to establish that she knew what the[]

directives and actions for the use of force would call for." *Id.* at 16.

Plaintiff does not assert that Basham herself used excessive force but that her action of

calling for officer assistance led to the use of force by Hart.  However, Plaintiff does not allege

any failure on Basham's part in the training of ERDCC officers on use-of-force, nor does he allege

that Basham could have intervened and prevented the alleged use of force by Hart.  *See Buckner*,

983 F.2d at 122 (discussing need for some evidence upon which a reasonable jury could conclude

that defendant acted with deliberate indifference to prisoner's safety by failing to intervene in the

altercation).  Moreover, Plaintiff does not suggest that Basham's failure to intervene contributed

to or exacerbated his injuries.  *Id.*  Basham cannot be held liable for the actions of Hart and there

is no evidence to suggest that Basham knew how Hart would respond to the situation or that she

could prevent such a response.

Basham cannot be held liable under § 1983 as a supervisor and there is insufficient

evidence to support a claim of direct liability against her for excessive force.  Plaintiff's claim of

excessive force shall be dismissed as to defendant Basham and shall proceed against defendant

Hart only.

**C.  Retaliation**

Plaintiff makes an unsupported, conclusory claim of retaliation.  The only factual assertions

related to retaliation that the Court can decipher from the amended complaint are that Plaintiff

alleges he was placed in solitary confinement "under punitive confinement, for praying" and that

he received "a conduct violation for filing a Nunc Pro Tunc motion in [his] criminal case."  ECF

No. 11-2 at 9, 24.  Plaintiff seems to be asserting claims of both retaliatory discipline and retaliation for use of the grievance process.

Prison officials cannot impose a disciplinary sanction against a prisoner in retaliation for a prisoner's exercise of a constitutional right. *Goff v. Burton*, 7 F.3d 734, 738 (8th Cir. 1993).  Under the Eighth Amendment, a "prima facie case of retaliatory discipline requires a showing that: (1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline." *Meuir v. Greene Cnty. Jail Emps.*, 487 F.3d 1115, 1119 (8th Cir. 2007) (quoting *Goff*, 7 F.3d at 738).  Moreover, simply alleging that an act was retaliatory is insufficient. *Id.*

In this case, Plaintiff seems to be asserting that he was placed in segregation after the February 2021 incident as retaliation for his exercise of his constitutionality protected right to pray.  However, the facts alleged do not support such a claim.  There is no evidence indicating that the motivation for any alleged discipline[7] was Plaintiff's act of prayer.  According to defendant Hart, Plaintiff and other praying prisoners refused to comply with an order to disperse – an order given to Plaintiff's group before defendant Hart was called to the scene.  ECF No. 11-2 at 33.  Plaintiff's own allegations indicate he failed to comply with an order to disburse: "Lt. Basham issued an order for us to stop praying, saying that there is no praying allowed outside of the chapel. [ ] Before the short five minute prayer could have any chance of being completed, Lt. Basham radioed in an 'officer in duress' code[.]" *Id.* at 51-52.  Plaintiff's explanation that it is important to his Islamic faith that he complete a rakat prayer cycle once the cycle has started, seems to be his reason for

---

[7] Although Plaintiff asserts that he was initially placed in solitary confinement after the incident, it is unclear how long he remained there.  Plaintiff discusses how he and other Muslim prisoners resumed group prayer in the living area of the wing soon after the incident, and he describes a group prayer session on March 13, 2021.  ECF No. 11-2 at 11-12.  At most, Plaintiff was in solitary confinement for less than two weeks.  Also, Plaintiff states that soon after the incident, he went before a disciplinary classification board and his conduct violation was reduced to a minor violation. *Id.* at 6.

lack of compliance with the order to disperse. *Id.* at 4. In addition, Plaintiff fails to allege that his group had permission for a group prayer session in the living area on February 28, 2021, like they did on other occasions. *Id.* at 2. The evidence as put forth by Plaintiff does not suggest that he was disciplined for praying. Plaintiff's simple allegation of retaliatory discipline is not enough to state a claim.

In regard to Plaintiff's second claim of retaliation, it is true that the right to be free from retaliation for availing oneself of the grievance process is clearly established in the Eighth Circuit. *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Nelson v. Shuffman*, 603 F.3d 439, 449-50 (8th Cir. 2010)). "To succeed on [a] § 1983 retaliation claim, [Plaintiff] must prove that he engaged in protected activity and that defendants, to retaliate for the protected activity, took adverse action against [him] that would chill a person of ordinary firmness from engaging in that activity." *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007). Both filing a prison grievance and filing an inmate lawsuit are protected First Amendment activities. *Id.*

Plaintiff alleges here that he received a conduct violation for filing a motion in his criminal case. Even if this criminal-case motion could be construed as Plaintiff availing himself of the grievance process, there is no indication that the conduct violation was issued by either of the named defendants. Plaintiff does not state who issued the violation, he only mentions it in a section of the amended complaint explaining that he has suffered "victimization as a black man in America" and that "[n]o victim advocate has come to [his] aid." ECF No. 11-2 at 24. Defendants are only responsible for their own actions and cannot be held liable under § 1983 for the actions of others. *See Madewell*, 909 F.2d at 1208; *Martin*, 780 F.2d at 1338. Furthermore, there is no evidence to indicate that the receipt of a conduct violation chilled Plaintiff from filing grievances or the instant § 1983 lawsuit. *See Gonzalez v. Bendt*, 971 F.3d 742, 746 (8th Cir. 2020) (looking

to the actions taken by the plaintiff in response to the allegedly retaliatory activity to determine if a person of ordinary firmness would be discouraged from further engagement).  For all of these reasons, the Court finds that Plaintiff's amended complaint fails to state a claim of retaliation under § 1983 against either defendant.

