Amended Complaint
Attachment Index
42 USC § 1983 Civil Action
Reginald Byron Clemons v. Michelle Basham, et al.,
Case No. 4:22-cv-00158-SRW

| Name Of Document: | Amended Attached Pages: |
|---|---|
| 42 USC § 1983 Civil Action Complaint Form | 1-10 |
| Attached: Statement Of Claim | 11-36 |
| Grievance Complaint No. ERDCC21-1749: | |
| Denial of Access To The Grievance Procedure | 37-41 |
| Conduct Violation For Use Of Force | 42 |
| Disciplinary: Corrective Action Report | 43-44 |
| Inter Office Communication About Prayer Being Allowed | 45-46 |
| Complaint Grievance No. ERDCC21-801: | |
| Draft Of 42 USC § 1983 filed in its entirety | 47-104 |
| Grievance Complaint No. ERDCC21-373: | |
| Against Being Assaulted, etc. For Praying And For Videos | |
| To Be Retained For Criminal And Civil Litigation | 105-108 |
| Grievance Complaint No. ERDCC21-374: | |
| Request That The Conduct Violation Be Dismissed For Lack | |
| Of Evidence Of Aggression or Resistance By Those Praying | 109-113 |
| Grievance Complaint No. ERDCC21-455 | |
| Secondary Attack Upon Prayer | 114-117 |
| Grievance Complaint No. ERDCC21-666 | |
| Retaliatory Action By Staff For Filing Complaint | 118-121 |
| Statement By: Reginald Byron Clemons | 122-128 |
| Grievance Complaint No. ERDCC21-922 | |
| Denial Of Access To Grievance Procedure | 129-131 |
| Preliminary Witness List | 132 |

Amended Page 10 (b)

## Statement Of Claim

1. On the 28th day of February 28, 2021, Corrections Officer Michelle Basham, being sued in her individual and official capacity, took personal actions using her official authority as an employee of the Missouri Department Of Corrections. Michelle Basham is or was the Shift Commander and/or Supervisor over the whole prison for the night in question or at issue. Michelle Basham entered the Housing Unit 4B Wing at the Eastern Reception Diagnostic Correctional Center, location listed above. Upon entering the wing she proceeded towards the back of the wing where I, Reginald Byron Clemons, had already started praying in the wing during open wing movement, in our living area.

2. The living area of housing unit 4B wing was assigned and designated as the Honor Dorm and not a lockdown wing where the dayroom is open to prisoners throughout the day.

3. At this time during the Corona Virus Pandemic, the Prison Chaple was closed as a part of the Missouri Department Of Correction's quarantine protocal. For several months prior to February 28, 2021, I, Reginald Clemons, the Plaintiff herein had been praying in the wing that is my designated living area and we have had several Friday prayer services in the wing without incident. At no time had anyone told us we were not allowed to pray in our living area in the wing. Several times we had been granted permission by corrections staff due to the quarantine lockdown of the prison chaple. Also, for several hours at a time, prisoners could be seen working out in group exercises in the wing conducting drills together. It should be noted, as it will be brought into

11

evidence in this civil action for a showing of policy standards and operational procedures, that in the Missouri Department of Corrections Intensive Therapuetic Communitee (I.T.C.) prisoners pray all day every day in the wing, because it is allowed in the living area. Before, During, and After February 28, 2021, it has always been prayers allowed in prisons throughout the Missouri Department Of Corrections, both in the Chaple, at work sites and in living areas.

4.  It is permissible for a Muslim to eat pork out of necessity, but it is considered the lowest form of nutrience and extremely contaminated meet. If I do not have water to purify myself in preparation for prayer, I can use clean dirt or dust to purify myself and if there is not any water or dust available, I can use a clean stone. Using a clean stone to purify myself before prayer is the lesser form compared to using water and scented oil to cover the stinch of sin. ~~There are certain times of day Muslims are~~

5.  There are certain times of day Muslims are forbidden to pray and there are certain places that Muslims are forbidden to pray. Muslims are not suppose to pray in cemitaries, near dead animals, after touching a dead body, in an area where one uses the restroom or offices of nature. Muslims are suppose to sit down when we urinate to keep our clothes free of urine. It is permissible for Muslims to pray on our sides when our lives are in danger on the battlefield during war times or sit in a chair due to physical ailments or infirmaments. In the Islamic Faith, there are greater forms and lesser forms of faith, practices and sins.

6.  Praying by ones self is a less form of worship than praying with three or more believers. Once a

Muslim finds a safe place to initiate prayers, a Muslim is not suppose to stop praying until the prayer cycle of two, three or four rakats is completed. The longest is the four rakat prayer, where it takes five minutes to complete. At one point Lt. Michelle Basham said that prisoners are only allowed to pray in their cells, But this is not true. It should also be recognized that the prison cells being alleged as the only place to pray, are in essence a bathroom with a bunk.

7. The Missouri Department Of Corrections under Missouri Law classify Muslims as gang members and under the Anti Terrorism Bill And Effective Death Penalty Act, incarcerated Muslims are treated as enemy combatants insurgents and not a religion or religious organization.

8. As such, instead of being treated as a religious group with FIRST Amendment Rights and International Human Rights Laws Protection against religious persecution under International Law, incarcerated Muslims are treated like criminal gangs and placed in gang files even though I have never been a gang member not once in my life.

9. This is relevant to Plaintiff Reginald Clemons complaint, because the chemical attack on Muslims that occurred on Frith February 28, 2021, was assigned to the Gang Task Force Officer Mathew Downs, as handler, who was the one assigned to handle our conditions of confinement and the related evidence, For the above stated reasons. Officer Mathew Downs was the one assigned to handle and deliver a copy of the video tape of the incident for the Ward to review on March 1, 2021.

13

10. It is highly likely that the Missouri Department Of Corrections Staff have destroyed the video evidence of Muslims being maced while praying. So for that reason, it is being sought and pursued in this litigation for Corrections Officers to wear body cameras, because MDOC policy is inadequate for preserving evidence for litigation in the courts. Ever since the case of Lawrence v. Bowersox, 297 F.3d 727 (8th Cir. 2002) the Court recognized the Missouri Department Of Corrections has a habit of destroying and suppressing video evidence that does not coinside with their false narative of incidents in their report reports.

11. "For all the following reasons, this Court agree with Walker that the videotape was intentionally destroyed in a manner indicating a desire to suppress the truth. The prison had adopted a policy that required epesodes on restraint benches be videotaped. The Defendants offered no explanation of what happened to the tape, other than the fact that the tape could have been taped over, which indicates intensional destruction. The videotape was delivered to a responsible person for safekeeping by people who believed the video should have been kept in case of litigation. Lastly, the loss or taping over of the videotape was not the first time incident. In Lawrence v. Bowersox, the Eighth Circuit stated:

12. "We pause here to note a disturbing tendency by units within the Missouri Department Of Corrections to "Misplace" videotapes of prison incidents. In addition to the missing original videotape in this case, Estate of Davis, 115 F.2d at 1392, the court noted that a videotape from Potosi Correctional Center was "lost after it was forwarded to the Department Of Corrections." Furthermore, in Faulk

14

262 F.3d at 702, an official from the Moberly Correctional center admitted that a video had been "destroyed or taped over." We are aware that large bureaucracies cannot have a foolproof system of preserving records. However, three missing videotapes in approximately five years of incidents giving rise to litigation within one prison system strikes us as more than mere coincidence. Perhaps it is time to remind the Missouri Department Of Corrections that Rule 37 of the Federal Rules of Civil Procedure allows a court to strike pleadings and enter a default judgment against parties that fail to comply with discovery orders, failure to disclose information required by Rule 26(e)(2), or provide false or misleading disclosures. Lawrence v. Bowersox, 297 F.3d 727, 732 n.2 (8th Cir. 2002)." Walker v. Bowersox, 2009 U.S. Dist. LEXIS 143493.

13.  On March 10, 2021, Plaintiff Reginald Clemons was removed from his cell assignment in 1A-118 to be put before the institutional disciplinary classification staff board. Prior to the corrective Action Hearing before the Classification Adjustment Board, the Warden instructed gang task force officer Matt Downs to inform us that the violations would be reduced from a major conduct violation to a minor conduct violation.

14.  So I believed that this was due to the fact that the prison administration wanted to create procedural grounds to destroy the video footage. This is because by dropping the conduct violation from a major conduct violation where the video must be retained and investigated, under a minor conduct violation the video cannot be requested or retained as evidence in the defense on behalf of a prisoner. So this very is

15

why I moved for an injunctive relief hearing to review
the validity of a procedure that requires and permits
evidence to be destroyed and prevents judicial review
regardless of the severity of the criminal and civil rights
violation under the United States Constitution or
International Laws.

15. The procedural actions I took under these circumstances
to counteract a history of evidence destruction, using
procedures I foresaw as being used to destroy criminal
evidence and avoid any investigations into patterns of
criminal or civil abuse and neglect or negligence.

16. When Heather Crews, FUM 56536 and John Doe
Lt. Jones interviewed me for the disciplinary hearing,
I had not been provided any access to a case manager
or to the grievance procedure to attempt to make sure
the necessary evidence is preserved for court.

17. So during the adjustment board hearing I took the
only procedural opportunity made available to me to
preserve the videotaped evidence, that was clearly in
the Warden Jerry Bingham's possession at the time.
Where I, Reginald Clemons, made the "Offender Statement:
"I have not had access to the grievance procedure.
I would like to retain the use of force video for
civil litigation." "

18. By all procedural rights, in the absence of the grievance
procedure, in the absence of an internal investigation,
and in the absence of the conduct violation being a
major conduct violation, this statement should
have been enough to preserve evidence that was in
the hands or possession of the Warden Jerry Bingham
via delivery by Matt Downs, to one considered to be
responsible and was well aware by signing the Corrective

16

Action Report on March 10, 2021, that the videotapes, needed to be preserved for future "civil litigation."

19. Since the date of March 10, 2021 attempts have been made to obtain the video of the incident in the wing of 4B- and the videotapes of our transport or ambulation from 4 house to medical's doorway and subsequent transport to Housing Unit 1A wing. Director Ann Precythe has informed a State Representative (John/Jane Doe) that the video does not exist for disclosure.

20. This is a willful and knowing destruction of the videotape, that would illustrate and eliminate two significant factors. First: that Carl Hart never gave me, Reginald Clemons, the pro se plaintiff a chance to submit to restraints, because no there was no one behind me trying to place me in restraints. Which will prove that Sgt. Carl Hart's conduct violation report contains a false narative and that he generated a false report to coverup his wrongdoings. Second: the videotape will illustrate that the can of O/C Pepper Spray, that was a riot size can, had been emptied on the Muslims that were praying.

21. I believe that it was in the hopes and belief that any one of the Muslims that were peacefully praying would retaliate or respond aggressively and thereby justify Sgt. Carl Hart's initiating self esculating attack along with the assistance of C.O. Price and Lt. Michelle Basham, who was the coordinating officers in charge. This is why they have destroyed, misplaced or recorded over the videotape, because the coordinated attack was unprovoked, before, during, or after the fact the Muslims showed no signs of aggression as we suffered mental trauma, chemical burns, arbitrary atypical punishment, unlawful restraint and unwarranted

17

seditary isolation under punitive confinement, for praying.

22. After I was released from seditary confinement on 24-hour a day lockdown, I contacted Reverend Elston McCowan as he's an activist with the National Association for the Advancement of Colored People (NAACP), because he has past experience with communicating with the Missouri Department Of Corrections administrative staff. Reverend Elston McCowan said that he had spoken to the Warden and been told that the Muslims were engaged in some kind of prayer protest and that is the reason that the prayer was stopped. Rev. Elston McCowan also said the Warden put him on the phone with an inmate offender who represented the Muslims and spoke on their behalf whose name is Stacy Shelton, Rev. Elston McCowan said that Stacy Shelton informed him that the matter was in the process of being resolved.

23. I never requested that Mr. Stacy Shelton be appointed as my inmate counsel representative nor am I lead to believe that Stacy Shelton is trained in the law enough to understand the legal, evidentiary and procedural ramifications of accepting the Warden Jerry Bingham's appointment of legal representative or liaison.

24. I explained to Reverend Elston McCowan that we were only praying and needed his help obtaining the videotape. I explained to him that he does not have to take my word for it, If he sees the videotape, it would speak for itself. I explained to him that it only takes five minutes or less for us to pray, which means that we were not given enough time to comply. I also told him that the

18

only way they could have maced us that fast is if they abandoned all protocals and procedures, for using chemical agents for a use of force.

25. Any time mace is used to subdue a prisoner or bring about compliance to submit to restraints. A video camera is suppose to be made available to record the use of O/C Pepper spray. That was not done in this case nor were the prisoners praying along with me given an opportunity to comply with Sgt. Hart's directive to submit to restraints or be maced.

26. I explained to Reverend Elston McCowan that we were maced for praying in our living area, In an open wing considered the Honor Dorm, where we are not required to lock-down until 10:00 p.m.. I explained to him that we were not obstructing the Corrections officer's ability to make there their rounds and do security checks, as there was a clear path in front of all the cells, as required by policy. I explained to Reverend Elston McCowan that Sgt. Carl Hart emptied a WD40 size Bear spray can of Mace on us and attacked us for praying. I told him how we were all thrown in strip cells with no medical treatment for over 16 hours of being covered in mace.

27. I told Reverend McCowan that whoever told him that this matter was being resolved and put to rest never talked to the people that were victimized and assaulted for praying together. Reverend McCowan said he would see who he could talk to, because he was under the impression that the matter had been resolved.

28. On March 11, 2021 Steven Stafford happened to cross paths with Mr. Matt Raymond the Deputy Warden who had overseen the mass meeting held on March 1, 2021.

19

During this chance encounter Steven Stafford sought clarification from Mr. Matt Raymond about what was said during the emergency in propt to meeting held in the prison's Chaple on March 1, 2021, the day after the Muslims and I were chemically attacked for praying, on February 28, 2021.

29. During that meeting to a assure Muslims throughout the prison, that this was anomaly and not the norm. Mr. Matt Raymond explained that Muslims are allowed to pray in the wing. Mr. Matt Raymond was accompanied with Chaplain Thomas Raeagan. Mr. Matt Raymond confirmed that it was not against the rules for Muslims to pray in the wing and Muslims are allowed to pray in the wing from this day forward, just as he said on March 1, 2021, to the entire Muslim community at the ERDCC prison.

30. So we proceeded to pray in the wing whenever the opportunity provided, especially since according to the Quran, congregational prayer holds 23 times the blessings over praying by ones self. It is also a fundamental part of Islamic Monotheism or Tauheed as the Unity of Worship. Pray is the most important part of the Islamic Faith and central to the Islamic practice in exercising our Faith. Nothing about the way we conduct prayer creates a security risk and takes far less time than a full workout, for physical fitness or physical training, much like the exercises being conducted in the wing on the same days.

31. So with the Deputy Warden's permission, we resumed prayers in the wing as directed. I believe that Sgt. Carl Hart and other security staff members plotted and waited until we were praying during the

20

weekend. That way there would not be any administrative staff at the prison and those normally in authority on weekdays, Monday - Friday.

32. On March 13, 2021, on a Saturday evening at around 8:00 pm, we were praying and while we were changing from one prayer position posture to another. Correction officer Miskel came and stood over us while we prayed and waited until we finished. Upon us completing the prayer, C.O.I Miskel addressed us and said weren't you all told not to pray out here any more.

33. Steven Stafford explained to C.O.I Miskel that the Deputy Warden said we were allowed to pray in the wing. Steve Stafford explained the conversation he had with Mr. Matt Raymond and what Mr. Matt Raymond said to all the Muslims at the meeting in the chaple on March 7, 2021, between the time of 7:30 a.m. and 10:00 a.m., with standing room only. C.O.I Miskel told Steven Stafford, if it's not in writing it does not exist.

34. C.O.I Miskel said, "If its not in writing, then I cannot just take your word for it. Until you get it in writing, you can not pray in the wing, you have to pray in your cells." then as we started walking away, Miskel yelled out, everybody lockdown, return to your cells and lockdown.

35. I, Reginald Clemons, have explained for the court that there are levels of stages and degrees to prayers that are superior and prayers that are inferior in form or terms of conduct.

36. A prison cell is actually a bathroom or restroom with a bunk in it. In Islamic teachings, urine has

21

hellfire mixed in it and those with urine stained flesh, will feel that urine burn their flesh while in the grave, until judgment day. Scientifically urine sprays from a toilet about a fifteen foot (˜15) radius in a cell that measures on average '8 x '10. This means the entire cell is covered wist mist of atomized particals of urine on a daily basis.

37. So I am being unreasonably ordered to pray alone in a desecrated space and hope that ALLAH accepts my prayers with the same necessity of mercy and grace that allows Muslims to eat pork, when there is no other food or options available.

38. My praying in the Honor Dorm does not create a penological security concern and is protected conduct engrained in the FIRST Amendment to the United States Constitution.

39. About fifteen minutes after Correctional Officer Miskel issued his threats about us praying, he came to the assigned cell of Steven Stafford in 4B-212, for him to repeat report to the back offices. Steven Stafford returned from the back offices telling everyone that were praying and myself, that he believes they were plotting against us and waiting for us to pray.

40. Steven Stafford explained that they asked him how come we did not do the prayer at they the time on the prayer schedule. He Steven Stafford was told that they don't care what the Warden said, they are not going to allow us to ever pray in the wing together.

41. The shift commander for the night of March 13, 2021 said that if its not in writing then it does not exist.

42. After Steven Stafford left from the back offices

22

of Housing Unit 4, Sgt. Carl Hart could be seen entering the Housing Unit and going to the back offices of Housing Unit 4. What took place in that staff only back offices meeting, with several officers in there is not specifically known.

43. Whatever exchange took place had a visible effect on disturbing Correctional Officer Miskel, because he came back into 4B and opened the door to cell 212 saying, "We don't have a problem do we, because if we have a problem, let me know. I want to know if this is the end of this, because I am ready for whatever comes next. If we need to handle this now, let me know, because I am not the type of person not to address my problems head on. So are we good." Steven Stafford said "Yeah, you're just following orders, we understand that."