### D.  Deliberately Indifferent Medical Care

A jail official's intentional denial of or delayed access to medical care for a prisoner's serious injury constitutes unnecessary and wanton infliction of pain, giving rise to a claim of deliberate indifference to that prisoner's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  To prevail on an Eighth Amendment claim of deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and deliberately disregarded that need.  *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019).  "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (internal quotations and citation omitted).

When a delay in treatment is alleged to have violated an inmate's constitutional rights, a court measures the objective severity of the deprivation "by reference to the *effect* of the delay in treatment."  *Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016) (internal quotation marks omitted) (quoting *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)).  To support a claim based on a delay in treatment, a plaintiff must present "verifying medical evidence" showing that the delay in treatment had detrimental effects.  *Id.* at 1119-20*; see also Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011).

In this case, Plaintiff's amended complaint has differing accounts as to what happened after he and other inmates were sprayed with pepper spray on February 28, 2021.  The Court assumes that Plaintiff's medical neglect claim is based on his statement that praying prisoners were "thrown in strip cells with no medical treatment for over 16 hours of being covered with mace."  ECF No. 11-2 at 8, 10.  But, Plaintiff does not allege that defendants Hart and Basham were responsible for Plaintiff's delayed medical care.  There is no indication that Plaintiff requested medical care from the named defendants and it was denied, nor is there any allegation that either defendant is generally responsible for medical care of ERDCC prisoners. *See Martin*, 780 F.2d at 1338. Furthermore, Plaintiff does not provide any medical evidence of any detrimental effect resulting from a 16-hour delay in care.  As such, the Court finds that Plaintiff's amended complaint fails to state a claim of deliberately indifferent medical care against any named defendant.

## Conclusion

Because Plaintiff is no longer incarcerated at ERDCC, his claims for injunctive relief related to conditions of confinement at ERDCC are moot and therefore fail to state a claim.  In addition, because claims against State employees in their official capacity are actually claims against the State itself, and the State is protected by immunity, Plaintiff's official-capacity claims also fail to state a claim upon which relief may be granted.  The facts alleged in the amended complaint are insufficient to state a substantial burden on Plaintiff's free exercise of religion, to state a claim of retaliation, or to state a claim of deliberately indifferent medical care against the two named defendants.  Plaintiff's claim of excessive force against defendant Basham is also insufficient because she cannot be held liable for the actions of others simply because she is a supervisor.  However, the Court finds that Plaintiff has alleged enough evidence for his claim of excessive force against defendant Hart to proceed.  As such, the Court will order that the Clerk of

Court issue process or cause process to issue against Carl Hart, in his individual capacity, as to Plaintiff's claim of excessive force.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for an extension of time to file an amended complaint [ECF No. 11] is **GRANTED.**  The Clerk of Court is directed to detach and docket the amended complaint and the exhibits thereto separately in this matter.

**IT IS FURTHER ORDERED** that Plaintiff's motion to supplement the amended complaint [ECF No. 12] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims for injunctive relief are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that Plaintiff's official-capacity claims against all defendants are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the amended complaint as to defendant Michelle Basham because, as to this defendant, the amended complaint fails to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).  Defendant Michelle Basham is **DISMISSED without prejudice.**

**IT IS FURTHER ORDERED** that that the Clerk shall **not** issue process or cause process to issue upon the amended complaint as to Plaintiff's claims against defendant Carl Hart for retaliation, deliberately indifferent medical care, and violation of his right to free exercise of religion.  As to these claims, the amended complaint fails to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).  Plaintiff's claims against defendant Carl Hart for retaliation, deliberately indifferent medical care, and violation of his right to free exercise of religion, are **DISMISSED without prejudice.**

-23-

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the amended complaint as to defendant Carl Hart, in his individual capacity, as to Plaintiff's claims of excessive force.  Defendant Hart shall be served with process in accordance with the waiver agreement the Court maintains with the Missouri Attorney General's Office for service on Missouri Department of Corrections Employees.

**IT IS FURTHER ORDERED** that defendant Carl Hart shall respond to the amended complaint within the time provided by the applicable provisions of the Federal Rules of Civil Procedure.

**IT IS FINALLY ORDERED** that an appeal of this partial dismissal would not be taken in good faith.

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this <u>11th</u> day of October, 2022.

_Ronnie L. White_
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**