44. This exchange was mainly one sided and seemed like it was intended to intimidate and antagonize Steven Stafford and myself. I had been assigned to the same cell in 4B-212 along with Steven Stafford on the night of March 13, 2021.

45. On the following Monday March 15, 2021, Steven Stafford and I got in contact with Stacy Shelton Register No. 165852 and informed him in his capacity as the Islamic Imam of the Al-Masjid at Eastern Reception Diagnostic Correctional Center, as to what happened over the weekend, when there was no administrative staff present at the prison. The Chaplain Thomas Reagan had been present during the in prompt to mass meeting when the Deputy Warden told all the Muslims on March 1, 2021 that prayer was allowed in the wing and there is not a rule against people

23

praying in the housing unit wings. Being personally aware of the Deputy Warden's statement and order the Chaplain saw it fit to personally take the Potential I.O.C. (Inter Office Communication) to Deputy Wardens Matt Raymond and Jerry Bingham personally. I guess it was do to his personal knowledge, that he himself witnessed the Deputy Warden say that Muslims were allowed to pray in the wings of the housing units. Deputy Warden Matt Raymond failed or refused to respond in writing to the letter I wrote him or requested approval of an I.O.C. addressing the controversy or conflict.

47.   When Sgt. Carl Hart sprayed excessive amounts of O/c Pepper Spray on myself, Reginald Clemons, and the rest of the people that were praying. Sgt. Hart emptied the large riot cannister in the absence of a physical threat and abandoned or ignored the Use of Force protocals to minimize esculating force.

48.   The amount of O/c Pepper Spray that was used exceeded what was necessary if it was necessary at all. Sgt. Carl Hart's actions violated the U.S. Constitution Eighth Amendment protection against cruel and unusual punishment.

   "Eighth Amendment violations have been found where an officer used more than a reasonable amount of chemical agent." see e.g. Furnace v. Sullivan, 705 F.3d 1021, 1025 (9th Cir. 2013). (Finding Eighth Amendment Violation where officer discharged can of pepper spray until empty, and other officer also joined in).

49.   Lt. Michelle Basham is just as responsible for Sgt. Carl Hart's actions as she is the liable catalyst that initiated this attack when she called in,

24

"an officer in distress", in her official and individual capacity, she has enough training to establish that she knew what these directives and actions for the Use of Force would call for.

50. This does not extinguish Sgt. Carl Hart's liability, because not only was he in a supervisory position of authority to hault and entervene in the ensuing 1st Amendment Violation of Reginald Clemmons's protected right to practice his religious beliefs and pray under State, Federal, and International Law, but he himself also broke with the protocal for the Use Of Force, when he failed to impliment deesculation measures and follow USE OF FORCE preparation measures.

51. Sgt. Carl Hart assaulted and attacked me for praying as a Muslim and that is what makes this a hate crime. As Sgt. Carl Hart has said in response to complaints about his anti Islamic rhetoric, statements and comments. Where he was harassing Muslims during the Holy Month of Ramadan (The Month Of Fasting), when he was assigned to coordinate the opporations around the fasting. Sgt. Carl Hart offered the explanation for his conduct as, "I have Post Traumatic Stress Disorder, because of the War when I was trained to kill Muslims."

52. The Muslims and I that were praying together were not attacked because of any rule that required us to be pepper stray and attacked. We were attacked for praying a Muslim Prayer. Sgt. Carl Hart had no intention of videotaping the incident or Use Of Force, that was captured for review by the security cameras stationed in the front & back of

25

the wing and the front of the housing unit 4 building. Body cameras not only ensure provisions of evidence for judicial review, but also act as deterrants from bad behavior and conduct that would esculate to need judicial review and reduce the likelyhood of false allegations or claims.

53. No rule exists that says prisoners are not allowed to pray outside of the chaple building and any such rule would be contrary to established Constitutional Law under the United States Constitution and Missouri State Law and the Missouri Constitution.

"The language of the proposed amendment, however, does not repeal prisoner's state constitutional rights to religious freedom. Rather, it simply makes these rights coextensive with federal law. Whether this has the practical effect of eliminating any "extra" rights afforded prisoners under the Missouri Constitution is purely conjecture, as Plaintiff articulates no right that the present article I, section 5 affords prisoners beyond those afforded by the First Amendment. Indeed, the primary case they cite in support of their argument Adam v. Moore, 861 S.W.2d 680, 681-82 (Mo. App. 1993), applies the same test used by the Federal Courts when addressing First Amendment claims to decide a prisoner's claim that the Department Of Corrections grooming regulations violated his religious freedom rights under article I section 5 of the Missouri Constitution." Coburn v. Mayer, 368 S.W.3d 320 (Mo. App. W.D. 2012).

54.   I, Reginald Clemons, pro se am not an attorney nor am I a paralegal trained in the law and I am incapable of performing or practicing the presentation of a sound legal argument, at the standard this court or any other is accustom to. What I do know is that I have been victimized and traumatized in a way that altered my mindset and has made me want to make sure no one is victimized like this again. I know that the Founding Fathers of this great country laid the framework for the United States Constitution saw the freedom of speech, religion, association and to peaceably assemble, to petition the government for redress of grievance as critical. My right to engage in group prayer to peaceably assemble to petition God is FUNDAMENTAL Rights engrained in the UNITED STATES CONSTITUTION and any law or governmental rule, policy or regulation that prohibits prayer, violates the U.S. Constitution and is invalid.

   "Although no cases have applied Article I, §5 of the Missouri Constitution to determine the extent of a prisoner's religious freedom rights with regard to grooming regulations, a prisoner's right to exercise religious beliefs is currently judged under a "reasonableness test" by the Federal Court.

      In Turner v. Safely, 482 U.S. 78, 89, 96 L.Ed.2d 64, 107 S.ct. 2254 (1987), the United States Supreme Court held that "When prison regulations impings on inmates constitutional rights the regulation is valid when if it reasonably relates to legitimate penological interest." These penological interest include rehabilitation deterrence, and security. Iron Eyes, 907 F.2d at 813.

27

The court in Turner noted that the following four factors are to be considered in determining the reasonableness of the regulation:

(1) [ Whether there is ] a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it...
(2) Whether there are alternative means of exercising the right that remains open to prison inmates...
(3) The impact accommodation of the asserted constitutional right will have on guards and other inmates, and on allocation of prison resources generally.
(4) [ Where there is ] an alternative that fully accommodate the prisoner's rights at de'minimis cost to valid penological interest." Adam v. Moore, 861 S.W.2d 680 (Mo. App. W.D. 1993)

55. To answer the reasonableness questions or validity of the regulation and penological interest of Turner v. Safely.

(1) There is no valid penological interest that a prohibition to prayer for one group of individuals prisoners praying in the wing is permissible, while another group is not allowed to pray in the wing and no governmental policy is suppose to maintain or encourage one faith while restricting another, irrespective of belief as a part of seperation of church and state doctrine.
(2) There is no alternative means to perform congregational prayer for five or 10 minutes due to the variation in the number of Muslims at any given time seeking to pray and the cells are urine soaked, too small and with limited cleanig

28

supplies. Additionally, this was during the corona virus quarantine, during a time when the chaple was closed. So we were separated by housing units for isolation throughout the Missouri Department Of Corrections. Also, permission had been granted several times prior to February 28, 2021 and after February 28, 2021, for me and the others Muslims to pray together.

(3) The only accommodation security staff have ever ask for is to ensure that there is a clear path in front of the cells for officers to make their wellness security checks. As we were in the back of the wing and out of the way from obstructing anyone's pathway to their assigned cells, nothing about the prayer physically inconveinienced other inmates/prisoners, and no resources were requested to be allocated, to facilitate or accommodate the prayer, from any of the prison resources, other than common areas made readily available in general population.

(3) b. Additionally, the Muslim community contributes more to the Inmate Canteen Fund than any other religious groups of other faiths and requires less material resources to practice our faith. We, I, as a Muslim(s), purchase personal prayer rugs, but we are band from purchasing prayer oil to perfume ourselves, my self, to cover up the stinch of sin.

(3) c. While the Catholic Faith practices are allowed to bring wine for comunion into the prison, where their religious beliefs and practices supercedes

29

penological security concerns. This comparison is being made because it preludes a more direct discriminatory bias comparason between Muslims praying in the Housing Unit Wing and the Intensive Therapeutic Community (I.T.C.) who pray in the wing constantly, all day every day, as a significant part of rehabilitation. In the program of recovery there can not be any rehabilitation without developing a relation-ship with your higher power.

(4) As can be seen or viewed from the videotapes from February 28, 2021 2021 and March 13, 2021, the only security concern or difference is the reaction of staff to the fact that Z and others were praying, as Muslims. As the prayer by and in and of itself does not create a security concern or threat to harming one's self or others, no accommodations are needed other than to being free of being molested or accosted for-praying-while-praying, with the right of safe passage.

56. Based on Lt. Michelle Basham's atheist beliefs and past pronouncements that she does not believe in God. Based on Carl Hart's past anti Islamic comments during his detail assignment to oversee the Rahmadhan fast. Sgt. Carl Hart said that he responds to Muslims the way that he does because he was trained to kill Muslims during the war.

57. So being around Muslims triggers his Post Traumatic Stress Disorder. Throughout the Missouri Department of Corrections, there are security staff who include confederate pro slavery patches and

30

signs and symbols to their uniforms. They wear the
flag with the original thirteen stars to represent the
original thirteen slave colonies of confederate white
supremacy. They have been wearing rattle snakes imbroidered
on their hats and uniforms with the confederate
statement of "don't tread on me." These white supremist
confederate views of prison, are the philosophical
grounds upon which prison staff practice slavery,
impliment punishment and apply atypical abuse for the
purpose of destroying mone christian people who are
not white, as their conduct and purpose, which are
not consistent with the penological interest of
rehabilitation in todays prison system. This is why
I, Reginald Byron Clemons, have raised a hate crime
complaint and religious persecution complaint. As
it is my belief that Lt. Michelle Basham and Sgt.
Carl Hart's actions and conduct were intended to
advance the proliferation and implimentation of the
corporate confederate white supremacist agenda, to
repress the freedom and liberty of all but their own,
through terror, exploitation and violent attacks such as
making examples of Muslim's who where praying.
58. Even the United States Congress recognizes the
time has come to remove white supremacy from
the ranks of governmental agencies, because their free
speech culminates into lethal violence.

    Congressional Bill - Domestic Terrorism Prevention
    Act. Representative Brad Schneider, Dem - Ill.
    who first introduced the measure in 2017

Supporters of the House bill say it will fill the gaps in

31

intelligence-sharing among the Justice Department, Department Of Homeland Security and the FBI so that officials can better track and respond to the growing threat of white extremist terrorism.

Under current law, the three federal agencies already work to investigate, prevent and prosecute acts of domestic terrorism. But the bill would require each agency to open offices specifically dedicated to those task and create an interagency task force to combat the infiltration of white supremacy in the military.

For decades terrorism has been consistently tied with attacks from foriegn actors, but as home grown terrorism, often perpetrated by white men, has flourished over the past two decades, Democratic lawmakers have sought to clarify it in federal statute.

"We've seen it before in American history. The only thing missing between these organizations and the past are the white robes," Senator Dick Durbin, Democrat of Illinois said. "But the message is still the same hateful, divisive message, that sets off people to do outrageously extreme things, and violent things, to innocent people across America. Its time for us to take a stand." — Associated Press May 19, 2022

59. When Carl Hart home-grown extremist views began is unknown, but based upon his statement about his military service and misconception about

32

the intended purpose of his military training being
to kill Muslims. Sgt. Carl Hart's extremist views
coalesced during his time in the military and
his desire or propensity to kill or harm Muslims or
those praying an Islamic prayer called making salat.
60. These factors of intent and motives are elements
that make this a Hate Crime and not just an
inadvertant act of misunderstanding the
circumstances. Even after it had been made clear
that the Ward Matt Raymand said we were allowed
to pray in the wing, Sgt. Carl Hart doubled down
and persisted to use his position as a correction's
office to attack Muslims on the basis of my faith
and religious practice based on my beliefs.
61. I, Reginald Clemons, am a Muslim and my
Muslim name is Qadir Balil Walid and I am a
victim of Religious Persecution, Assault, a Hate
Crime, Excessive Use Of Force, Retaliation, Abuse
and Medical Neglect by staff members of
the Missouri Department Of Corrections.
62. As the victim of a Hate Crime, my cries and
complaints to the FBI have not only been ignored,
but evidence has been knowingly allowed to
deterriorate and be destroyed over time.
63. So much so, that my victimization as a black
man in America is to be expected, accepted and
normalized. No victim advocate has come to my
aid, but instead have taken part in the efforts
to retaliate and discourage me from litigating
my complaints in the court. Where I was written
a conduct violation For filing a Nunc Pro Tunc
motion in my criminal case. So not even the

33

Victims Rights advocates see me as a black man, as the victim of a hate crime, when all I was doing before, during, and after the attack was praying.

64. Prayer is everything to me, as a person that has needed prayer in times of distress. Back in 2009 on June 17, I, Reginald Byron Clemons, was scheduled for an execution. To make a long story short, on June 5, 2009, a bird came and sat with me starting just before sunrise, until 2:30 pm. From the day that I was placed on death watch on May 18 until that day, I prayed for the strength to accept the will of the Almighty grand architect, no matter what it may be. At 4:45 pm I received a stay of execution and that bird was a messenger for me. That in no uncertain terms, there is a God.

## Injuries

65. Loss of opportunity to participate in college programs, courses and classes, loss of privileges to have access to personal property, chemical burns on skin, eyes, ears, nose, throat, asthmatic lungs, and mouth for over 16 hours without medical treatment or a shower, abuse under excessive use of force, traumatic fear induced upon family, significant other, my fiancee, and loved ones, denial of opportunity to equally practice my Islamic faith while incarcerated and as practiced prior to February 28, 2021, suffering retaliation and intimidation for attempting to pray and/or file

34

complaints, etc.

## Relief Requested

Prohibitive injunctive action against Michelle Basham and Carl Hart being within 500 yards of the plaintiff, until the conclusion of this law suit, Mandatory Injunctive Relief Requiring Safe Passage to Pray in the living area of the Housing Unit wings or at prison work sites, punitive damages of $1,000,000.00 to plaintiff, nominal damages of $1.00, Mandatory Injunctive relief requing that there be a Muslim faith based chaplain when the predominant faith of prisoners is Al-Islam, $10,000.00 for each missing video that has been requested herein but failure to disclose within 30 days of any court order to compel disclosure, Mandatory injunctive relief requiring that all previsions to practice the Islamic faith be provided by the Inmate Canteen Fund without the exclusion of donations or individual's ability to personally purchase items from Islamic venders: such as prayer oil; prayer beads; prayer rugs; throbs prayer garments; dried dates fruits; refrigerator in the chapel to store religious food items (to prevent theft of religious items in the prison kitchen storage) 2,000 calories a day diet during the Holy Month of Rahmadhan; Cuffies; Qur'ans, Court cost and attorney fees to be paid by defendants, Injunctive order to release video of February 28, 2021 ERDCC Use Of Force at issue herein for public

35

consumption in an order for disclosure and discovery; actual damages of $100,000.00 for plaintiff, permanent injunction for prison staff to wear vidio audio body cameras much like those worn by pd police officers, injunctive relief for institutional videos to be available for use in duly due process in prisoner's such as myself defense for challenging both major and minor conduct violations, and any other relief the court deems just proper and equittable.

Respectfully Submitted:

Signed: This 26 day of May 2022: Reginald Clemons
Reginald Clemons 990102
Jefferson City Correctional
Center
8200 No More Victims Road
Jefferson City, MO 65102

36

## STATE OF MISSOURI
### DEPARTMENT OF CORRECTIONS
## OFFENDER GRIEVANCE

| GRIEVANCE NUMBER | IRR NUMBER | DATE FILED |
|---|---|---|
| HO 5G6-21-1619 | NOV 24 2021 | NOV 15 2021 |

| INSTITUTION USE ONLY | | ERDCC GRIEVANCE OFFICE |
|---|---|---|
| | ERDCC 21-1749 | |

| OFFENDER LAST NAME | FIRST | DOC NUMBER | HOUSING UNIT | UNIT | INSTITUTION |
|---|---|---|---|---|---|
| Clemons | Reginald | 990102 | 3 | D-212 | ERDCC |

**OFFENDER GRIEVANCE/REQUEST:**

I, Reginald Clemons have been deprived of the protections afforded to me by redress of grievance or complaint as a form of administrative reprisal and retaliation. Through a pattern and practice that attempts to redefine complaints to a weaker legal standard and while also using intimidation tactics to prevent criminal and civil complaints from reaching the courts for prosecution.

This is the second time this year of 2021 that I have been forced to complain about advancing these complaints listed herein to be move to the next level / stage of the grievance D5-3.2 Offender Grievance Policy. ERDCC21-373; ERDCC21-374; ERDCC21-455; ERDCC21-666; ERDCC21-801; ERDCC21-922; ERDCC21-923, See Attached 4 of 4 Pages

Continue an attached 4 of 4 Pages

| OFFENDER SIGNATURE | DATE |
|---|---|
| S. Reginald Clemons | Nov. 8, 2021 |

**SUPERINTENDENT RESPONSE:**

Mr. Clemons, I am in receipt of your grievance dated November 24, 2021 regarding your allegation that you are not being allowed to advance your complaints via the grievance process.

Having reviewed your Grievance and other pertinent information available to me I found that complaint ERDCC 21-373 is at the grievance level, ERDCC 21-374 is currently at the Appeal level, ERDCC 21-455 is at the Appeal level, ERDCC 21-666 is at the grievance level, ERDCC 21-801 is at the Appeal level, ERDCC 21-922 you signed as satisfied at the IRR level, and ERDCC 21-923 is at the Appeal level. I could find no evidence, nor have you provided any, to substantiate your allegation. Therefore, I find your complaint resolved.

OFFENDER
ATTACHMENT

| RECEIVED |
|---|
| DEC 16 2021 |
| ERDCC GRIEVANCE OFFICE |

| SUPERINTENDENT/SECTION HEAD | DATE |
|---|---|
| | 12/13/01 |

You have the right to appeal this decision to a division director. You must file an appeal form with the grievance officer within seven (7) days from the day you receive this decision. Failure to submit an appeal within this time frame constitutes abandonment of the grievance.

☐ I ACCEPT THIS DECISION        ☐ I APPEAL THIS DECISION

| OFFENDER SIGNATURE | DATE |
|---|---|
| | |

MO 931-3377 (12-04)        Amended Page 37        (Attachment: Page 5)

بسم الله والنكر الرحمن الرحيم

IAR / Grievance Complaint No. ERDCC21-1749

Individual Complaining: Reginald Clemons Reg. No. 990102
Date Of Issue Complained Of: March 15 - October 7, 2021
Location Of Incident: Case Manager's Offices
                      In Housing Unit 4 and Housing
                      Unit 3.
Individuals Being Complained Of: John / Jane Doe are
                      all the staff members that
                      have signed off on the lised
                      complaint No.s below and
                      any related documents. Including
                      Grievance Officers Downs, Ashley
                      and Dunn, Function Unit Manager
                      Turner, Case Manager Miller, Mike
                      Case Manager Patterson.
Constitutional Rights Being Violated:
                      FIRST Amendment right to be
                      free from ~~repisa~~ reprisal ar retaliation
                      for petitioning the government
                      for reddress of grievance,
                      FOURTEENTH Amendment right
                      to due process under equal
                      protection of the law. FOURTH
                      Amendment right not to be
                      subject to unlawful search
                      and seizure without due process,
                      Missouri Department Of Corrections
                      Policy D5-3.2 Offender Grievance.

                              (Attachment: Page 6)

                    Amended Page 38

Grievance Complaints At Issue:

ERDCC21-373 Excessive Force          3-15-2021
EADCC21-374 Due Process              3-15-2021
ERDCC21-455 Activities-Religion      3-25-2021
ERDCC21-666 Harassment               5-3-2021
ERDCC21-801 Activities-Religion      5-24-2021
ERDCC21-922 Other-Grievance Comp:    8-09-2021
ERDCC21-923 Other-Other Comp.        9-14-2021

Issue  Being Complained Of

   I, Reginald Clemons, have been deprived of the
protections afforded to me for reddress of grievance
or complaint as a form of administrative reprisal and
retaliation. Through a pattern and practice that attempts
to redefine complaints to a weaker legal standing
and while also using intimidation tactics to prevent
criminal and civil complaints from reaching the
court for prosecution.
   This is the second time in this complaint process
that I have been forced to complain about advancing
the complaint to the next stage. I want and need
for an investigation to be launched into the pattern
and practice of the Eastern Reception Diagnostic
Correctional Center for obstruction of justice and
repression of criminal and civil complaints.
   I have mentioned to several other prisoners
that the case managers and grievance officers
under Msr. Ashley Dawns have been failing or refusing
to process my IRR/Grievance complaints. I have
had several prisoners tell me that Bonne Terre's
grievance officers and case workers always lose
                              (Attachment: Page 7)
           Amended Page 39

people complaints, and retaliate if they think you are going to sue.

For a preliminary investigative review to be conducted here, simply requires one to evaluate what percentage of complaints are ever processed on grievance appeal. If there is an abnormal amount of complaints that do not reach the grievance appeal stage, then a detailed investigation from an outside investigator, who is not working for the department of corrections is necessary. The complaint log numbers of all the IRR/Grievances that have been appealed to central office and the complaint log number for the last known grievance for the past four years, is all that is necessary for a preliminary investigation to be accurately assessed and audited.

The last known complaint log number will make it known how many complaints were raised. The number of complaints filed for appeal or grievances appealed in the Missouri Department of Corrections Central Office records do not require abtainin records from Eastern Reception Diagnostic Correctional Center.

The staff here at this institution have fought against processing all of the above listed complaints. I want all the above listed complaints to be advanced to the next level / stage of the complaint process. I also want to see a pattern and practice investigation by an investigation team independant of all Missouri Department Of Corrections staffing authority.

None of my grievance or IRR complaints are titled according to the complaint I filed. None of the titles or catagaries to the grievance process in the Missouri Department Of Corrections are criminal in the above listed titled catagaries.

(Attachment: Page 8)

Amended Page 40

The patterns and practices of these grievance procedures is intended to avoid triggering a criminal investigation by the federal authorities, as to what has happened here. This is because the complaints of ~~Roligious~~ Religious Pursecution, Hate Crimes, Criminal Assault, and Failure To Report A Criminal Offense could lead to serious causequences and possibly criminal convictions.

## Relief Requested

I am requesting an independent investigation into the pattern and practice of retaliation and grievance process repression against myself and individuals simularly situated, in response to the filing of grievance, petition, or complaints.

For a complete report to be generated from the findings and provided to my attorney of record and made available to the media for public consumption.

For the above listed IRR/Grievance complaints to be advanced to the next level or stage of the complaint process.

(Attachment: Page 9)

Amended Page 41

State of Missouri
**Department of Corrections**
**Conduct Violation Report**

| | |
|---|---|
| NAME OF INSTITUTION: ERDCC | DATE: 02/28/2021 |

| OFFENDER NAME | DOC NUMBER | ASSIGNMENT | H.U. |
|---|---|---|---|
| CLEMONS, REGINALD, B | 990102 | (E33)003-03B-0B202 | 004-04B-0B218-002 |

| PRIMARY RULE VIOLATION NUMBER & DEFINITION | SECONDARY RULE VIOLATION NUMBER(S) |
|---|---|
| 9.4- THREE+ OFF/ACTS OF ORG. DISOBEDIENCE | 20.1 |

VICTIM(S) ☐ YES ☒ NO    NAMES AND EMPLOYEE OR DOC NUMBERS(S) N/a

**Violation Occurred At:**

| TIME | DAY | DATE | BUILDING, COMPLEX, ROOM | TRACKING NO. |
|---|---|---|---|---|
| 9:13 ☐ AM ☒ PM | Sunday | 02/28/2021 | 004-04B-0B119 (DAY) DAYROOM | ERDCC21-01615 |

THE FOLLOWING EVENTS OCCURRED

On the above date and approximate time, I was called to HU4 B-wing for a group of offenders who were praying and refusing to disperse from the immediate area. At this time, I issued offender Clemons, Reginald #990102 several directives to submit to wrist restraints to which he refused. I then gave the offender a final warning that if he failed to submit to restraints further action would be taken. The offender continued to refuse and I applied a short burst of O/C pepper spray to the facial region of the offender. At this time, other staff entered and assisted with placing him in restraints escorted him from the wing. By the offenders own actions this places him in violation of rule 9.4 Organized Disobedience and 20.1 Disobeying an Order.

NOTE: This action took place with 7 total offenders who refused to disperse and other offenders on recreation in the wing.

THIS RESULTED IN A SPONTANEOUS USE OF FORCE.

| REPORTING EMPLOYEE SIGNATURE | REPORTING EMPLOYEE NAME: HART, CARL |
|---|---|
| | TITLE: CORRECTIONAL SECURITY SER   EMPLOYEE ID NO. E0124214 |

1. You have the right to written notice of the alleged violation prior to a hearing.
2. You have the right to a hearing.
3. You may be allowed to present documentary evidence at the hearing.
4. Witnesses may be allowed.
5. You have the right to written findings & decision.
6. You have the right to appeal the decision as set forth in D5-3.2 Offender Grievance Procedure.

**REPORT OF JOINT INTERVIEW BY INTERVIEWING STAFF** TIME 2:18 ☒ AM ☐ PM DATE 3-1-21

States "All I was doing was Praying and God will Justify my right to Praise him                              refer to AHC

WITNESS REQUESTED IF "YES" COMPLETE WITNESS ☐ Yes ☒ No   REQUEST (MO 931-0259)    INFORMAL SANCTIONS ☐ Yes ☒ No

**I UNDERSTAND MY RIGHTS AND HAVE RECEIVED A COPY OF THIS CONDUCT VIOLATION REPORT.**

OFFENDER SIGNATURE X Reginald Clemons    OFFENDER REFUSED TO SIGN ☐ YES ☒ NO   DOC NUMBER 990102

OFFENDER PLEAD GUILTY AT INTERVIEW AND WAIVED RIGHT TO HEARING ☐ Yes ☒ No

| OFFENDER SIGNATURE Reginald Clemons | DATE 3-1-21 | REPORTING EMPLOYEE SIGNATURE | DATE 3-1-21 |
|---|---|---|---|

INTERVIEWING EMPLOYEE NAME TITLE Scott Anthony FMgr    EMPLOYEE ID NO. 145329    INTERVIEWING EMPLOYEE SIGNATURE   (Attachment: Page 10)

Amended Page 42

*(Attachment: Page 11)*

**STATE OF MISSOURI**
**DEPARTMENT OF CORRECTIONS**
**CORRECTIVE ACTION REPORT**

| INSTITUTION | HOUSING UNIT | CUSTODY LEVEL | RULE VIOLATION | TRACKING NO. |
|---|---|---|---|---|
| ERDCC | 1A118 | C5 | #9.4 | ERDCC21-1615 |

| OFFENDER NAME | DOC NUMBER | ASSIGNMENT |
|---|---|---|
| | 990102 | |

REFERRED TO ADJUSTMENT BOARD: [X]   REASON: Major Violation

| DATE REFERRED | TIME REFERRED | REFERRING STAFF MEMBER'S NAME | STAFF MEMBER ID NUMBER |
|---|---|---|---|
| 3/9/2021 | 4:00 [ ] AM [X] PM | Alex Patterson | E0137819 |

INTERVIEW: Offender plead guilty at interview and waived right to hearing: [ ] YES [X] NO

HEARING:   Offender plead guilty at hearing and waived right to hearing: [ ] YES [X] NO   TIME: 8:32 [X] AM [ ] PM   HEARING DATE: 3/10/2021

| OFFENDER SIGNATURE | DATE | WITNESS SIGNATURE | DATE |
|---|---|---|---|
| | | | |

**FINDINGS AND EVIDENCE RELIED ON**  (Field will expand for amount of text entered.)
(Include evidence supporting decisions, specific statements of evidence from conduct violation report, confidential evidence, etc.)

Offender can communicate in English.  Offender signed a waiver to allow a statement.  Offender understands his due process rights.  Offender requests no witnesses.  Corrective Action Report read.

Offender statement: "I have not had access to the grievance procedure.  I would like to retain the use of force video for civil litigation."

Evidence:   COII Carl Hart's statement that he was called to HU 4 B-wing for a group of offenders who were praying and refusing to disperse from the immediate area.  COII Hart issued offender Clemons several directives to submit to wrist restraints to which he refused.  He then gave offender Clemons a final warning that if he failed to submit to restraints, further action would be taken.  Offender Clemons continued to refuse, and COII Hart applied a short burst of O/C pepper spray to the facial region of offender Clemons.  Other staff then entered and assisted with placing offender Howard in restraints and escorted him from the wing.

Findings: *Guilty based on the evidence*

**RECOMMENDATION** (Include recommended sanctions. Field will expand for amount of text entered.)
Amend to #19.1 to better suit the violation
10 days diseg credit time served

| HEARING STAFF MEMBER SIGNATURE(S) AND ID NUMBER(S) | DATE |
|---|---|
| *[signature]* 2036 | 3-10-21 |

I HAVE BEEN INFORMED OF THE EVIDENCE RELIED ON AND THE FINDINGS AND RECOMMENDATIONS.

| OFFENDER SIGNATURE | DOC NUMBER | DATE | REFUSED TO SIGN |
|---|---|---|---|
| *Fitzgerald Clemons* | 990102 | 3-10-21 | [ ] |

**RECOMMENDED ACTION OF THE DEPUTY WARDEN OR FUNCTIONAL UNIT MANAGER**

[ ] RECOMMENDED AS SUBMITTED   [X] RECOMMENDED MODIFICATIONS   [ ] PREA EVENT

*Retain #1*
*Modify #2  10-Days Dis/seg  Begin: 3-1-21  End: 3-10-21  Credit Time Served*

| SIGNATURE | DATE |
|---|---|
| *Jerry Bingo, AW Eom* | 3-10-21 |

ENTERED

MAR 1 8 2021

*Amended Page 43*

HOUSING UNIT #1

MO 931-0086 (5-19)   DISTRIBUTION:   CLASSIFICATION FILE VIA DATA ENTRY OPERATOR;   OFFENDER   PAGE 1

| | | RULE VIOLATION: #9.4 | | TRACKING NO. ERDCC21-1615 | |
|---|---|---|---|---|---|
| STATION ERDCC | OFFENDER NAME Clemons, Reginald | DOC NUMBER 990102 | ASSIGNMENT | CUSTODY LEVEL C5 | HOUSING UNIT 1A118 |

**ACTION OF WARDEN OR DESIGNEE**

☐ APPROVED AS SUBMITTED ☑ APPROVED AS MODIFIED ☐ OTHER

SIGNATURE

DATE

Amended Page 44

(Attachment: Page 12)

# POTENTIAL I.O.C.

**Effective Immediately**, Offenders may individually or assemble together to offer prayer within the Wing Common Area unless the religious practice poses a threat to the safety and security of the institution.  Offenders participating in prayer must adhere to the following guidelines:

1. Offenders may not block the entry to cell doors or disrupt the normal flow of traffic for other Offenders or Correctional Officers conducting wing checks.
2. Offenders must conduct their religious activities in a respectful manner and peacefully disassemble if asked by a Correctional Officer with respect for various circumstances that may arise.
3. Offenders who feel that their religious activities were disrupted unjustly are encouraged to file a grievance which **WILL** be reviewed by the Deputy Warden.
4. Offenders residing in General Population must follow normal 9 cell rotation rules and conduct group religious activities during their in-house recreation periods.

Amended Page 45                    (Attachment: Page 13)



Missouri Department of Corrections
Division of Adult Institutions
**ERDCC Chapel**
Bonne Terre, MO

# OFFENDER
# CORRESPONDENCE

**DATE:**    Monday, March 15, 2021
**TO:**    Mr. Matt Raymond - Deputy Warden
**FROM:**   Mr. Stacy Shelton - Al Islam Facilitator
**RE:**    Permission To Pray In Housing Units

It has recently come to my attention that on Saturday, March 13, 2021, Muslims attempted to pray again in 4 House. However, several Correctional Officers told them that they were not allowed to pray in the Common Area. During our Al-Islam / Staff meeting, you stated that prayer would be allowed in the Wings.

Our religious community would like to comply with the rules and regulations of the institution. In our effort to assist your office with this issue, we have developed a potential I.O.C. that addresses this miscommunication.

If you have any questions or concerns, please contact me. Thank You in advance for all of your assistance.

Mr. Stacy Shelton

#165852
(LC 202)

Amended Page 46        (Attachment: Page 14)



## INFORMAL RESOLUTION REQUEST RESPONSE

**OFFENDER NAME:**   **Clemons, Reginald #990102**

**HOUSING UNIT:**     **3-D-212**

**IRR LOG NUMBER:**   **ERDCC21-801**

### NATURE OF COMPLAINT:
I'm in receipt of your IRR and have reviewed your complaint. In your complaint you allege that you were assaulted and abused due to an excessive use of force during what you claim to be a hate crime. You are requesting the videos of the use of force be kept as evidence, a restraining order and institutional order to prevent COIII Basham and COII Hart from Supervising any housing unit you are assigned to, and CCM M. Miller to take a truth verification exam.

### FINDINGS:
I have investigated your complaint and reviewed all of the pertinent paperwork. You allege a hate crime was committed against you and the other offenders that participated in prayer in the wing. Due to the seriousness of your claim of the actions taken by staff against you, I have submitted your IRR for investigation. This should resolve your IRR at this time.

### RECOMMENDATION:
**No further action needed. Your IRR should be resolved.**

Amended Page 47                    (Attachment: Page 15)

*Religious Person (handwritten annotations) ORIGINALS*

**STATE OF MISSOURI**
**DEPARTMENT OF CORRECTIONS**
**INFORMAL RESOLUTION REQUEST**

INSTITUTION USE ONLY   ☐ EMERGENCY COMPLAINT

| OFFENDER NAME | | | DOC NUMBER |
|---|---|---|---|
| Clemons Reginald | | | 990102 |

| DATE STAFF MEMBER RECEIVED IRR | COMPLAINT NUMBER | CATEGORY | HOUSING UNIT |
|---|---|---|---|
| 05/24/2021 | ERDCC21-801 | 2 (F) | 3B-212 |

**STATE YOUR COMPLAINT/PROBLEM BRIEFLY- ONE ISSUE - BE SPECIFIC**

Hate Crime
Abuse, Assault,
Excessive Use Of Force
Religious Persecution
Retaliation
Temporary Restraining Order
(SEE Attached)

**ACTION REQUESTED: STATE REMEDIES YOU ARE SEEKING**

(See Attached)

| OFFENDER SIGNATURE | DATE |
|---|---|
| Reginald Clemons | May 20, 2021  990102 |

**STAFF USE ONLY**

**DISCUSSION OF COMPLAINT (SUMMARIZE RESULTS OF MEETING)**

Not Resolved, offender requests all video footage retained for evidence.

☐ IRR RESOLVED BY DISCUSSION/WITHDRAWN     ☒ IRR NOT RESOLVED BY DISCUSSION

| OFFENDER SIGNATURE | DATE | STAFF SIGNATURE | | DATE |
|---|---|---|---|---|
| X Reginald Clemons | May 24, 2021 | | 28730 | 5/24/21 |

**STAFF FINDINGS/RESPONSE**

Not Resolved

RECEIVED
AUG 10 2021
ERDCC
ASSISTANT WARDEN

| INVESTIGATING STAFF SIGNATURE | DATE | RESPONDENT SIGNATURE | DATE |
|---|---|---|---|
| 28730 | 8/9/21 | | 8-9-21 |

| REVIEWER SIGNATURE | DATE | RESULTS |
|---|---|---|
| Dunlap AW EM4 | 8-10-21 | ☐ SATISFACTORY   ☒ UNSATISFACTORY |

YOU HAVE THE RIGHT TO FILE A FORMAL GRIEVANCE. YOU MUST FILE A GRIEVANCE FORM WITH THE DESIGNATED STAFF WITHIN SEVEN (7) DAYS FROM THE DATE YOU RECEIVE THIS RESPONSE. FAILURE TO SUBMIT A GRIEVANCE WITHIN THIS TIME FRAME CONSTITUTES ABANDONMENT.

| OFFENDER SIGNATURE | DATE |
|---|---|
| X Reginald Clemons | 8-11-2021 |

MO 930-2976 (5-17)

*Amended Page 48*     *(Attachment: Page 16)*

ORIGIN

**STATE OF MISSOURI**
**DEPARTMENT OF CORRECTIONS**
**OFFENDER GRIEVANCE**

RECEIVED force charges

| RECEIVED | GRIEVANCE NUMBER | IRR NUMBER | DATE FILED |
|---|---|---|---|
| AUG 3 0 2021 | | ERDCC21-801 | |
| ERDCC GRIEVANCE OFFICE | | | |

INSTITUTION USE ONLY

| OFFENDER LAST NAME | FIRST | | DOC NUMBER | HOUSING UNIT | UNIT | INSTITUTION |
|---|---|---|---|---|---|---|
| CLEMONS, REGINALD | | | 990102 | 3D-212 | D Wing | ERDCC |

**OFFENDER GRIEVANCE/REQUEST**

It is not clear to what extent an investigation will be conducted and if the video digital recordings will be preserved and maintained as part of the investigation. I want the investigation report to be submitted to the Department Of Justice and the F.B.I. with a copy of all re evidence reviewed and a reviewable audio or written record of all witnesses to be maintained.

I am asking that the investigation covers this enclosed accompanying complaint in its entirety.

All related documents and evidence incorporated contemporaneously and are to be preserved for criminal and civil litigation.

OFFENDER SIGNATURE
X Reginald Clemons

DATE
August 23, 2021

**SUPERINTENDENT RESPONSE**

Mr. Clemons, I am in receipt of your grievance dated August 30, 2021 regarding your allegation that on 2/28/21 COI Hart used excessive force.

Having reviewed your IRR, Grievance, and other pertinent information available to me I found that the Use of Force utilized on 2/28/21. was reviewed by the Use of Force Committee. SOP17-1.1 states that offenders may individually engage in private religious practice in their living quarters unless the practice poses a threat to the safety and security of the institution. I could find no evidence, nor have you provided any, to substantiate your allegation. ~~Therefore, I~~ find your complaint resolved

OFFENDER ATTACHMENT

RECEIVED
OCT 2 9 2021
ERDCC
GRIEVANCE OFFICE

SUPERINTENDENT/SECTION HEAD

DATE
10-27-21

You have the right to appeal this decision to a division director. You must file an appeal form with the grievance officer within seven (7) days from the day you receive this decision. Failure to submit an appeal within this time frame constitutes abandonment of the grievance.

☐ I ACCEPT THIS DECISION          ☐ I APPEAL THIS DECISION

| OFFENDER SIGNATURE | | DATE |
|---|---|---|

IO 091-2377 (10-04)

Amended Page 4a          (Attachment: Page 17)

*Religious*
*6th & 8/11*

STATE OF MISSOURI
DEPARTMENT OF CORRECTIONS
**INFORMAL RESOLUTION REQUEST**

INSTITUTION USE ONLY ☐ **EMERGENCY COMPLAINT**

| OFFENDER NAME | | | | DOC NUMBER |
|---|---|---|---|---|
| Clemons Reginald | | | | 9908102 |

| DATE STAFF MEMBER RECEIVED IRR | COMPLAINT NUMBER | | CATEGORY | HOUSING UNIT |
|---|---|---|---|---|
| 05/24/2021 | ERDCC21-801 | | 2 (F) | 3HB-212 |

**STATE YOUR COMPLAINT/PROBLEM BRIEFLY- ONE ISSUE - BE SPECIFIC**

Hate Crime
Abuse, Assault,
Excessive Use of Force
Religious Persecution
Retaliation
Temporary Restraining Order
(SEE Attached)

**ACTION REQUESTED: STATE REMEDIES YOU ARE SEEKING**

(See Attached)

| OFFENDER SIGNATURE | DATE |
|---|---|
| Reginald Clemons | May 29, 2021 |
| | 9908102 |

**STAFF USE ONLY**

**DISCUSSION OF COMPLAINT (SUMMARIZE RESULTS OF MEETING)**

Not Resolved, offender requests all video footage retained for evidence.

☐ IRR RESOLVED BY DISCUSSION/WITHDRAWN      ☒ IRR NOT RESOLVED BY DISCUSSION

| OFFENDER SIGNATURE | DATE | STAFF SIGNATURE | | DATE |
|---|---|---|---|---|
| X Reginald Clemons | May 24, 2021 | | 128730 | 5/24/21 |

**STAFF FINDINGS/RESPONSE**

| INVESTIGATING STAFF SIGNATURE | DATE | RESPONDENT SIGNATURE | | DATE |
|---|---|---|---|---|
| | | | | |

| REVIEWER SIGNATURE | DATE | RESULTS | |
|---|---|---|---|
| | | ☐ SATISFACTORY | ☐ UNSATISFACTORY |

YOU HAVE THE RIGHT TO FILE A FORMAL GRIEVANCE. YOU MUST FILE A GRIEVANCE FORM WITH THE DESIGNATED STAFF WITHIN SEVEN (7) DAYS FROM THE DATE YOU RECEIVE THIS RESPONSE. FAILURE TO SUBMIT A GRIEVANCE WITHIN THIS TIME FRAME CONSTITUTES ABANDONMENT.

| OFFENDER SIGNATURE | DATE |
|---|---|
| | |

MO 931-3376 (9-17)

Amended Page 50          (Attachment: Page 18)

Grievance No.
ERDCC 21 - 801

IN   THE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

REGINALD CLEMONS,         )
              Plaintiff,      )
                              )
    V.                        )   Case No. _____
MICHELLE BASHAM,              )
(Lieutenant),                 )   (Jury Trial Demanded)
CARL HART,                    )
(Sergeant),                   )   (Seeking Class Action
Mike Miller                   )
(Case Manager),               )   As Class Members To
NURSE JANE DOE,               )
(Corizon Medical Service),    )   Be Certified)
DOUGLAS MONTGOMERY            )
(Function Unit Manage),       )
JOHN DOE (Mr. Wagoner)        )
(Investigator),               )
JOHN/JANE DOE                 )
(Use Of Force Reviewing       )
staff Investigators),         )
THOMAS REAGAN                 )
(Chaplain),                   )
JOHN/JANE DOE No. 1           )
(Officer Applying             )
Restraints),                  )
JOHN JANE DOE(s)              )
[ No. 1-15, Signing           )
Justifiable Use Of            )
Force Report Summery),        )

(Attachment: Page 1a)

Amended Page 51

Grievance No. ERDCC21-801

JOHN/JANE DOE (Major/
Shift Commander),
Defendant(s).

PRISONER CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. §1983

NOTICE:

1. The Parties To This Complaint:
   Reginald Clemons #990102
   Steven Stafford #365963
   Wendell Harris #1272204
   Vincent Hood #1254167
   Mantrel Moore #1215629
   Marcus Howard #1353254
   Mark Holliman #501976

Are seeking class certification as class members by order

of the court.

A. Plaintiff

NAME: REGINALD BYRON CLEMONS

Other names you have used: Reginald (Qadir Walid) Clemons

Prisoner Register Number: #990102

Current Istitutian: Eastern Reception Diagnostic Correctional
     Center, 2727 Highway K (Klu Klux Klan)
     Bonne Terre, Missouri 63628   (Attachment: Page 20)
                 2   Amended Page 52

Grievance No. EADZC21-801

Indicate your prisoner status:

☐ Pretrial detainee   ☐
☐ Immigrant detainee   ☐
☐ Civil committed detainee   ☐

B.  The Defendant(s)

Defendant 1
Name: Michelle Basham

Job or Title: Lieutenant Of The Missouri Department Of Corrections

Badge/Shield Number: N/A

Employer: Missouri Department Of Corrections

Address: Eastern Reception Diagnostic Correctional Center
2727 Highway K (Klu Klux Klan)
Bonne Terre, Missouri 63628

x Individual Capacity   x Official Capacity

Defendant 2

Name: Carl Hart

Job or Title: Correctional Security Sargeant

Badge/Shield Number: E0124214

Employer: Missouri Department Of Corrections

3                                (Attachment: Page 2)
Amended Page 53

Grievance No. ERDZC21-801

Address: Eastern Reception Diagnostic Correctional Center
2727 Highway K (Klu Klux Klan)
Bonne Terre, Missouri 63628

X Individual Capacity  X Official Capacity
Defendant 3
Name: Mike Miller

Job or Title: Case Manager

Badge/Shield Number: N/A

Employeer: Missouri Department Of Corrections

Address:  Eastern Reception Diagnostic Correctional Center
2727 Highway K (Klu Klux Klan)
Bonne Terre, Missouri 63628

X Individual Capacity  X Official Capacity

Defendant 4
Name: Corizon Medical Services, Nurse Jane Doe

Job or Title: Medical Practicianer, Care Giver

Badge/Shield Number: N/A

Employer: Corizon

Address: Eastern Reception Diagnostic Correctional Center
2727 Highway K (Klu Klux Klan)
Bonne Terre, Missouri 63628

(Attachment: Page 22)

Amended Page 54   4

Grievance No. ERD2C2l-801

Bonne Terre, Missouri 63628

X Individual Capacity.   X Official Capacity

Defendant 5
Name: Douglas Montgomery

Job or Title: Function Unit Manager

Badge/shield Number: N/A

Employer: Missouri Department Of Correctional Center

Address: Eastern Reception Diagnostic Correctional Center
2727 Highway K (klu klux klan)
Bonne Terre, Missouri 63628

X Individual Capacity   X Official Capacity

Defendant 6
Name: John/Jane Doe (Mr. Wagner), Investigator

Job or Title: Case Manager

Badge/shield Number: N/A

Employer: Missouri Department Of Corrections

Address: Eastern Reception Diagnostic Correctional Center
2727 Highway K (klu klux klan)
Bonne Terre, Missouri 63628
                                                    (Attachment: Page 23)
Amended Page 55      5

Grievance No. ERDCC21-801

__X__ Individual Capacity     __X__ Official Capacity

Defendant 7
Name: John/Jane Doe, Use Of force Reviewing Staff
        Investigators
Job or Title: Director, Warden, Function Unit Manager,
        Case Manager
Badge/Shield Number: N/A

Employer: Missouri Department Of Corrections

Address: Eastern Reception Diagnostic Correctional Center
        2727 Highway K (Klu Klux Klan)
        Bonne Terre, Missouri 63628

__X__ Individual Capacity     __X__ Official Capacity

Defendant 8
Name: Thomas Reg Reagan, Chaplain

Job or Title: Chaplain, Prisons

Badge/Shield Number: N/A

Employer: Missouri Department Of Corrections

Address: Eastern Reception Diagnostic Correction Center
        2727 Highway K (Klu Klux Klan)
        Bonne Terre, Missouri 63660

__X__ Individual Capacity     __X__ Official Capacity
                            (Attachment: Page 24)

Amended Page 56        6

Grievance No. ERDCC21-801

Defendant 9

Name: John/Jane Doe No. 1 Officer Applying Restraints

Job or Title: Corrections Officer, Corrections Emergency
            Response Team (CERT)
Badge/Shield Number: N/A

Employer: Missouri Department Of Corrections

Address: Eastern Reception Diagnostic Correctional Center
        2727 Highway K (Klu Klux Klan)
        Bonne Terre, Missouri 63628

  X Individual Capacity    X Official Capacity

Defendant 10

Name: John/Jane Does No. 1-15 Signing Justifiable
      Use Of Force Report Summery
Job or Title: Corrections Officer, Corrections Emergency
            Response Team (CERT)
Badge/Shield Number: N/A

Employer: Missouri Department Of Corrections

Address: Eastern Reception Diagnostic Correctional Center
        2727 Highway K (Klu Klux Klan)
        Bonne Terre, Missouri 63660

  X Individual Capacity    X Official Capacity

                            (Attachment: Page 25)

Amended Page 57

                7

Grievance No. ERDZC21-801

Defendant 11
Name: John/Jane Doe, Major/Shift Commander

Job or Title: Captian/Lieutenant

Badge/Shiedd Number: N/A

Employer: Missouri Department Of Corrections

Address: Eastern Reception Diagnastic Correctional Center
2727 Highway K (Klu Klux Klan)
Bonne Terre, Missouri 63628

X Individual Capacity  x Official Capacity

Defendant 12
Name: John/Jane Doe, COI Miskel

Job or Title: Correctian Officer I

Badge/Shield Number: N/A

Employer: Missauri Department Of Corrections

Address: Eastern Reception Diagnostic Correctional Center
2727 Highway K
Bonne Terre, Missouri 63628

____ Individual Capacity ____ Official Capacity

(Attachment: Page 26)

Amended Page 58

8

Grievance No. ERDCC21-891

II. Statement Of Claim

## STATEMENT OF THE CLAIM

This complaint is against the religious deprivations, abuse of force, official misconduct, and persecution caused by the following official misconduct and abuse of authority under the color of law and badge of authority, as follows:

1. On the 28th day of February 28, 2021, at around 9:10 pm, I got off the telephone with my fiancé (soon to be wife), Petra Smith, before going to perform abolution before praying.

2. On the 28th day of February 2021, between the time of 9:10 pm and 9:30 pm, I was sprayed with %c pepper spray, while I was praying with nine other Muslims prisoners, because we were praying in the back of the Housing Unit 4-B Wing Honor dorm,
(Attachment: Page 27)

Amended Page 59      9

Grievance No. ERDCC21-801

during in-house open wing scheduled activities.

3. On the 28th day of February 2021, at around 9:25 pm Corrections Officer Lieutenant Michelle Basham came and ordered Steven Stafford, ~~the prisoner~~ person leading the prayer, to remove his religious head gear, to which he did comply. Next, Lt. Bashon issued an order for us to stop praying, saying that there is no praying allowed outside of the chapel.

4. Before the short five minute prayer could have any chance of being completed, Lt. Basham radioed in an "officer in duress" code 10.5 emergency call order. This brought Correction Officer Sergeant Carl Hart to respond to me and the rest of us praying, as if he were responding to a riot. Violating our and my FIRST Amendment Right to the United States Constitution to freely practice our

(Attachment: Page 28)

Amended Page 60          10

Grievance No. ERDCC21-801

and my religious beliefs, and Assault under

Missouri State Statutes §§ 212.410 and 212.405, RSMo,

violating our and my EIGHTH Amendment Right of

protection against cruel and unusual punishment by

applying an Excessive Use of Force.

5. Sergeant Carl Hart upon arrival immediately initiated

the process of a use of force, by ordering me and those

praying with me, to submit to restraints or be sprayed

with o/c pepper spray. No one was there behind me to

place me in restraints and at no time did I physically

resist or verbally refuse to submit to the process of

being placed in mechanical restraints. There was no

chance to submit to restraints, before Sergeant Carl Hart

applied a use of force, by spraying everyone with %c

Pepper spray and had emptied the WD40 sized can on us.

This was witnessed by everyone that was in Housing Unit

(Attachment: Page 29)

Amended Page 61          11

Grievance No. ERDCC21-801

4-B Wing Honor Dorm Recreational Day room area. Violating our and my FOURTEENTH Amendment right to be free from unequal application of the law and due process, where everyone in the Intensive Therapeutic Community program, pray in the wing all day, every day with raising a single penalogical security concern. (Exhibit: A)

6. After being maced first and then placed in restraints while being escorted out the front door of Housing Unit four (4), I could not see, but I could hear someone who sounded like Steven Stafford, being tussled with. He was screaming things like, "Why are you trying to hurt me?", "get off me", "I can't breath".

b. I definitely heard one of the officers say, "If you can talk you can breathe". I knew I was listening to an assault, but that statement and act of cruel and unusual punishment made me believe I was witnessing

(Attachment: Page 30)

Amended Page 62          12

Grievance No. ERDCC21-801

another murder by Missouri Department of Corrections staff.

7. While covered in mace, wearing only my socks to cover my feet, we were escorted from housing unit 4B wing B to medical, to only have our names and prison numbers taken with no physical examination or medical treatment for the mace that was burning our ears, eyes, nose, throat and skin. I was only in medical for about ten seconds and was immediately turned around and escorted out. We and I were denied medical treatment to relieve our wantonly inflicted pain and suffering caused by being maced.

8. I was escorted from medical across a freezing cold muddy field, that was approximately one hundred and fifty (150) yards long. We were forced and dragged across the softball field, instead of being able to use the sidewalk, to get to housing unit 1A wing. As a form of

(Attachment: Page 31)

Amended Page 63       13

Grievance No. ERD2C21-801

wantonly cruel and unusual & punishment that is meant to demean and cause a person to suffer the debasement that is dehuminizing and degrading enough to cause mental anguish and trauma. Especially when considering that there is a concrete sidewalk running along side the softball field & that also leads to Housing Unit 1, in a more dignified and humane manner.

9. When I arrived at Housing Unit 1-A Wing, at approximately 9:45 pm, before the regularly scheduled 10:00 pm name and number prisoner head count time, I was placed in Housing Unit 1 cell #118 and locked in that cell with absolutely no amenities other the a working sink and toilet. (The evidence that establishes this time line is: My phone records with Petra Smith will show that I, Reginald Clemons, got off the phone at 9:10 pm; count log will show that we were counted over in Housing Unit 1-A
(Attachment: Page 32)

Amended Page 64        14

Grievance No. ERDCC21-801

Wing during 10:00 pm head count; the prison control tower or control shack movement logs; and the prison cameras from in front of the medical area called the medication pass runner; camera video from in front of Housing Unit 1 A Wing; the prison camera view from inside Housing Unit 4-B Wing; the camera view from in front of Housing Unit 4).

10. We, the individuals that were maced for praying, received cruel treatment by being forced to sit in those cells for 4 hours with only our mace covered clothes to wear and nothing else. There were no matresses in the cells, only steel bunks beds, a stainless steel sink and toilet with a vent blowing cold air as I sat in my room boxers, mace covered t-shirt, and mud soaked socks. Under these wantonly cruel and unusual conditions that violated our and my 8th Amendment Rights of (Attachment: Page 33)

Amended Page 65

15

Grievance No. ERDCC21-801

protection to the United States Constitution, against cruel and unusual punishment.

11. I, Reginald Clemons, along with those that were praying, I sat in those cells with everyone else for 16 hours without having our eyes rinsed out or having been provided a shower, or any means by which to stop these chemical irritants from continuing to burn my eyes, ears, nose, throat, mouth and skin, as they are designed to do.

12. We did not receive matresses, hygene items, clothing, linen, etc. (a.k.a. Temperary Administrative Segregation Confinement TASC property) until after 2:00 am in the early morning hours of the 1st day of March 2021. We were not provided our TASC property until after we were to receive our conduct violations. Our and my task property can be seen on the video for 1-A sitting on the table (Attachment: Page 34)

Amended Page 66                    16

Grievance No. ERDCC21-801

for hours as they refuse to provide use adequate ameneties. I did not receive my conduct violation until 2:18 am on the 1st day of March 2021, which reads as follows:

a). "On the above date and time I was called to HU 4-B wing for a group of offenders who were praying and refusing to disperse from the immediate area. At this time, I issued offender Clemons, Reginald #990102 several directives to submit to wrist restraints to which he refused. I then gave the offender a final warning that if he failed to submit to restraints further action would be taken. The Offender continued to refuse and I applied a short burst of % pepper spray to the facial area region of the offender. At this time, other staff entered and assisted with placing him in restraints escorting him from the wing. At this time, other staff entered and assisted with

Amended Page 67

17

(Attachment: Page 35)

Grievance No. ERDCC21-801

placing him in restraints escorting him from the wing. By the offenders own actions this places him in violation of rule 9.4 Organized Disobedience and 20.1 Disobeying an Order.

NOTE: This action took place with 7 total offenders who refused to disperse and other offenders on recreation in the wing.

THE RESULTED IN A SPONTANEOUS USE OF FORCE."

b). My statement on the conduct violation was;"All I was doing was praying and God will justify my right to praise Him." After the conduct violations were issued to all seven of us. Then we were provided matresses and the most meager of resources. Not until at least 16 hours later, on the next day, on the 1st day of March 2021, we and I were finally provided showers to wash the mace off of my face and body. I still find it hard to believe

(Attachment: Page 36)

Amended Page 68        18

Grievance No. ERDCC21-801

that this actually happened to me for praying.
(Exhibit: A)

13. The next day on the 1st day of March 2021, at
around 8:00 a.m., we started b hearing, by word of mouth
from inmate/offender workers and staff members, that the
Deputy Warden, Mathew Raymond, called all the Muslims
to the Chapel to discuss what happened during the
incident from the night before. Deputy Warden Raymond
told the assembly of incarcerated Muslims who had
gathered in the chapel, that he, the Chaplain and
security staff wanted to find a way to resolve this
matter and make ~~right~~ it right. From what he had
heard, no one that was praying had shown any signs of
aggression and he would order that ~~gang task force~~
~~officer~~ Gang Task Force Officer Matthew Downs
provide him with a video tape. Muslim offender Saudi
Amended ~~A~~ Page 69    (Attachment: Page ~~228~~ 37)
                    1a

Grievance No. ERDCC21-801

Brown, Register No. 1263342, asked the Deputy Warden have they ( the Muslims that were maced for praying) had any showers or medical attention. Deputy Warden Raymond said that he would have Gang Task officer Downs check into that and if showers had not been provided, he would make sure that the Muslims that were maced while praying would receive medical attention attention and showers. Deputy Warden A Raymond stated that if after he reviews the video for himself, the video shows that the people praying showed no signs of aggression, he would have the violations reduced from an organized disobedience, to a rule 19 creating A Disturbance. Then when the offenders file their IRR/Grievances to have the Conduct Violations dismissed and expunged, he would dismiss and expunge the violations whenever they reach him in the

(Attachment: Page 38)

Amended Page 70    20

Grievance No. ERDCC21-801

grievanc procedure. The Deputy Warden Raymand also
said that he would order that the affenders who were
praying have their honor status reinstated. This was
all suppose to take place as soon as pass possible, to
resolve the matter.

14. On the 1st day of March 2021, at around 10:00 am,
Gang Task Officer Matthew Downs came to Housing
Unit 1-B Wing, to speak to us about the events that
had taken place during the chapte chapel meeting, as
they referred to us being maced, while we were
praying the night before. (The video and audio recording
recordings of the chapel meeting that took place in
the early morning hours of March 1, 2021, between the
times of 7:30 am and 10:00 am, recording the improm
impromptu meeting explained in paragraph
13 above, needs to be preserved as evidence for both
(Attachment: Page 39)
Amended Page 21      21.

Grievance No. ERDCC21-801

criminal and civil judicial proceedings, as not to abstruct the ends and means of justice.)

15. While the Housing Unit 1-A Wing, Gang Task Force Officer Mathew Downs explained that, he would personally be taking the video up to the Deputy Warden Matthew Raymand right after he leaves here, i.e. Housing Unit 1, The Deputy Warden Raymand stated that if he reviews the video and those that were praying, showed no signs of aggression when we were maced, he would make this right. Gang Task officer Downs further explained that we would be getting out of the lockup ad. seg. the following week, as soon as it is possible for everything to be reviewed and processed. All the individuals that were praying would be released from solitary Administrative Segregation (Ad. Seg.)

(Attachment: Page 40)

Amended Page 72   22

Grievance No. ERDCC21-801

confinement, placed back into the cells we came from in the Honor Dorm and have our honor status reinstated and restored.

16. On the 1st day of March 2021, at around 10:30 am, we, the individuals that were maced while praying, were provided showers and the Corizan nurse came around to check our vital signs and pass out Health Service Request Forms, over 16 hours after we had been maced the night before.

17. On the 10th day of March 2021, the Adjustment Board came to Housing Unit 1 to review the reporting officer's statement as evidence, interview me, and make a recommendation on this major conduct violation, which reads in relevant part as follows:

a) Offender Statement: "I have not had access to the grievance procedure. I would like to retain the use

Amended Page 73

(Attachment: Page 41)

23

Grievance No. ERDCC21-801

of force video for civil litigation."

b) Evidence: COII Carl Hart's statement that he was called to HU 4 B-wing for a group of offenders who were praying and refusing to disperse from the immediate area. COII Carl Hart issued offender Clemons several directives to submit to restraints to which he refused. He then gave offender Clemons a final warning that if he failed to submit to restaints, further action would be taken. Offender Clemons continued to refuse, and COII Hart applied a short burst of %c pepper spray to the facial region of offender Clemons. Other staff then entered and assisted with placing offender Howard in restraints and escorted him from the wing.

c) Findings: GUILTY Based on the Evidence

d) Signed By: Heather Crews Employee No. 56536

RECOMMENDED ACTION OF DEPUTY WARDEN OR FUNCTION UNIT MANAGER          (Attachment: Page 42)
Amended page 74    24

Grievance No. ERDcc21-801

( ) RECOMMENDED AS SUBMITTED   (X) RECOMMENDED MODIFICATIONS

( ) PREA

Retain #1

Retain #2  10-Days.  Dtd Dis/seg  Begin: 3-1-21  End: 3-10-21

Credit Time Served

Signed: Jerry Bingham, Asst. Warden  DATE: 3-10-21

18. Upon being released from the HU1-A Wing ad. seg./dis.seg. confinement, I along with those who were maced while praying, filed numerous IRR/Grievances complaints with the classification staff for: Assault; Religious Persecution; Hate Crimes; and for the Use of Force video to be retained as evidence and for formal charges to be filed for criminal and civil litigation complaints, against COII Carl Hart and COIII Lieutenant Michelle Basham.

(Attachment: Page 43)

Amended Page 75    25

Grievance No. ERDCC21-801

19. On the 11th day of March 2021, at around 10:00 am, Steven Stafford spoke directly with Deputy Warden Matt Raymond, while they were on the sidewalk near the Captain's Shack, Canteen, and Food Service entrances. The Deputy Warden Matt Raymond told Steven Stafford that there is no rule against praying in the wings and that the Muslims are allowed to pray in the wing.

20).
   Bismillahir Rahmanir Rakhiym
   (Please Feel Free To Post and Publisize This True Story)

   Reginald Clemons - 990102
   Eastern Reception Diagnostic Correctional Center
   2727 Highway K
   Bonne Terre, Missouri 63660

   March 18, 2021

Warden And Chief Of Security
ERDCC
Front Offices

In re: Religious Persecution, Threats And Assault
                                    (Attachment: Page 44)

Amended Page 26        26.

Grievance No. ERDCC21-801

Dear Warden:

b). Hello! How are you doing today on Gods green Earth? In the water colors of life, we find a fragile beauty of creation unfolded before us.

c). On Saturday, March 13, 2021, we were praying and once again were interrupted under threat of serious physical harm. Officer Miskel came in the wing and locked down the housing unit 4B, because we were praying in the wing.

d). After we locked down, Steven Stafford was escorted to the back offices of Housing Unit 4. Where he was threatened that if we were seen praying again, we would have the same treatment as the first time, on February 28, 2021.

e). Officer Carl Hart came to Housing Unit 4 after the wing was reopened and went to the back offices of Housing Unit 4. Lt. Renk told Steven Stafford that he and his officers don't care what the Warden said, if its not in writing, then it does not exist.

f). So I'm asking that the Warden issue an Inter Office Communication, that we can pray in the wing and wear Kufis.

20. I, along with those who were maced while praying, were threatened that if we were to continue praying in the wing, we would be attacked the same way we were the first time.

(Attachment: Page 45)

Amended Page 22    27

Grievance No. ERDCC21-801

21.   On the 15th day of May 2021, after hearing ~~what~~

what happened to the Muslims attempting to pray on

February 28, 2021, had ~~supposed~~ happened again on March

13, 2021, with the Deputy Warden's expressed permission,

Chaplain Thomas Reagen hand delivered this proposed

documentation to the Deputy Warden Matthew Raymond.

Which ~~record~~ read as follows:

a).

OFFENDER
CORRESPONDENCE

DATE: Monday, March 15, 2021
TO: Mr. Matt Raymond - Deputy Warden
FROM: Mr. Stacy Shelton - Al Islam Facilitator
RE: Permission To Pray In Housing Unit

It has recently come to my attention that on Saturday, March
13, 2021, Muslims attempted to pray again in Housing Unit 4.
However, several Corrections Officers told them that they are
not allowed to pray in the Common Area. During our Al-Islam /
staff meeting, you stated that prayer would be allowed in the
wings.

Our religious community would like to comply with the
regulations of the institution. In our effort to assist your
Amendeded Page 78      28      (Attachment: Page 46)

Grievance No. ERDCC21-801

office with this Issue, we have developed a potential
I.O.C. that addresses this miscommunication.

If you have any questions or concerns, please contact me.
Thank You in advance for all of your assistance.

Mr. Stacy Shelton

b).

## POTENTIAL I.O.C.

Effectively Immediately, Offenders may individually or assemble
together to offer prayer within the Wing Common Area unless
the religious practice poses a threat to the safety and
security of the institution. Offenders participating in prayer
must adhere to the following guidelines:
  1. Offenders may not block the entry to cell doors
     or disrupt the normal flow of traffic for other
     Offenders or Correctional Officers conducting Wing checks.
  2. Offenders must conduct their religious activities in a
     respectful manner and peacefully disassemble if asked
     by Correctional Officer with respect for various
     circumstances that may arise.
  3. Offenders who feel that their religious activities were
     disrupted unjustly are ~~encoura~~ encouraged to file a
     grievance which WILL be reviewed by the Deputy
     Warden.
  4. Offenders residing in General Population must follow
     normal 9 cell rotation rules and conduct group religious
     activities during their in-house recreation periods.
                              (Attachment: Page 47)

Amended Page 29        29

Grievance No. ERDCC21-801

22. On the 16th Day of April 2021, I, Reginald Clemons, filed

a retaliation complaint against COII Carl Hart for him trying to

have me removed from the Honor Dorm under false pretenses,

by the Case Manager Mike Miller,. (Exhibit: C), which reads as

follows:

IRR/Grievance Complaint No. _____

Complaint By: Reginald Clemons 990102
Location: Housing Unit 4 Back Office
Individuals Involved: Carl Hart, Mike Miller
                      Douglas Montgomery
Date of Incident: April 13, 2021, Time: 8:00am
Constitutional Right Being Violated:
                      FIRST Amendment Right to
                      be free from retaliation
                      and FOURTEENTH Amendment
                      Right to Due Process

            EVENTS AT ISSUE
On April 13, 2021, at around 8:00 am, case manager

Mike Miller had me called to the back office, via the

bubble officer COI Ricks. Upon arriving in his office,

he told me, "I have some good news and some bad news.
                      (Attachment: Page 48)
Amended Page 80          30

Grievance No. ERDCC21-801

"Which one do you want to hear first?" I g replied,

"The bad news!"

Miller said, "Okay, today I am the acting FUM and the FUM has told me to remove you from the honor dorm while he is gone. Because the conduct violation you received on the 28th of February was a Dis. Seg. and not an Ad. Seg. confinement violation, for at least one year.. You can not be in the Honor Dorm for at least one year."

I responded, "Well, that violation is the first one that I have had in five years and plus its going to be dismissed and expunged. So why move me out for a conduct violation thats going to be dismissed and expunged?"

Mike Miller explained, "Well the FUM said I have to move you while he's gone today and until the violation

Amended Page 81                    (Attachment: Page 49)

31

Grievance No. ERDCC21-801

is expunged, I have to follow procedure, because you no longer qualify for the honor dorm."

I said, "The deputy warden is the one that ordered that we be moved back into the honor dorm, so why would..., better yet, I am going to go pack my stuff and wait to be moved."

While I was gone, Mike Miller got on the phone and called the deputy warden Jerry Bingham after I left his office to call an attorney organization about this retaliation and harassment, being

I took this position, because it dawned on me that Sgt. Carl Hart was in housing unit 4, for the past three days, on the 7:00 pm to 7:00 am shif on April 11, 12, 13, 2021. Which means that Sargeant Carl Hart was here the same day that Mike Miller is trying to move me aut of the honor dorm. This happened the
(Attachment: Page 50)

Amended Page 82      32

Grievance No. ERDCC21-801

next day after Sgt. Hart tried to have Steven Stafford removed from his food service job, by having food service cook La Marsh fire him. She said that security staff no longer wanted him working in food service, but without any other justification or valid grounds.

I believe these two incidents are connected by the common thread that is Sgt. Hart, because both Steven Stafford and I have complained against Sgt. Carl Hart for hate crimes, Religious Persecution, excessive use of force, and criminal assaulting us and attacking us while we were praying together on February 28, 2021, at around 9:15 pm.

We were left in the hole for 16 hrs. plus, covered in mace and never provided medical treatment for the mace, nor given showers. After being let out of the seditary confinement on March 10, 2021. We all filed grievances (Attachment: Page 51)

Amended Page 83          33

Grievance No. ERDCC21-801
against Lt. Michelle Basham and Sgt. Carl Hart and I believe that this is a part of the follow-up attacks to retaliate against us for filing complaints. Which actions make me fear that the video of the February 28, 2021 attack has been destroyed.

I am afraid of Lt. Basham and Sgt. Hart taking further retaliatory action against me and other Muslims and I would like a restraining order and institutional order preventing Sgt. Hart and Lt. Basham from working or supervising others in the housing unit to which I am assigned.

For Mike Miller to take a voice stress analysis truth verification test, to establish the truth behind the motivation of his actions and for Lt. Basham and Sgt. Hart to take the same truth verification examination stress test as Mike Miller.
(Attachment: Page 52)

Amended Page 84        34

Grievance No. ERD2221-801

The individuals that were attacked and had their

rights violated while they were praying in this complaint:

The Person Leading The Prayer:

Steven Stafford  #365963

Lined Up From Left To Right:

Reginald Clemons    # 990102
Wendell Harris      #1272204
Vincent Hood        #1254167
Mantrel Moore       #1215629
Marcus Howard       #1353254
Mark Holliman       #501976

Amendment [1791]

Congress shall make no law respecting an establishment

of religion, or ~~prohibition~~ prohibiting the free exercise

thereof; or abridging the freedom of speech, or of

the press; or the right of the people peacebly to

assemble, and to petition the government for a redress

of grievances.

(Attachment: Page 53)

Amended Page 65    35

Grievance No. ERDcc21-801

Amendment IV   [1791]

The right of the people to be secure in their persons, houses, papers, and affects, against unreasonable search and seizure, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Amendment V   [1791]

No person shall be held to answer for a capital, or otherwise infamous crime, unless as a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the military, when in ~~an~~ actual service in time of war or public danger, nor shall any person be subject for the same offense ~~twice~~ to be twice put in

(Attachment: Page 54)

Amended Page 86        36

Grievance No. ERDCC21-801

jeorpardy or life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without ~~comp~~ just compensation.

Amendment VI  [1791]

In all criminal prosecutions, the accused shall enjoy the right to a speedy trial, by an impartial jury of the state and district shall have been previously ascertained by law, and to be uninformed of the nature and cause of the accusation; to be confronted with the witness against him; to have compulsory process for obtaining witnesses in his ~~for~~ favor, and to have the assistance of counsel for his defense.

(Attachment: Page 55)

Amended Page 87

37

Grievance No. ERDcc21-801

Amendment VIII [1791]

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted.

Amendment XIV [1868]

Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No state shall make or enforce any law which shall abridge the privilege or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny any person within its jurisdiction the equal protect of the laws.

Section 2. Representatives shall be apportioned among

(Attachment: Page 56)

Amended Page 86          38

Grievance No. ERDCC21-801

the several states according to their representative

number, counting the whole number ~~too~~ of the

persons in each state, ~~even~~ excluding Indians not

taxed. But when the right to vote at any election

for the choice of electors for ~~the~~ President and Vice

President of the United States, Representatives

in Congress, the executive and judicial officers

of a state, or the members of the legislature

thereof, is denied to any of the male inhabitants

of ~~such~~ such state, being twenty-one years of age,

and citizens of the United States, or in any

way abridged, except for participation in rebellion,

or other crime, the basis of representation

therein shall be reduced in the proportion

which the number of such male citizen shall

bear to the whole number of male citizens

(Attachment: Page 57)

Amended Page 89          39

Grievance No. ERDCC21-801

twenty-one years of age in such state.

Section 3. No person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any state, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any state legislature, or as an executive or judicial officer of any state, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-third of each House, removes such disability.

Section 4. The validity of the public debt of the United States, authorized by law, including debts
(Attachment: Page 58)

Amended Page 90        40

Grievance No. ERDCC21-801

incurred for payment of pensions and bounties

for services in suppressing insurrection or rebellion,

shall not be questioned, but neither the United

States nor any state shall assume or pay any

debt or obligation incurred in aid of insurrection

or rebellion against the United States, or

any claim for the loss or emancipation of any

slave; but all such debt, obligations and claims

shall be held illegal and void.

Section 5. The Congress shall have power to enforce,

by appropriate legislation, the provisions of this

article.

Your statement of claim must include all of the following

information:

1. What happened to you?

For the act of engaging in prayer to peaceably

(Attachment: Page 59)

Amended Page 91    41

Grievance No. ERDCC21-801

observe my faith and beliefs, I was douses with ½ pepper spray, assaulted, denied medical treatment for 16 + hours, dragged through the mud in sock feet, denied an appertunity to shower for 16+hours, placed in a bear bones strip-cell(s), for wantonly atypical punishment and persecution for praying.

2. When did it happen?

Between the times of the 28th day of February 2021, at 9:10 pm and the 1st day of March 2021, at 12:30 p.m.

3. Where did it happen?

Missouri Department of Corrections - EASTERN RECEPTION DIAGNOSTIC CORRECTIONAL CENTER Housing Unit 4-B Wing, Housing Unit 4 Front Door porch, Corizon Medication Pass Front Door a.k.a. Medical Runner, Housing Unit 1-A Wing, Chaple Main Assembly Room,

(Attachment: Page 60)

Amended Page 92    42

Grievance No. ERDCC21-801

for chapel services.

    4. What injuries did you suffer?

    Chemically burned eyes, ears, nose, mouth, throat, and skin, mental trauma, lost right to practice my religious belief, assaulted by application of physical restraints, forced  to walk in bear socked feet of footed through cold wet mud risking hypothermia, victimized by hate crime, religious persecution, retaliation for filing a formal complaint.

    5. What did each defendant personally do, to harm you?

1. Lt. Michelle Basham initiated the excessive use of force attack by standing over us, me and the other class members, while we were praying and then ordering me and the other Muslims to stop praying before calling in orders requiring an aggressive use of force response.

                              (Attachment: Page 61)

Amended Page 93       43

Grievance No. ERDCC21-801

2. Sgt. Carl Hart attacked me and those that were praying along with me and maced us for praying, and destroyed someone's fledgeling faith, causing them to revert back to drug use, in their hopeless state of mind.

3. Unknown John/Jane Doe officers placed me and those that were praying, along with me, in mechanical restraints for praying and took me and those praying with me, to the administrative solitary seditary confinement cells.

4. Mike Miller, and Carl Hart have taken retaliatory action against me and Steven Stafford for filing related complaints against Sgt. Carl Hart. The retaliatory actions have no justifiable basis in fact, policy or reasonable circumstances
(Attachment: Page 62)

Amended  Page 44          44

Grievance No. ERDCC21-801

to be seen as motivated by any other reason than in response to our complaints of hate crimes, religious persecution, excessive use of force, assault, unlawful restraint, etc..

III. Injuries

Last of opportunity to participate in college programs courses and classes, ~~loss~~ ~~loss~~ loss of privileges to have access to personal property, chemical burns on skin, eyes, ears, nose, throat, lungs, and mouth for 16+ hours, abuse under excessive use of force, traumatic fear induced upon family, significant other and loved ones, denial of opportunity to equally practice my Islamic faith while incarcerated and as practiced prior to February 28, 2021, suffering retaliation and intimidation for attempting to pray and/or file complaints, etc..

Amended Page 95    45        (Attachment: Page 63)

Grievance No. ERDCC21-801

IV. Relief

Prohibitive injunction against Michelle Basham
and Carl Hart being within 500 yards of the
plaintiffs until the conclusion of this law suit,
Mandatory Injunction Requiring Safe Passage to
Pray in the wings of housing units or at prison
work sites, punitive damages of $1,000,000.00 to
each plaintiff, nominal damages of $1.00,
Mandatory Injunctive relief requiring ~~those~~ that
there be a Muslim faith based chaplain when
the predominant faith of prisoners is AL-ISLAM,
$10,000.00 for each missing video that has
been requested herein but ~~whoever~~ failure to
disclose within 30 days of any court order to
compel disclosure, Mandatory injunctive relief
requiring that all ~~pro~~ previsions to practice the

(Attachment: Page 64)

Amended Page 96        46

Grievance No. ERDCC21-801

Islamic faith be provided by the inmate canteen fund without the exclusion of donations or individual's ability to personally purchase items from Islamic venders: such as prayer oil; prayer beeds; prayer rugs; thob prayer garments; dried dates fruits; refrigerator in chapel to store religious food items (to prevent theft of religious items in the prison kitchen storage) 2,000 caleries a day diet during the Holy Month of Rahmadthan; Cuffies; Qurans, Court cost and attorney fees to be paid by defendants, Injunctive order to release video of use of force at issue herein for public consumption in an order for disclosure and discovery, actual damages of $100,000.00 for each plaintiff, permanent injunction for prison staff to wear video audio

(Attachment: Page 65)

Amended Page 97     47

Grievance. No. ERDCC21-801

body cameras, injunctive relief for institutional

videos to be available for use in duly due process

in prisoners defense for challenging both

major and miner conduct violations, and any

other relief the court deems just proper and

equittable.

V. Exhaustion of Administrative Remedies/Administrative

Procedures

Several Informal Resolution Request have

presently been filed for assault, religious

persecution, excessive use of force, hate

crimes, under the state administrative

grievance procedure, but the state administrative

grievance procedure is inadequate to resolve

the immediate threat and maintaining of its

continuous harm or protection against denial

(Attachment: Page 66)

Amended Page 98            48

Grievance No. EADCC21-801

of the right to pray or destruction of evidence.

Injunctive relief is required to protect against

retaliation and further religious persecution

or repression of rights to pray and practice

my religious faith as a class member.

The Prisoner Litigation Reform Act

A. Did your claim(s) arise while you were

confined in a jail, prison, or other correctional

facility?

[X] Yes          [ ] No

If yes, name the jail, Prison or ther correctional

facility where you were confined at the time of

the event giving rise to your claim(s):

St. Louis City Justice Center

[X] Yes          [ ] No

(Attachment: Page 67)

Amended Page 99    49

Grievance No. ERDCC21-801

B. Does the jail, prison or ther correctional

Facilities where your claim(s) arose have a

grievance procedure?

[X] Yes                    [ ] No

C. If yes, does the grievance procedure at the

jail, prison or other correctional Facility

where your claim(s) arose other cover same or

all of your claims? Same

[X] Yes                   [ ] No

If yes, which claim?

Wrangfoul disciplinary confinement and

requested review of video evidence to illustrate

that the Conduct vialation report was based

an false and fabricated evidence.

D. Did you file a grievance in the jail, prison

or other correctional Facility where your

(Attachment Page 68)

Amended Page 100      50

Grievance No. ERDCC21-801

claim(s) arose concerning the facts relating

to this complaint?

[x] Yes                [ ] No

If no, did you file a grievance about the

events you describe in this complaint at a

any other jail, prison, or other correctional

facility?

[x] Yes               [ ] No

E.  If you did file a grievance:

1. Where did you file the grievance?

on the 5th Floor of the St. Louis City Justice

Center, with case manager Falita Bolnes, in

2016 and 2017.

2. What did you claim in your grievance?

(Attach a copy of your grievance if available)

I was sitting quietly saying nothing and
                                            (Attachment: Page 69)

Amended Page 101        51

Grievance No. ERDCC21-801

doing nothing when the reporting officer claimed that I was inciting a riot and screaming and yelling in his face and making threatening statements.

3. What was the result, if any? (Attach a copy of any written response to your grievance, if available)

The conduct violation was dismissed and expunged, and superintendent Adrian Barnes ordered that I receive a formal apology. Officer Nesbitt reviewed the video and observed that I was not involved in any of the disruptive activity.

4. What steps if any, did you take to appeal that decision? Is the grievance prood procedure p completed? If not, explain why not.
(Attachment: Page 70)

Amended Page 102    52

Grievance No. ERDCC21-801

(Describe all efforts to appeal to the highest level of the grievance process.)

I took no further action because my attorney Charles Moreland and the law firm Aikin, Gump, and Straus said that it was not important enough for them to get involved with, because they were criminal attorneys and not civil attorneys.

F. If you did not file a grievance:
   N/A

1. If there are any reasons why you did not file a grievance, state them here.
   N/A

2. If you did not file a grievance about your complaints, did you inform officials of your
   (Attachment: Page 71)

Amended Page 103      53

Grievance No. ERDCC21-801

claim, state who you informed, when and
how, and their response, if any:

~~Superinte~~ Superintendent Adrian Barnes

Case Worker Falita Baines.

Grievance Officer

Emergy Response Officer Nesbit (John/Jane Doe.)

G. Please set forth any additional information
~~at~~ that is relevant to the ~~exxxxxt~~ exhaustion
of your ~~dxxxx~~ administrative remedies.
(Note: You may attach as exhibits to this
complaint any documents related to the exhaustion
of your administrative remedies.)

(Attachment: Page 72)

Amended Page 104        54

## INFORMAL RESOLUTION RESPONSE

**OFFENDER NAME AND NUMBER:** Clemons, Reginald #990102

**IRR LOG NUMBER:** ERDCC-21-373

**HOUSING UNIT:** 4B-212

**NATURE OF COMPLAINT:** Your complaint as I understand it is that you feel that on 02/28/2021 you were assaulted, maced and attacked with mechanical restraints. You state that you were doing nothing wrong and were praying in the wing. You feel that this is a hate crime, religious persecution, assault and a civil rights violation. Your requested remedy is to receive compensation for damages, file criminal charges against officers involved and retrain them from further abuse.

**FINDINGS:** I have reviewed your IRR and supporting documentation and have found that on 02/28/2021 you and a group of other offenders participated in a group prayer in the housing unit wing. This was done among in-house recreation. Staff gave directives for you and the others to disperse and you failed to follow the directives. A spontaneous use of force was utilized to gain your compliance. It should be noted that according to policy, *SOP17-1.1-all meeting and activities of a religious or spiritual nature shall be scheduled through the chaplain and shall be held in the chapel or other designated areas under the control and supervision of the chaplain or designee.-Offender may individually engage in private religious practice in their living quarters unless the practice poses a threat to the safety and security of the institution. Staff members shall not be challenged or hindered by offenders in the performance of their duties relative to monitoring services or other essential functions. "* To say that you were doing nothing wrong is clearly a misstatement. You and the other offenders participating in this group prayer were violating policy as stated above. You were asked to stop what you were doing but you refused. Staff attempted to gain your voluntary compliance, but you refused to follow their directives. It should be noted that on 06/23/2021 you received a grievance form since this response exceeded the time frame. I encourage you to continue with your grievance process.

**RECOMMENDATION:** Based on my findings I cannot support your IRR, therefore your IRR is denied.

Amended Page ~~108~~ 105

(Attachment: Page ~~74~~ 73)

**STATE OF MISSOURI**
**DEPARTMENT OF CORRECTIONS**
**OFFENDER GRIEVANCE**

Force

RECEIVED

GRIEVANCE NUMBER

JUL 19 2021

6/23/21 (NO)

IRR NUMBER

ERDCC 21-373

DATE FILED

| INSTITUTION USE ONLY | | JUL 19 2021 | | | | |
|---|---|---|---|---|---|---|
| OFFENDER LAST NAME | FIRST | ERDCC GRIEVANCE OFFICE | DOC NUMBER | HOUSING UNIT | UNIT | INSTITUTION |
| Clemons, | Reginald | | 990102 | 3B | 212 | ERDCC |

**OFFENDER GRIEVANCE/REQUEST**

See Attached - Previously
Filed I.R.R: On File

OFFENDER SIGNATURE  *Reginald Clemons*

DATE  July 12, 2021

**SUPERINTENDENT RESPONSE**

Mr. Clemons, I am in receipt of your grievance dated July 19, 2021 regarding your allegation that COII Hart used excessive force on 2/28/21.

Having reviewed your IRR, Grievance, and other pertinent information available to me I found that the Use Of Force on 2/28/21 was reviewed by the Use Of Force Committee. The force employed was that minimally necessary to control the incident and maintain good order and security. CDV ERDCC21-01615 was dismissed and expunged. Therefore, I find your complaint resolved.

OFFENDER
ATTACHMENT

RECEIVED

NOV 18 2021

ERDCC
GRIEVANCE OFFICE

SUPERINTENDENT/SECTION HEAD

DATE  11/17/21

ou have the right to appeal this decision to a division director. You must file an appeal form with the grievance officer within seven (7) days from e day you receive this decision. Failure to submit an appeal within this time frame constitutes abandonment of the grievance.

☐ I ACCEPT THIS DECISION        ☑ I APPEAL THIS DECISION   (Attachment: Page 34)

OFFENDER SIGNATURE   *Amended Page 106*

DATE

931-3377 (12-04)

STATE OF MISSOURI
DEPARTMENT OF CORRECTIONS
**INFORMAL RESOLUTION REQUEST**          UOF

INSTITUTION USE ONLY ☐ EMERGENCY COMPLAINT

| OFFENDER NAME Clemons Reginald | DOC NUMBER 990102 |
|---|---|

| DATE STAFF MEMBER RECEIVED IRR 3-15-2021 | COMPLAINT NUMBER ERDCC-21-373 | CATEGORY 7A | HOUSING UNIT 4B-212 |
|---|---|---|---|

**STATE YOUR COMPLAINT/PROBLEM BRIEFLY- ONE ISSUE - BE SPECIFIC**

On February 28, 2020, I was assaulted, maced, and attack with mechanical restraints by officers Bashen and Nast, at 9:10 pm to 10:00 pm. For doing nothing more or less than praying a Muslim prayer called Salat. I was placed in one house cell A-118. This is a hate crime, religious persecution, assault and civil rights violations of the 1st and 8th Amendment to the U.S. Constitution.

**ACTION REQUESTED:  STATE REMEDIES YOU ARE SEEKING**

Please retain Use Of Force video and provide compensation for damages, and file criminal charges against officers involved and restrain them from further abuse.

| OFFENDER SIGNATURE Reginald Clemons | DATE 3-4-2021 March 4, 2021 |
|---|---|

**STAFF USE ONLY**

**DISCUSSION OF COMPLAINT (SUMMARIZE RESULTS OF MEETING)**

Unable To resolve by discussion

☐ IRR RESOLVED BY DISCUSSION/WITHDRAWN          ☒ IRR NOT RESOLVED BY DISCUSSION

| OFFENDER SIGNATURE Reginald Clemons | DATE July 13, 2021 | STAFF SIGNATURE Alex Patten 157819 CCM | DATE 7/13/2021 |
|---|---|---|---|

**STAFF FINDINGS/RESPONSE**

RECEIVED

SEP 20 2021

ERDCC
ASSISTANT WARDEN

| INVESTIGATING STAFF SIGNATURE | DATE 9-16-21 | RESPONDENT SIGNATURE Douglas W. Nast | DATE 9-16-2021 |
|---|---|---|---|
| REVIEWER SIGNATURE Jen Boyles, AW-OPns | DATE 9-21-21 | RESULTS ☐ SATISFACTORY  ☒ UNSATISFACTORY | |

YOU HAVE THE RIGHT TO FILE A FORMAL GRIEVANCE. YOU MUST FILE A GRIEVANCE FORM WITH THE DESIGNATED STAFF WITHIN SEVEN (7) DAYS FROM THE DATE YOU RECEIVE THIS RESPONSE.  FAILURE TO SUBMIT A GRIEVANCE WITHIN THIS TIME FRAME CONSTITUTES ABANDONMENT.

| OFFENDER SIGNATURE Reginald Clemons | DATE 9-27-2021 |
|---|---|

MO 931-3376 (8-17)          Amended Page 107          (Attachment: Page 21)
                                                                                         75

**STATE OF MISSOURI**
**DEPARTMENT OF CORRECTIONS**
**INFORMAL RESOLUTION REQUEST**      UOF

INSTITUTION USE ONLY    ☐ EMERGENCY COMPLAINT

| OFFENDER NAME | DOC NUMBER |
|---|---|
| Clemons  Reginald | 990102 |

| DATE STAFF MEMBER RECEIVED IRR | COMPLAINT NUMBER | CATEGORY | HOUSING UNIT |
|---|---|---|---|
| 3-15-2021 | ERDCC-21-373 | 7A | 4B-212 |

**STATE YOUR COMPLAINT/PROBLEM BRIEFLY- ONE ISSUE - BE SPECIFIC**

On February 28, 2020, I was assaulted, maced, and attack with mechanical restraints by officers Bashen and West, at 9:10 pm to 10:00 pm. For doing nothing more or less than praying a Muslim prayer called Salat. I was placed in one house cell A-118. This is a hate crime, religious persecution, assault and civil rights violations of the 1st and 8th Amendment to the U.S. Constitution.

**ACTION REQUESTED: STATE REMEDIES YOU ARE SEEKING**

Please retain Use Of Force video and provide compensation for damages, and file criminal charges against officers involved and restrain them from further abuse.

| OFFENDER SIGNATURE | DATE 3-4-2021 |
|---|---|
| X Reginald Clemons | March 4, 2021 |

**STAFF USE ONLY**

**DISCUSSION OF COMPLAINT (SUMMARIZE RESULTS OF MEETING)**

☐ IRR RESOLVED BY DISCUSSION/WITHDRAWN          ☐ IRR NOT RESOLVED BY DISCUSSION

| OFFENDER SIGNATURE | DATE | STAFF SIGNATURE | DATE |
|---|---|---|---|
| | | | |

**STAFF FINDINGS/RESPONSE**

| INVESTIGATING STAFF SIGNATURE | DATE | RESPONDENT SIGNATURE | DATE |
|---|---|---|---|
| | | | |

| REVIEWER SIGNATURE | DATE | RESULTS ☐ SATISFACTORY    ☐ UNSATISFACTORY |
|---|---|---|

YOU HAVE THE RIGHT TO FILE A FORMAL GRIEVANCE. YOU MUST FILE A GRIEVANCE FORM WITH THE DESIGNATED STAFF WITHIN SEVEN (7) DAYS FROM THE DATE YOU RECEIVE THIS RESPONSE. FAILURE TO SUBMIT A GRIEVANCE WITHIN THIS TIME FRAME CONSTITUTES ABANDONMENT.

| OFFENDER SIGNATURE | DATE |
|---|---|
| | |

MO 931-3376 (9-17)          Amended   Page 108          (Attachment: Page 22)
                                                                                        76

ORIGINAL

**STATE OF MISSOURI**
**DEPARTMENT OF CORRECTIONS**
**OFFENDER GRIEVANCE**

*Due Process*

| | | GRIEVANCE NUMBER | IRR NUMBER | DATE FILED |
|---|---|---|---|---|
| | *RECEIVED* | | ERDCC 21-374 | |

INSTITUTION USE ONLY

JUL 19 2021
ERDCC
GRIEVANCE OFFICE

| OFFENDER LAST NAME | FIRST | DOC NUMBER | HOUSING UNIT | UNIT | INSTITUTION |
|---|---|---|---|---|---|
| Clemons, | Regina H | 990102 | 3B | 212 | ERDCC |

**OFFENDER GRIEVANCE/REQUEST**

*See Attached - Previously Filed IRR: On File*

| OFFENDER SIGNATURE | DATE |
|---|---|
| X Reginald Clemons | July 12, 2021 |

**SUPERINTENDENT RESPONSE**

Mr. Clemons, I am in receipt of your grievance dated July 19, 2021 regarding CDV ERDCC21-01615.

Having reviewed your IRR, Grievance, and other pertinent information available to me I found that this violation has been dismissed and expunged from your record. Therefore, I find your complaint resolved.

RECEIVED
OCT 28 2021
ERDCC
GRIEVANCE OFFICE

| SUPERINTENDENT/SECTION HEAD | DATE |
|---|---|
| | 10/27/21 |

You have the right to appeal this decision to a division director. You must file an appeal form with the grievance officer within seven (7) days from the day you receive this decision. Failure to submit an appeal within this time frame constitutes abandonment of the grievance.

☐ I ACCEPT THIS DECISION     ☐ I APPEAL THIS DECISION  *(Attachment: Page 33)*

| OFFENDER SIGNATURE | DATE |
|---|---|
| | |

931-3377 (12-04)

*Amended  Page 109*

## INFORMAL RESOLUTION RESPONSE

**OFFENDER NAME AND NUMBER:** Clemons, Reginald #990102

**IRR LOG NUMBER:** ERDCC-21-374

**HOUSING UNIT:** 4-B-212

**NATURE OF COMPLAINT:** Your complaint as I understand it is that you received a conduct violation for a rule #9.4 (ERDCC21-1615) and that it was later reduced to a #19.1. You feel that because it does not say anywhere in the body of the violation does it state that an order to disperse was issued. Your requested remedy is to have this conduct violation dismissed and expunged.

**FINDINGS:** I have reviewed your IRR and supporting documentation and have found that in the first sentence of the conduct violation, it states that COII Hart responded to Housing unit four for offenders that were praying and refusing to disperse. You have received a grievance form on 6/23/2021 due to this response exceeding the time frame. I encourage you to continue with your pursuit of the grievance procedure.

**RECOMMENDATION:** Based on my findings I cannot support your IRR, therefore your IRR is denied.

*Amended Page 110*                    *(Attachment: Page 78/24)*

3-1-2
ORIG INAL

**STATE OF MISSOURI**
**DEPARTMENT OF CORRECTIONS**
**INFORMAL RESOLUTION REQUEST**   Due Process

INSTITUTION USE ONLY   ☐ EMERGENCY COMPLAINT

| OFFENDER NAME Clemons, Reginald | | DOC NUMBER 990102 |
|---|---|---|
| DATE STAFF MEMBER RECEIVED IRR 3-15-2021 | COMPLAINT NUMBER ERDCC-21-374 | CATEGORY 3B | HOUSING UNIT 4B-212 |

**STATE YOUR COMPLAINT/PROBLEM BRIEFLY- ONE ISSUE - BE SPECIFIC**

On February 28, 2021, I, Reginald Clemons, received a conduct violation for both Rule 9.4 and 20.1, that was later reduced to a Rule 20.1 or 19 Disobeying an Order on March 10, 2021. Nowhere in the body of the conduct violation report does it say an order to disperse was issued, by whom, if at all. As can be seen on the video, I never offered any verbal communication, aggression or physical resistance to being hand cuffed. I complied with every known command in the Carl Hart CDV Report. Tracking No. ERDCC 21-01615.

**ACTION REQUESTED:  STATE REMEDIES YOU ARE SEEKING**

Please Dismiss And Expunge This Conduct Violation and preserve the Use OF Force video for later civil litigation.

| OFFENDER SIGNATURE Reginald Clemons | DATE March 12, 2021 |
|---|---|

**STAFF USE ONLY**

**DISCUSSION OF COMPLAINT (SUMMARIZE RESULTS OF MEETING)**

Not able to resolve

RECEIVED
SEP 17 2021
ERDCC
ASSISTANT WARDEN

☐ IRR RESOLVED BY DISCUSSION/WITHDRAWN          ☒ IRR NOT RESOLVED BY DISCUSSION

| OFFENDER SIGNATURE Reginald Clemons | DATE July 13, 2021 | STAFF SIGNATURE Alex Fuller 137819 | DATE 9/13/2021 |
|---|---|---|---|

**STAFF FINDINGS/RESPONSE**

| INVESTIGATING STAFF SIGNATURE | DATE 9-16-21 | RESPONDENT SIGNATURE Douglas W. Nott | DATE 9-16-2021 |
|---|---|---|---|
| REVIEWER SIGNATURE Aviema | DATE 9-17-21 | RESULTS ☐ SATISFACTORY  ☒ UNSATISFACTORY | |

YOU HAVE THE RIGHT TO FILE A FORMAL GRIEVANCE. YOU MUST FILE A GRIEVANCE FORM WITH THE DESIGNATED STAFF WITHIN SEVEN (7) DAYS FROM THE DATE YOU RECEIVE THIS RESPONSE. FAILURE TO SUBMIT A GRIEVANCE WITHIN THIS TIME FRAME CONSTITUTES ABANDONMENT.

| OFFENDER SIGNATURE Reginald Clemons | DATE 9-27-2021 |
|---|---|

MO 931-3376 (9-17)

Amended Page III          (Attachment Page 28)
79

STATE OF MISSOURI
DEPARTMENT OF CORRECTIONS
**INFORMAL RESOLUTION REQUEST**     *Due Process*     ☐ INSTITUTION USE ONLY  ☐ EMERGENCY COMPLAINT

| OFFENDER NAME  Clemons  Reginald | | | DOC NUMBER  990102 |
|---|---|---|---|
| DATE STAFF MEMBER RECEIVED IRR  3-15-2021 | COMPLAINT NUMBER  ERDCC-21-374 | CATEGORY  3 B | HOUSING UNIT  4B-212 |

**STATE YOUR COMPLAINT/PROBLEM BRIEFLY- ONE ISSUE - BE SPECIFIC**

On February 28, 2021, I, Reginald Clemons, received a conduct violation for both Rule 9.4 and 20.1, that was later reduced to a Rule 20.1 or 19 Disobeying an Order on March 10, 2021. Nowhere in the body of the conduct violation report does it say an order to disperse was issued, by whom, if at all. As can be seen on the video, I never offered any verbal communication, aggression or physical resistance to being hand cuffed. I complied with every known command in the Carl Hart CDV Report. Tracking No. ERDCC21-01615.

**ACTION REQUESTED:  STATE REMEDIES YOU ARE SEEKING**

Please Dismiss And Expunge This Conduct Violation and preserve the Use Of Force Video for later civil litigation.

| OFFENDER SIGNATURE  *Reginald Clemons* | DATE  March 12, 2021 |
|---|---|

**STAFF USE ONLY**

**DISCUSSION OF COMPLAINT (SUMMARIZE RESULTS OF MEETING)**

| ☐ IRR RESOLVED BY DISCUSSION/WITHDRAWN | | ☐ IRR NOT RESOLVED BY DISCUSSION | |
|---|---|---|---|
| OFFENDER SIGNATURE | DATE | STAFF SIGNATURE | DATE |

**STAFF FINDINGS/RESPONSE**

| INVESTIGATING STAFF SIGNATURE | DATE | RESPONDENT SIGNATURE | DATE |
|---|---|---|---|
| REVIEWER SIGNATURE | DATE | RESULTS  ☐ SATISFACTORY     ☐ UNSATISFACTORY | |

YOU HAVE THE RIGHT TO FILE A FORMAL GRIEVANCE. YOU MUST FILE A GRIEVANCE FORM WITH THE DESIGNATED STAFF WITHIN SEVEN (7) DAYS FROM THE DATE YOU RECEIVE THIS RESPONSE.  FAILURE TO SUBMIT A GRIEVANCE WITHIN THIS TIME FRAME CONSTITUTES ABANDONMENT.

| OFFENDER SIGNATURE | DATE |
|---|---|

MO 931-3376 (9-17)

Amended  Page 112          (Attachment: Page 26)
                                                    80

ORIGINAL

**STATE OF MISSOURI**
**DEPARTMENT OF CORRECTIONS**
**OFFENDER GRIEVANCE**

Schwartz
Division                    6/23/21  AA

| GRIEVANCE NUMBER | IRR NUMBER | DATE FILED |
|---|---|---|
| RECEIVED | ERDCC 21-455 | |

INSTITUTION USE ONLY

JUL 19 2021
ERDCC GRIEVANCE OFFICE

| OFFENDER LAST NAME | FIRST | DOC NUMBER | HOUSING UNIT | UNIT | INSTITUTION |
|---|---|---|---|---|---|
| Clemons, | Reginald | 90102 | 3B | 212 | ERDCC |

**OFFENDER GRIEVANCE/REQUEST :**

See Attached - Previously
Filed IRR: On File

| OFFENDER SIGNATURE | DATE |
|---|---|
| Reginald Clemons | July 12, 2021 |

**SUPERINTENDENT RESPONSE**

Mr. Clemons, I am in receipt of your grievance dated July 19, 2021 regarding your allegation that COI Miskel made threats against you for praying on 3/13/21.

Having reviewed your IRR, Grievance, and other pertinent information available to me I found that SOP 17-1.1 states: All meetings and activities of a religious or spiritual nature shall be scheduled through the chaplain and shall be held in the chapel or other designated areas under the control and supervision of the chaplain or designee. Offenders may individually engage in private religious practice in their living quarters unless the practice poses a threat to the safety and security of the institution. I could find no evidence, nor have you provided any, to substantiate your allegation. Therefore, I find your complaint resolved.

OFFENDER ATTACHMENT

RECEIVED
OCT 29 2021
ERDCC
GRIEVANCE OFFICE

| SUPERINTENDENT/SECTION HEAD | | DATE |
|---|---|---|
| Anu | | 10-27-21 |

You have the right to appeal this decision to a division director. You must file an appeal form with the grievance officer within seven (7) days from the day you receive this decision. Failure to submit an appeal within this time frame constitutes abandonment of the grievance.

☐ I ACCEPT THIS DECISION        ☐ I APPEAL THIS DECISION   (Attachment: Page 81)

| OFFENDER SIGNATURE | DATE |
|---|---|
| | |

D 931-3377 (12-04)

Amended Page 113

## INFORMAL RESOLUTION RESPONSE

**OFFENDER NAME AND NUMBER:** Clemons, Reginald #990102

**IRR LOG NUMBER:** ERDCC-21-455

**HOUSING UNIT:** 4B-212

**NATURE OF COMPLAINT:** Your complaint as I understand it is that you feel that you right to religious freedom has been violated. You stated that COI Miskel threatened you on 03/13/2021 by saying that if you were ever seen praying in the wing again, the same thing that happened to you for praying in the wing in February, will happen to you again. Your requested remedy is for you to receive written permission to pray.

**FINDINGS:** I have reviewed your IRR and supporting documentation and have found that COI Miskel stated that he allowed the prayer to finish and then had you come to the back office. A discussion was held regarding policy and procedures. Your religious freedoms have not been violated. You violated policy by having a prayer group in the middle of the housing unit wing. According to policy SOP 17-1.1 Sec. III. states, *"All meetings and activities of a religious or spiritual nature shall be scheduled through the chaplain and shall be held in the chapel or other designated areas under the control and supervision of the chaplain or designee. Offenders may individually engage in private religious practice in their living quarters unless the practice poses a threat to the safety and security of the institution."* I strongly encourage you to review SOP17-1.1 so that you should not have any misunderstandings about policy in regard to religion. It should be noted that on 06/23/2021 you received a grievance form to complete due to this response exceeding the allowed time frame. I also encourage you to continue with your grievance process.

**RECOMMENDATION:** Based on my findings I cannot support your IRR, therefore your IRR is denied.

Amended Page 114

(Attachment: Page 82)

RG-115452
3-25-2021
AP

**STATE OF MISSOURI**
**DEPARTMENT OF CORRECTIONS**
**INFORMAL RESOLUTION REQUEST**

INSTITUTION USE ONLY ☐ EMERGENCY COMPLAINT

| OFFENDER NAME Clemons, Reginald | | DOC NUMBER 990102 |
|---|---|---|
| DATE STAFF MEMBER RECEIVED IRR 5-25-2021 | COMPLAINT NUMBER ERDCC-21-455 | CATEGORY Z G | HOUSING UNIT 4B-212 |

**STATE YOUR COMPLAINT/PROBLEM BRIEFLY- ONE ISSUE - BE SPECIFIC**

(See Attached 2 of 2 Pages

**ACTION REQUESTED:  STATE REMEDIES YOU ARE SEEKING**

See Attached

| OFFENDER SIGNATURE X Reginald Clemons | DATE 3-25-2021 |
|---|---|

**STAFF USE ONLY**

**DISCUSSION OF COMPLAINT (SUMMARIZE RESULTS OF MEETING)**

Unable to resolve by discussion

☐ IRR RESOLVED BY DISCUSSION/WITHDRAWN          ☒ IRR NOT RESOLVED BY DISCUSSION

| OFFENDER SIGNATURE Reginald Clemons | DATE July 13, 2021 | STAFF SIGNATURE A. Patterns 137869  C.C.M | DATE 7/13/2021 |
|---|---|---|---|

**STAFF FINDINGS/RESPONSE**

RECEIVED
SEP 27 2021
ERDCC
ASSISTANT WARDEN

| INVESTIGATING STAFF SIGNATURE | DATE 9-24-21 | RESPONDENT SIGNATURE Douglas W. Moffit PM | DATE 9-24-2021 |
|---|---|---|---|
| REVIEWER SIGNATURE  57416  Acting AW | DATE 9-27-21 | RESULTS ☐ SATISFACTORY    ☒ UNSATISFACTORY | |

YOU HAVE THE RIGHT TO FILE A FORMAL GRIEVANCE. YOU MUST FILE A GRIEVANCE FORM WITH THE DESIGNATED STAFF WITHIN SEVEN (7) DAYS FROM THE DATE YOU RECEIVE THIS RESPONSE. FAILURE TO SUBMIT A GRIEVANCE WITHIN THIS TIME FRAME CONSTITUTES ABANDONMENT.

| OFFENDER SIGNATURE Reginald Clemons | DATE 10-4-21 Oct. 4, 2021 |
|---|---|

MO 931-3376 (9-11)

Amended Page 115          (Attachment: Page 83)

I.RR / Grievance Complaint: No. ______

Reginald Clemons 990102 (4B-212)

Rights Being Violated: Freedom Of Religion
Date of Incident In Question: March 13, 2021
Individual Involved: C.O I Myskel
Constitional Right: First Amendment Right
Congress Shall Make No Law Respecting An ~~Established~~ Establishment Of Religion Or Prohibiting the Free Exercise Thereof; Or Abridging The Freedom Of Speech, Or Of The Press; Or The Right Of the People To Peacebly To Assemble, And To Petition The Government For a Redress Of Grievance.
Religious Land Use Of Institutionalized Persons Act.

Complaint At Issue

On March 13, 2021 while we were praying after the deputy warden gave us permission to pray, but refuse to put this directive in writing. We were thretened by C.O. Myskel once again, that if we are ever seen praying in the wing again. The same thing that happened to us for praying on February 28, 2021, would happen again.

This standing threat and aggression against my right to religious practice was caught on tape or video from the 4B cammeras on March 13, 2021 around 8:30 p.m.

Relief

I want written permission to pray and for the video at issue herein to be retained as evidence for civil and criminal proceedings.

Sincerely
Reynold Clemons
Seeking
Harmony & Balance

Amended Page 117 (Attachment: Page 85)

Case: 4:22-cv-00158-SRW Doc. #: 15-1 Filed: 10/11/22 Page: 108 of 124 PageID #: 328

4-13-21
AP

**STATE OF MISSOURI**
**DEPARTMENT OF CORRECTIONS**
**INFORMAL RESOLUTION REQUEST**

INSTITUTION USE ONLY ☐ EMERGENCY COMPLAINT

| OFFENDER NAME | | DOC NUMBER |
|---|---|---|
| Clemmons, Reginald | | 990102 |

| DATE STAFF MEMBER RECEIVED IRR | COMPLAINT NUMBER | CATEGORY | HOUSING UNIT |
|---|---|---|---|
| 4/27/2021 | ERDCC21-666 | 4-H | 4B-212 |

**STATE YOUR COMPLAINT/PROBLEM BRIEFLY- ONE ISSUE - BE SPECIFIC**

(See Attached 3 of 3 Pages)

**ACTION REQUESTED: STATE REMEDIES YOU ARE SEEKING**

(See Attached 3 of 3 Pages)

| OFFENDER SIGNATURE | DATE |
|---|---|
| Reginald Clemmons | april 16, 2021 |

**STAFF USE ONLY**

**DISCUSSION OF COMPLAINT (SUMMARIZE RESULTS OF MEETING)**

☐ IRR RESOLVED BY DISCUSSION/WITHDRAWN   ☐ IRR NOT RESOLVED BY DISCUSSION

| OFFENDER SIGNATURE | DATE | STAFF SIGNATURE | DATE |
|---|---|---|---|
| | | | |

**STAFF FINDINGS/RESPONSE**

| INVESTIGATING STAFF SIGNATURE | DATE | RESPONDENT SIGNATURE | DATE |
|---|---|---|---|
| | | | |

| REVIEWER SIGNATURE | DATE | RESULTS | |
|---|---|---|---|
| | | ☐ SATISFACTORY   ☐ UNSATISFACTORY | |

**YOU HAVE THE RIGHT TO FILE A FORMAL GRIEVANCE. YOU MUST FILE A GRIEVANCE FORM WITH THE DESIGNATED STAFF WITHIN SEVEN (7) DAYS FROM THE DATE YOU RECEIVE THIS RESPONSE. FAILURE TO SUBMIT A GRIEVANCE WITHIN THIS TIME FRAME CONSTITUTES ABANDONMENT.**

| OFFENDER SIGNATURE | DATE |
|---|---|
| | |

MO 931-3376 (9-17)

Amended Page 118          (Attachment: Page 86)

(Attachment: Page 87)

IRR/Grievance Complaint No. ERDCC21-666

Complaint By: Reginald Clemons 990102
Location: Housing Unit 4 Back Office
Individuals Involved: Carl Hart, Mike Miller
                      Douglas Montgamery
Date of Incident: April 13, 2021, Time: 8:00 am

Constitutional Right Being Violated:
            FIRST Amendment Right to
            be free from retaliation
            and Fourteenth Amendment
            Right To Due Process

Events At Issue

On April 13, 2021 at around 8:00 A.M., casemanager
Mike Miller had me called to the back office, via
the bubble officer C.O. I Ricks. Upon arriving in his
office, he told me, "I have some good news and
some bad news.", "Which one do you want to hear
first?" I replied, "The Bad News!"
    Miller said, "Okey, today I am the acting FUM and
the FUM has told me to remove you from the honor
while he is gone. Because the conduct violation you
received on the 28th of February was a Dis. seg.
and not an ad. seg.. You can not be in the honor
dorm after receiving a Dis. seg. violation for at
least one year." I responded, "Well, that conduct
violation is the first one I have had in five
years and plus its going to be dismissed and
expunged. So why move me out for a conduct
violation thats going to be dismissed and expunged?"

Amended Page 110

C

(Attachment: Page 88)

Mike Miller said "What makes you think the conduct violation is going to be dismissed?" I explained "The deputy warden said for us to file grievances and he'll dismiss and expunge these violations when the complaints reaches him. Now you are continuing the punishment and following through regardless of the fact that we were not doing anything wrong. How is this resolved or resolving the matter and correcting the problem?" Mike Miller explained, "Well the FUM said I have to move you while he's gone today and until the violation is expunged, I have to follow procedure, because you no longer qualify for the honor dorm." I said, "The deputy warden is the one who ~~said~~ ordered that we be moved back into the honor dorm, so why would..., better yet, I am going to go pack my stuff and wait to be moved." Mike Miller got on the phone and called deputy warden Jerry Bingham after I left his office to call an attorney organization about ~~this~~ retaliatory harrassment.

I took this position because it dawned on me that Sgt. Carl Hart was in housing unit 4, for the past four days, on the 7:00 P.M. to 7:00 A.M. shift on both April 11, 12, 13, 2021. Which means that Sgt. Carl Hart was here the same day that Mike Miller is trying to move me out of the honor dorm. This happened the next day after Sgt. Hart tried to have Steven Stafford removed from his food service job, by having food service cook LaMarsh fire him. She said that ~~secu~~ security staff no longer wanted him working in food service,

Amended Page 120

c.

(Attachment: Page 89)

but without any other justification or valid grounds.

I believe these two incidents are connected by the common thread that is Sgt. Hart, because both Steven Stafford and I have complaints against Sgt. Carl Hart for Hate Crimes, Religious Persecution, and Criminal Assault, for masing and assaulting us and attacking us while we were praying together on February 28, 2021, at around 9:15 pm.

We were left in the hole for 16 hrs. plus, covered in mace and never provided medical treatment for the mace, nor given a shower. After being let out of solitary confinement on March 10, 2021. We all filed grievances against Lt. Michelle Bashem and Sgt. Carl Hart and I believe that this is a part of follow-up attacks to retaliate retaliate against us for filing complaints. Which actions make me fear that the video of the February 28 attack has been destroyed.

I am afraid of Lt. Bashem and Sgt. Hart taking further retaliatory action against against me and other Muslims and would like a restraining order and institutional order preventing Sgt. Hart and Lt. Bashem from working or supervising others in the housing unit to which I am assigned.

For Mike Miller to take a voice stress analysis truth varification test, to establish the truth behind the motivation of his actions and for Lt. Bashen and Sgt. Hart to take the same test

Amended Page 121

IN THE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

REGINALD CLEMONS, et al.,
          Plaintiff,

   V.

MICHELLE BASHAM, et al.,
          Defendant(s).


SWORN/AFFIRMED STATEMENT OR DECLARATION

I, Reginald Clemons, being the undersigning party, due hereby affirm under the penalty of perjury, that the following is true and correct to the best of my ability, knowledge, and understanding, as follows:

On the 22nd and early morning hours of the 23rd day of May 2021, between the time of 9:30 p.m. and 12:30 am, I, Reginald Clemons, along with Thurman Shelton were called to report to Housing Unit 1, as a part of our emergency porter job duties, to clean up after an individual had
        Amended Page 122            (Attachment: Page 90)

1 of 7

Flooded his cell and the wing. As a part of our job duties, it was our responsibility to clean up the water with squeegies and sanitize the floors.

Lieutenant Michelle Basham was the shift commander and Sgt. Carl Hart, was assigned to housing unit 1 as the Seargent over Housing Unit 1. Lt. Basham had gotten some rubber galosus boots pullavers from the prison kitchen to try and keep from ruining the workers shoes.

I had to go to housing unit 2 in order to get a blower fan to help dry the floor, because there were no blower fans to be found in housing unit 1.

At around 10:00 pm while I was going about the business of squeegeeing the water across the floor and collecting supplies to to dry and mop the floor, Sgt. Carl Hart engaged me in a conversation where

Amended Page 123                    (Attachment: Page 91)
2 of 7

I said very little and mainly listened.

Sgt. Carl Hart started talking about how he was in the war and had learned a lot about Islam. Stating that he had a lot of love and respect for everything that he has learned about the religion of Islam." He said, "I really like the one that is from the Northern form of the Islamic faith." Then he asked, "What's the name of the Northern form of Islam?". I have never heard of a Northern form of Islam, but stated, "There is the Sunni system of belief that is derived from the word Sunnah, which is based on the teachings of the life of the prophet, peace be unto him. I personally ascribe to Al-Ummah Islam, because the Ummah is the only group I see in the Qur'an, which means all believers worldwide, including Muslims, Christians, and Jews."

Amended Page 124                    (Attachment: Page 92)

3 of 7.

Sgt. Hart went on to say, "I didn't know that", "I have respect for all religions, I did not spray your group with mace because you were praying, I sprayed you because you refused to disperse." I said, "But all we were doing was praying". To which Sgt. Carl Hart said, "Well you are still allowed to pray, you just have to do it in your cell instead of out in the open wing. I am not trying to stop you from praying and worshipping God according to your faith. I respect all beliefs and the government allows anyone to make up whatever religion they chose to. There's this one religion where a woman forced the DMV to allow her to take her drivers license photo with a spaghetti strainer on her head." He further explained, "I can not remember the name of the religion that

Amended Page 125          (Attachment: Page 93)
4 of 7

she belonged to, but people make up all kinds of religions, all the time." -- "I'll let you know if I can remember the name of that religion. See, I believe in the separation of church and state, because everyone has the right to worship according to what they believe in. I don't have a problem with Muslims, even though I am not a Muslim. When I ordered you to submit to restraints, you can understand how I had to apply force, because if you had submitted to restraints there would not have been a problem?"

I answered, "I can't talk about this too much, because there is a grievance pending on this issue." He said, "I have already contacted your housing unit to make arrangements for you to get a shower when you get back and you can

Amended Page 126                    (Attachment: Page 94)
                    5 of 7

use the phone while you're here too." I said "Thank You!". He continued, "Well I just wanted you to understand where I am coming from and I am going to make sure I tell you what is the name of that religion that wears spaghetti strainers as hats.". I said, "Okay" and went on about resuming my work to clean up the water off the floor.

While I was mopping up the residual water off the floor, Sgt. Hart approached me, "Oh, yeah, I found out the name of those people who wear spaghetti strainers on their heads. Its called, The Faith of the Spaghetti ~~Box~~ Ruoster Farrians". I said, "That's something I never heard of before, but I guess we all have our own way of ~~worshing~~ worshipping the same God."

Sgt. Hart said, "I just wanted to let you know

Amended Page 127                    (Attachment: Page 95)

6 of 7

I figure out the name of that faith, I found it very interesting."

Signed: This 8th day of June 2021.

Respectfully Submitted:

Reginald Clemons
Reg. No. 990102
Eastern Reception
Diagnostic Correctional
Center
2727 Highway K
Bonne Terre, MO 63628

Amended Page 128

(Attachment: Page 96)

7 of 7



## INFORMAL RESOLUTION REQUEST RESPONSE

**OFFENDER NAME:**   **Clemons, Reginald #990102**

**HOUSING UNIT:**   **3-D-212**

**IRR LOG NUMBER:**   **ERDCC21-922**

### NATURE OF COMPLAINT:
I'm in receipt of your IRR and have reviewed your complaint. In your complaint you state you want to move your IRRs that are over 40 days to the next stage of the process of IRRs.

### FINDINGS:
I have investigated your complaint and reviewed all of the pertinent paperwork. Upon investigating your complaint I found that in the AS400 system that all your prior outstanding IRRs to this IRR have been moved to the next step in the grievance process, therefore your IRR should be resolved.

### RECOMMENDATION:
**No further action needed. Your IRR should be resolved.**

*Amended Page 129*                    *(Attachment: Page 97)*

Tu 5/24/21

STATE OF MISSOURI
DEPARTMENT OF CORRECTIONS
**INFORMAL RESOLUTION REQUEST**

*Grievance*

INSTITUTION USE ONLY   ☐ EMERGENCY COMPLAINT

| OFFENDER NAME | | | DOC NUMBER |
|---|---|---|---|
| Reginald Clemons | | | 990102 |

| DATE STAFF MEMBER RECEIVED IRR | COMPLAINT NUMBER | CATEGORY | HOUSING UNIT |
|---|---|---|---|
| 06/14/2021 | ERDCC21-922 | 8(E) | 3B212 |

**STATE YOUR COMPLAINT/PROBLEM BRIEFLY- ONE ISSUE - BE SPECIFIC**

I am requesting that all my grievance & IRR complaints that have been filed on Lt. Michelle Basham, Sgt. Carl Hart and others that were filed starting March 14 2021, be advanced to the next stage of the grievance procedure. As time has laps and civil action will be filed once the 120 days have laps and failure to respond will be considered denial of access to grievance.

**ACTION REQUESTED: STATE REMEDIES YOU ARE SEEKING**

Please provide me a copy of all the grievances I have file & IRR complaints I have filed in 2021 and the number to said complaints at issue.

| OFFENDER SIGNATURE | DATE |
|---|---|
| X Reginald Clemons | 6-14-2021 |

**STAFF USE ONLY**

**DISCUSSION OF COMPLAINT (SUMMARIZE RESULTS OF MEETING)**

☐ IRR RESOLVED BY DISCUSSION/WITHDRAWN          ☑ IRR NOT RESOLVED BY DISCUSSION

| OFFENDER SIGNATURE | DATE | STAFF SIGNATURE | # | DATE |
|---|---|---|---|---|
| X Reginald Clemons | 6-14-2021 | X ___ #28730 | | 6/14/21 |

**STAFF FINDINGS/RESPONSE**

No Action

RECEIVED
AUG 04 2021
ERDCC
ASSISTANT WARDEN

| INVESTIGATING STAFF SIGNATURE | DATE | RESPONDENT SIGNATURE | DATE |
|---|---|---|---|
| X ___ #28730 | 7/29/21 | C ___ 55200 | 8/3/21 |
| REVIEWER SIGNATURE | DATE | RESULTS | |
| Jeff Douglas AW em | 8-4-21 | ☑ SATISFACTORY   ☐ UNSATISFACTORY | |

**I HAVE THE RIGHT TO FILE A FORMAL GRIEVANCE. YOU MUST FILE A GRIEVANCE FORM WITH THE DESIGNATED STAFF WITHIN SEVEN (7) DAYS FROM THE DATE I RECEIVE THIS RESPONSE. FAILURE TO SUBMIT A GRIEVANCE WITHIN THIS TIME FRAME CONSTITUTES ABANDONMENT.**

| OFFENDER SIGNATURE | DATE |
|---|---|
| X Reginald Clemons | 8-9-2021 |

-3376 (9-17)          Amended Page 130          Attachment: Page 98

STATE OF MISSOURI
DEPARTMENT OF CORRECTIONS
INFORMAL RESOLUTION REQUEST

*Grievance*

INSTITUTION USE ONLY   ☐ EMERGENCY COMPLAINT

OFFENDER NAME
Reginald Clemons

DOC NUMBER
990102

DATE STAFF MEMBER RECEIVED IRR
06/14/2021

COMPLAINT NUMBER
ERDCC21-922

CATEGORY
8(E)

HOUSING UNIT
3B212

STATE YOUR COMPLAINT/PROBLEM BRIEFLY- ONE ISSUE - BE SPECIFIC

I am requesting that all my grievance-IRR complaints that have been filed on Lt. Michelle Basham, Sgt. Carl Wort and others that were filed starting March 14 2021, be advanced to the next stage of the Grievance Procedure. As time has laps and civil action will be filed once the 120 days have laps and failure to respond will be considered denial of access to grievance.

ACTION REQUESTED: STATE REMEDIES YOU ARE SEEKING

Please provide me a copy of all the grievances I have file IRR complaints I have filed in 2021 and the number to said complaints at issue.

OFFENDER SIGNATURE
X Reginald Clemons

DATE
6-14-2021

STAFF USE ONLY

DISCUSSION OF COMPLAINT (SUMMARIZE RESULTS OF MEETING)

☐ IRR RESOLVED BY DISCUSSION/WITHDRAWN        ☑ IRR NOT RESOLVED BY DISCUSSION

OFFENDER SIGNATURE
X Reginald Clemons

DATE
6-14-2021

STAFF SIGNATURE
CRAW #28730

DATE
6/14/21

STAFF FINDINGS/RESPONSE

INVESTIGATING STAFF SIGNATURE | DATE | RESPONDENT SIGNATURE | DATE

REVIEWER SIGNATURE | DATE | RESULTS
☐ SATISFACTORY   ☐ UNSATISFACTORY

HAVE THE RIGHT TO FILE A FORMAL GRIEVANCE. YOU MUST FILE A GRIEVANCE FORM WITH THE DESIGNATED STAFF WITHIN SEVEN (7) DAYS FROM THE DATE RECEIVE THIS RESPONSE. FAILURE TO SUBMIT A GRIEVANCE WITHIN THIS TIME FRAME CONSTITUTES ABANDONMENT.

OFFENDER SIGNATURE | DATE

176 (9-17)        *Amended Page 131*        (Attachment: Page 99)

The Staff Assault On Prayer February 28, 2021
AT 9:10 PM to 9:30 PM H.U. #4-B
Witness List

| Name | Reg. No. |
|---|---|
| Maurice Blackwell | 182250 |
| Phillip Friends | 1165786 |
| Alex Turpin | 1266244 |
| Mc Neal | 323929 |
| Randy Dill | 1008946 |
| David Madsen | 1339115 |
| Gary Cross | 172515 |
| Eric Campbell-Bey | 167645 |
| Travis Tolley | 1328639 |
| Jamarius Fisher | 1305640 |
| Sutherland, Carl | 533662 |
| Calvin Smith | 334308 |
| Douglas Williams | 1136968 |
| Anthony Waters | 507958 |
| Greg Wisham | 168769 |
| Devante Bagley | 1342159 |
| Chris Strickler | 1356941 |
| Billy Sudduth | 1314237 |
| Thomas Cunningham | 528720 |
| Coy Conaway | 1259625 |
| Clayton Fisher | 1245476 |
| Saudi Brown | 1263342 |
| Ahmad Adisa | |
| Dwayne Bisch | |
| Lt. Renk | |
| COI Miskel | (Attachments Page 100) |
| COI Downs | Amended Page 132 |
| COII Kimberly Bennet | |

Reginald Clemons 940102 (4A-214)
Jefferson City Correctional Center
8200 No. More Victims Road
Jefferson City, Missouri 65102



THIS CORRESPONDENCE IS FROM AN INMATE
IN THE CUSTODY OF THE
MISSOURI DEPARTMENT OF CORRECTIONS.
THE DEPARTMENT IS NOT RESPONSIBLE FOR THE
CONTENTS OF THIS CORRESPONDENCE. FOR
INFORMATION ABOUT THE DEPARTMENT OR TO VERIFY
INFORMATION ABOUT THE OFFENDER, PLEASE VISIT
OUR WEBSITE AT WWW.DOC.MO.GOV
<http://WWW.DOC.MO.GOV>

MAILED FROM
JEFFERSON CITY
CORRECTIONAL CENTER

United States District Court
Eastern District Of Missouri
111 South Tenth Street
St. Louis, Missouri 63102

RECEIVED

JUN 1 3 2022

BY MAIL