# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| REGINALD BYRON CLEMONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:22-cv-00158-SRW |
| | ) | |
| MICHELLE BASHAM, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants Anne L. Precythe, Matt Sturm, Douglas A. Worsham, David Vandergriff, Matt Raymond, Michelle Basham, Carl Hart, Dennis Spradling, Jacob Reagan, Gary Fenwick, Adam Simonton, Jamie Williams, Timothy McFarland, Doris Falkenrath, Bill Stange, Gregory Hancock, Teri Vandergriff, and Kelly Morriss move to dismiss certain of Plaintiffs' claims in their Fourth Amended Complaint (Doc. 45, "Complaint"), and as grounds therefor, state:

1.      Before joining this lawsuit, Plaintiff Steven Stafford filed suit in state court bringing the same claims against the same defendants, and thus the Court should abstain from hearing his claims in this case pursuant to *Younger v. Harris*, 401 U.S. 37, 46 (1971).

2.      The Complaint establishes that Plaintiffs Clemons, Stafford, Howard, Hood, Kent, and Smith did not exhaust their administrative remedies as required by 42 U.S.C. §1997e(a), and thus their claims should be dismissed with prejudice.

3.      Plaintiffs do not allege Defendants Williams, McFarland, David Vandergriff, Teri Vandergriff, Raymond, Morriss, Falkenrath, Stange, and Hancock did anything to violate their Constitutional rights or batter them, and all individual capacity claims against these Defendants should be dismissed.

4.      Likewise, all individual capacity claims by Plaintiff Holliman against Defendants Spradling, Reagan, Fenwick, and Simonton, and all individual capacity claims by Plaintiff Moore against Defendants Spradling, Reagan, and Simonton, should be dismissed because Plaintiffs Holliman and Moore, respectively, have not alleged these Defendants did anything to violate their Constitutional rights or batter them.

5.      All claims for battery (Count VIII) brought by Plaintiffs other than Plaintiff Clemons, and Plaintiff Clemons' battery claims against anyone other than Defendants Basham and Hart, are untimely because they were not brought within one year as required by §516.145, RSMo, and such claims do not relate back to the original pleading in this case. Further, Plaintiff Clemons does not allege Defendant Basham ever struck him, and thus his battery claim against her fails.

6.      All official capacity claims against Defendants Precythe, Sturm, Worsham, David Vandergriff, and Raymond should be dismissed because Plaintiffs have not alleged these Defendants promulgated or enforce a policy that deprives them of their religious rights.

7.      Any claim for monetary damages against Defendants sued in their official capacities should be dismissed, as such claims are barred by sovereign immunity under the Eleventh Amendment.

For the foregoing reasons, and as explained further below, Defendants respectfully request that the Court dismiss all claims subject to the present Motion.[1]

## FACTUAL BACKGROUND

Per the Complaint's allegations, Plaintiffs are a group of Muslim offenders incarcerated

---

[1] The only claims for which dismissal is not sought are Plaintiff Holliman's claims against Defendants Basham and Hart; Plaintiff Moore's claims against Defendants Basham, Hart, and Fenwick; and Plaintiff Clemons' battery claim against Defendant Hart. A separate Answer will be filed on their behalf as to those Plaintiffs' claims only.

and in the custody of the Missouri Department of Corrections ("MDOC").[2] Plaintiffs bring

claims under 42 U.S.C. §1983, the Religious Land Use and Institutionalized Persons Act (42

U.S.C. §2000cc(a) ("RLUIPA")), and Missouri common law.

On February 28, 2021, Plaintiffs were gathered in their housing unit at Eastern Reception

& Diagnostic Correctional Center ("ERDCC"), engaging in a collective evening prayer. Doc. 45

¶¶11, 45. Plaintiffs allege that, although they had been allowed to pray in their housing unit

"hundreds of times before," on this occasion, Defendant Basham ordered them to "stop praying,"

because there was to be "no praying outside the chapel." *Id*. ¶¶47–49. Plaintiffs did not comply

with the order, and Defendant Basham called for backup. *Id*. ¶¶51–52. Other corrections officers,

including Defendants Hart, Reagan, Fenwick, and Simonton, then arrived. *Id*. ¶54. Defendant

Hart ordered Plaintiffs to stop praying, and stated that if they did not submit to restraints, they

would be sprayed with pepper spray. *Id*. ¶57. When Plaintiffs did not comply, Defendant Hart

and "other officers" (but not any of the other named Defendants) began pepper spraying

Plaintiffs. *Id*. ¶¶61–67. Unnamed "officers"—again, not any of the named Defendants—took

Plaintiffs to administrative segregation ("ad seg" or "seg"), slammed them into walls and doors

along the way, forced them to walk through snow, and then removed their clothes. *Id*. ¶¶70–72.

Once in ad seg, "Defendants"—Plaintiffs do not specify which (if any) of the 18

Defendants they mean—kept Plaintiffs in separate cells and turned off the heat and water for

approximately 15 hours. *Id*. ¶¶73–77. Plaintiffs later were charged with disciplinary infractions

(though these ultimately were expunged and/or reduced). *Id*. ¶82.

Plaintiffs also allege later retaliation by "MDOC" or unspecified "Defendants" in the

---

[2] Because well-pled, non-conclusory allegations are taken as true on a motion to dismiss, Defendants recite the Complaint's allegations in this Motion. Defendants reserve the right to contest these allegations later in the proceedings.

form of transfers to other prisons, job loss, and/or assignment to ad seg. *Id.* ¶¶89–131. However, Plaintiffs do not allege this retaliation came from any of the named Defendants, nor do they allege how any named Defendant supposedly carried out the alleged retaliation.

Plaintiffs do not allege that Defendants Williams, McFarland, David Vandergriff, Teri Vandergriff, Raymond, Morriss, Falkenrath, Stange, or Hancock ordered them to stop praying, pepper sprayed them, struck them, put them in ad seg, denied them medical care, retaliated against them, or did anything to violate their Constitutional rights. *See* Doc. 45, *passim*.

Plaintiffs also claim MDOC has a "policy" forbidding Muslims from gathering in group prayer outside of chapels, and have sued Defendants Precythe, Sturm, Worsham, David Vandergriff, and Raymond in their official capacities for supposedly promulgating this policy. However, the Complaint does not allege these Defendants actually promulgated or are enforcing any such policy. Further, Plaintiffs admit that no such "policy" exists, as they were allowed to congregate for prayer outside of the chapel at ERDCC "hundreds of times." *Id.* ¶¶1, 47, 52, 108.

MDOC has a three-step Offender Grievance Procedure. *Id.* ¶132. This procedure requires Plaintiffs to file an Informal Resolution Request ("IRR") within 15 calendar days of any incident from which a complaint arises, then file a Grievance, and then a Grievance Appeal (assuming their complaint is not resolved before then). *Id.* ¶¶133–135. Plaintiff Clemons never filed any Grievance Appeal as the Offender Grievance Procedure requires. *Id.* ¶¶136–143. Plaintiff Stafford filed an IRR about the February 28th incident, but not until March 16, 2021—16 days afterwards. *Id.* ¶145. Plaintiff Harris did not file a Grievance or a Grievance Appeal. *Id.* ¶149. Like Plaintiff Clemons, Plaintiffs Howard and Hood filed IRRs and Grievances, but not Grievance Appeals. *Id.* ¶¶151–152. Plaintiffs Kent and Smith did not file IRRs or engage in the grievance process in any way at all. *Id.* ¶154.

4

Prior to joining this lawsuit through the Second Amended Complaint (Doc. 28), Plaintiff Stafford filed a lawsuit in state court. *See* Exs. 1–3. Plaintiff Stafford's state court lawsuit arises from the same February 28, 2021 incident as this case, involves §1983 and RLUIPA claims just as this case does, and names as defendants the same individuals he alleges violated his rights in this case. *Id.*

Plaintiffs Stafford, Harris, Howard, Holliman, Hood, Kent, and Smith were not parties to this case before joining this lawsuit through the March 2, 2023 Second Amended Complaint (Doc. 28). None of the prior pleadings alleged a battery claim under Missouri common law by any Plaintiff, nor was any claim brought against any Defendant other than Defendants Basham and Hart. *See* Docs. 1, 15.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint is facially plausible where its factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *New Prime, Inc. v. Amazon Technologies, Inc.*, No. 6:19-cv-03236-MDH, 2020 WL 9218533, *1 (W.D. Mo. Aug. 13, 2020) (quoting *Ashcroft*, 556 U.S. at 678). "While the Court accepts the complaint's factual allegations as true, it is not required to accept the plaintiff's legal conclusions." *Id.*

## ARGUMENT

### I.     Plaintiff Stafford's Claims Are Barred Under *Younger*.

At the time he joined this litigation on March 2, 2023 (*see* Doc. 28), Plaintiff Stafford had a pending state court action in which he has brought the same claims that he brings in this case, against the same Defendants. *See* Ex. 1. The Court should thus dismiss Plaintiff Stafford's claims

for lack of subject matter jurisdiction under *Younger v. Harris*, 401 U.S. 37, 46 (1971).

"*Younger* … and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 431 (1982). Under the *Younger* abstention doctrine, "federal courts should abstain from exercising jurisdiction when (1) there is an ongoing state proceeding, (2) which implicates important state interests, and (3) there is an adequate opportunity to raise any relevant federal questions in the state proceeding." *Plouffe v. Ligon*, 606 F.3d 890, 892 (8th Cir. 2010). *Younger* precludes federal court intrusion into ongoing state criminal prosecutions, certain civil enforcement proceedings, and civil proceedings involving certain orders that further the state courts' ability to perform their judicial functions. *Sprint Communications v. Jacobs*, 571 U.S. 69, 73 (2013).

On March 1, 2023, Plaintiff Stafford filed a Petition in Missouri state court in the Circuit Court for St. Francois County. *See* Ex. 1.[3] His state court Petition seeks redress for the same alleged acts on and after February 28, 2021 that are alleged in the Complaint. *Id.* at pages 48–61. Plaintiff Stafford brought these claims against Defendants Basham, Hart, Fenwick, Simonton, Spradling, and Reagan,[4] the same individuals he alleges violated his right of free exercise, used excessive force on him and were deliberately indifferent to the risk he would suffer serious harm. Ex. 1; Doc. 45 ¶¶49, 61, 64–66, 97–99, 101–105, 107. Plaintiff Stafford's state court action even includes claims under RLUIPA and §1983, just as this lawsuit does. Ex. 1 at pages 99–102.

Thus, at the time Plaintiff Stafford joined this lawsuit on March 2, 2023 (Doc. 28), a state court action was already pending against the exact same Defendants (who are or were State

---

[3] Plaintiff Stafford's Petition in his state court case is file stamped March 8, 2023. Ex. 1. However, the docket for his state court case clarifies that he filed his Petition on March 1, 2023. *See* Ex. 2 at 2–3. Moreover, Plaintiff admits that he filed his Petition on March 1, 2023. *See* Ex. 3 at 1–2.

[4] Plaintiff Stafford's Petition misnames Defendant Spradling as "Spaulding" and Defendant Reagan as "Regan."

employees) for the exact same conduct. His state court action has not been dismissed. Ex. 2.

There is thus (1) an ongoing state court lawsuit (2) implicating important state interests, and (3)

Plaintiff has ample opportunity to resolve his federal claims there. Plaintiff Stafford chose to

bring his claims in state court before bringing the same claims in federal court. *Younger*

mandates dismissal of Plaintiff Stafford's federal court claims.

## II.     Plaintiffs Clemons, Stafford, Howard, Hood, Kent, and Smith Did Not Exhaust Their Administrative Remedies.

Plaintiffs Clemons, Stafford, Howard, Hood, and Kent's (*i.e.*, all except Plaintiff

Holliman's and Plaintiff Moore's) claims should be dismissed because the Complaint itself

establishes that they have failed to comply with MDOC's offender grievance procedure, and thus

have failed to exhaust their administrative remedies.

"No action shall be brought with respect to prison conditions under section 1983 … by a

prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." 42 U.S.C. §1997e(a). A prisoner's failure to exhaust

administrative remedies is an affirmative defense that, ordinarily, a defendant has the burden to

prove. *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005) (per curiam). Even though

"'inmates are not required to specially plead or demonstrate exhaustion in their complaints,'" a

court may dismiss a complaint for failure to exhaust administrative remedies "if it is plain on the

face of the complaint that a grievance procedure has not been exhausted." *Davis v. Torshein*, 22-

cv-80-SEP, 2022 WL 4299780, *2 (E.D. Mo. Sept. 19, 2022) (quoting *Jones v. Block*, 549 U.S.

199, 215–16 (2007)). In this case, it is clear from the Complaint itself that Plaintiffs did not

exhaust their remedies. Their claims must therefore be dismissed.

Plaintiffs acknowledge the exhaustion requirement, and include an entire section in their

Complaint claiming that they exhausted all administrative remedies. *See* Doc. 45 at page 33

("Plaintiffs Have Exhausted All Administrative Remedies"). They begin by acknowledging MDOC's three-step Offender Grievance Procedure, which requires them to file an Informal Resolution Request ("IRR"), a Grievance, <u>and</u> a Grievance Appeal. *Id*. ¶¶132–135. They then describe all the IRR's, Grievances, and Grievance Appeals they filed, which they claim satisfy the exhaustion requirement. *Id*. ¶¶136–154. As discussed below, the Complaint establishes that no Plaintiff (save Plaintiffs and Moore Holliman) exhausted their available administrative remedies, and dismissal of their claims is required.

***Plaintiff Clemons***. Plaintiff Clemons alleges he filed several IRRs related to the conduct described in the Complaint, on March 15, March 25, April 16, May 24, August 9, and November 15, 2021. Doc. 45 ¶¶137–143. For some of these IRRs, Plaintiff Clemons filed Grievances after they were denied or rejected. *Id*. For <u>none</u> of these Grievances, however, did Plaintiff Clemons ever file a Grievance Appeal. *Id*. As Plaintiffs acknowledge, Plaintiff Clemons was required to exhaust all administrative remedies, and to do that, he had to go through the entire process—*i.e.*, an IRR, then a Grievance, and finally a Grievance Appeal. *Id*. ¶¶132–135. The Complaint concedes Plaintiff Clemons did not do that. He therefore failed to exhaust his available administrative remedies, and his §1983 claims must be dismissed. *See Hammett v. Cofield*, 681 F.3d 945, 948 (8th Cir. 2012) (affirming dismissal of §1983 claims where the plaintiff failed to file MDOC's three-step administrative procedure); *Smith v. Stubblefield*, 30 F.Supp.2d 1168, 1174 (E.D. Mo. 1998) (Shaw, J.) ("A prisoner must pursue all available levels of administrative remedies in order to satisfy the exhaustion requirement of §1997e, including appeals.").

***Plaintiff Stafford***. Plaintiff Stafford admits he did not file an IRR about the alleged February 28, 2023 assault until March 16, 2021. *Id*. ¶145. He failed to file an IRR within 15 calendar days, and thus failed to comply with MDOC's grievance procedure. *Id*. ¶¶133, 145.

8

Plaintiff Stafford's failure to file his IRR within 15 days means has not exhausted his administrative remedies as a matter of law, and dismissal of claims arising from the alleged February 28th assault is appropriate. *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines[.]"); *Wewerka v. Roper*, No. 09-cv-1973-CDP, 2010 WL 4628093, *4 (E.D. Mo. Nov. 8, 2010) (citing *Mason v. Bridger*, 261 Fed. App'x 225, 227–29 (11th Cir. 2008)).

***Plaintiff Harris***. The Complaint states that Plaintiff Harris filed an IRR on March 15, 2021. *Id.* ¶149. However, it also concedes he did not file a Grievance or a Grievance Appeal. *Id.* While Plaintiff Harris claims he was denied access to the grievance process while in administrative segregation, he does not actually claim he was in "seg" at all times or that he was prevented from filing a Grievance or Grievance Appeal during the time he was not in seg. *Id.* Moreover, his claim that he was not allowed to file grievances while in seg is devoid of factual support and is entirely conclusory. Without alleging that "he requested forms from the guards or otherwise attempted to [continue] the grievance process," Plaintiff Harris' "vague" and "conclusory" allegations cannot save his claim where the Complaint shows he failed to exhaust his remedies. *Hahn v. Armstrong*, 08-cv-169-LMB, 2010 WL 575748, *4 (E.D. Mo. Feb. 11, 2020); *Hammett*, 681 F.3d at 948.

Even if Plaintiff Harris had exhausted his remedies as to the February 28th incident (he did not), his March 2021 IRR could not have covered his eyeglasses claim against Defendants McFarland and Harris (*see* §III.A, *infra*). Plaintiff Harris requested eyeglasses from Defendant McFarland after August 2021. Doc. 45 ¶114. Plaintiff Harris filed his IRR in March 2021—five months earlier. Plaintiff Harris did not even attempt to exhaust his eyeglasses-related claim.

***Plaintiffs Howard and Hood***. Although Plaintiffs Howard and Hood allege they filed

IRRs about the alleged attack on March 15, 2021, they admit they never filed a Grievance Appeal, and thus never exhausted their remedies. Doc. 45 ¶¶151, 152; *Hammett*, 681 F.3d at 948. Plaintiffs attempts to avoid dismissal by claiming "MDOC transferred [Plaintiff Howard] to two different facilities where he was denied access to the grievance appeal procedure," and that "Plaintiff Hood was sent to seg on an unrelated matter and was denied access to the grievance appeal procedure." Doc. 45 ¶¶151, 152. These allegations are entirely conclusory. Plaintiffs Howard and Hood do not claim they asked for Grievance Appeal forms and were denied. *Id*. They thus has not shown that they exhausted all available administrative remedies. "A plaintiff must present some evidence, other than mere conclusory statements to demonstrate that he was precluded from fully exhausting his administrative remedies." *Hahn*, 2010 WL 575748 at *4 (granting motion to dismiss where plaintiff did not comply with grievance procedure) (citing *Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005). Plaintiffs Howard and Hood's conclusory allegations do not establish that they exhausted all administrative remedies available to them.

  ***Plaintiffs Kent and Smith***. Plaintiffs Kent and Smith admit they did not even file IRRs, and thus did not even begin the grievance process. Doc. 45 ¶154. They claim this was "due to unavailability, futility and fear of retaliation." *Id*. This claim is without merit.

  The argument that the grievance process was "unavailable" is undercut by the fact that all other Plaintiffs at least tried to file IRRs at some point. There is no reason these Plaintiffs could not do the same.

  Further, their "futility" claim is based on an allegation that Defendant Raymond "assured [them] that they would be allowed to pray in the wing moving forward." *Id*. But a supposed promise of <u>future</u> activity does not explain how it would be futile to seek redress for <u>past</u> wrongs. Moreover, "[t]he fact that [a] plaintiff feels the grievance procedure might have been futile or

perhaps may not have been an effective remedy in his case does not excuse his failure to use it." *Watson v. Witty*, No. 16-cv-71-HEA, 2018 WL 11303863, *3 (E.D. Mo. Feb. 21, 2018). "The statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them. [Plaintiffs] failed to do so, and so [their] complaint must be dismissed." *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).

Finally, fear of retaliation can only excuse the failure to exhaust remedies if "a reasonable inmate of ordinary firmness would have failed to file a grievance in [the same] situation." *East v. Minnehaha Cnty.*, 986 F.3d 816 (8th Cir. 2021). Here, there are no allegations that Plaintiffs Kent or Smith were threatened with retaliation. Also, the other Plaintiffs filed grievances within or around 15 days of the alleged assault. This disproves any claim that Plaintiffs' Kent and Smith would have objectively reasonable fear of reprisal for filing IRRs. Additionally, "[t]he MDOC Manual expressly prohibit[s] reprisal against an inmate for using the grievance procedure and set[s] forth detailed special grievance procedures for an inmate who 'believes that a reprisal has occurred.'" *Hammett*, 681 F.3d at 948. Therefore, an offender's subjective belief that he might face retaliation does not excuse the failure to exhaust the grievance procedure's available administrative remedies. *Id*.

In this case, Plaintiffs' own allegations establish that they did not exhaust the remedies available to them. Dismissal with prejudice is warranted.

**III.   Plaintiffs Do Not State Claims Against Defendants McFarland, Williams, David Vandergriff, Teri Vandergriff, Raymond, Morriss, Falkenrath, Stange, and Hancock.**

Even if Plaintiffs had exhausted their administrative remedies (they did not), they still have not pled any claim against Defendants McFarland, Williams, David Vandergriff, Teri Vandergriff, Morriss, Falkenrath, Stange, or Hancock in their individual capacities.

11

A.   **Plaintiff Harris' Deliberate Indifference Claim Against Defendants McFarland and Williams.**

Plaintiff Harris has failed to state a deliberate indifference claim against Defendants McFarland and Williams. The only thing Defendants McFarland and Williams are accused of doing is failing to provide Plaintiff Harris with eyeglasses upon request. Doc. 45 ¶114. This claim fails, however, because (1) Plaintiff Harris does not allege missing his eyeglasses caused him any substantial harm, and (2) Plaintiff Harris does not allege these Defendants had the means or authority to provide him with new eyeglasses.

First, Plaintiff Harris has not stated an 8th Amendment claim because he has not alleged that he suffered from an objectively serious medical need and that Defendants McFarland and Williams actually knew of, but deliberately disregarded, that need. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013). All he alleges is (1) he sent Defendants McFarland and Williams messages asking for new eyeglasses, and (2) they ignored this request. Doc. 45 ¶114. Under nearly identical circumstances, this Court (and others) have held that a request for eyeglasses is not an objectively serious medical need as a matter of law. *See Wagner v. City of St. Louis Dept. of Public Safety*, No. 12-cv-1901-AGF, 2014 WL 3529678, *8–9 (E.D. Mo. July 16, 2014) (collecting cases). Absent allegations of an acute injury such as macular degeneration or an inability to see at all without glasses, the failure to provide glasses upon request cannot support a deliberate indifference claim. *Id.*; *see also Phillips v. Hurley*, No. 13-cv-1745-SNLJ, 2016 WL 4396168, *5 (E.D. Mo. Aug. 18, 2016) (plaintiff failed to state deliberate indifference claim where he failed to show "that he was unable to see with the state issued eyeglasses or that he experienced any physical degeneration of his eyesight due to incorrect prescription glasses"); *Washington v. City of University City*, No. 09-cv-784-HEA, 2012 WL 1134029, *4–5 (E.D. Mo. Mar. 31, 2012) (deliberate indifference claim failed where

12

plaintiff did not show that failure to provide eyeglasses was "damaging to [him]").

Here, Plaintiff Harris does not allege he suffered any harm from being denied eyeglasses. He does not allege he was unable to see at all, that he suffered from severe headaches without his eyeglasses, or that his vision deteriorated because he was missing his eyeglasses. Without such allegations, he cannot establish an objectively serious medical need, and thus cannot meet a required element of a deliberate indifference claim. His claim fails for this reason alone.

Second, Plaintiff Harris does not allege Defendants McFarland and Williams had means or authority to provide the requested eyeglasses. All he alleges is that the Defendants were case managers at ERDCC. Doc. 45 ¶¶32–33. He does not allege that a case manager had any practical or legal ability to provide eyeglasses to offenders who request them. Even if he had, Plaintiff Harris does not allege either Defendant was the case manager assigned to him—only that they were case manager at ERDCC. Absent allegations that either Defendant "had any decision-making authority to provide [the requested treatment], or whether [he] was the relevant decision maker," Plaintiff Harris cannot state a claim for deliberate indifference against either Defendant. *Irving v. Vinson*, No. 09-cv-161-SNLJ, 2012 WL 1118229, *3 (E.D. Mo. Apr. 3, 2012).

**B.    Individual Capacity Claims Against Defendants McFarland, Williams, David Vandergriff, Teri Vandergriff, Raymond, Morriss, Falkenrath, Stange, and Hancock.**

All Plaintiffs fail to state Individual Capacity claims against Defendants McFarland, Williams, David Vandergriff, Teri Vandergriff, Raymond, Morriss, Falkenrath, Stange, and Hancock. The Complaint contains detailed, graphic allegations about other MDOC employees and what they supposedly did on the night of February 28, 2021. *See* Doc. 45, *passim*. Plaintiffs do not allege the same conduct by Defendants McFarland, Williams, David and Teri Vandergriff, Raymond, Morriss, Falkenrath, Stange, and Hancock. Plaintiffs' allegations against these Defendants are entirely conclusory and cannot support any claim as a matter of law.

***Defendants David Vandergriff, Teri Vandergriff, Falkenrath, Hancock, and Morriss***.
Plaintiffs allege Defendant David Vandergriff was the ERDCC warden on February 28, 2021.
Doc. 45 ¶24. Plaintiffs allege Defendant Teri Vandergriff is currently the warden at Farmington
Correctional Center ("FCC"). *Id*. ¶39. Plaintiffs allege Defendant Falkenrath is currently the
warden at Jefferson City Correctional Center ("JCCC"). *Id*. ¶36. Plaintiffs allege Defendant
Hancock is currently the warden at Missouri Eastern Correctional Center ("MECC"). *Id*. ¶38.
Plaintiffs allege Defendant Morriss is currently the warden at Algoa Correctional Center
("ACC"). *Id*. ¶40. **That is all.** Plaintiffs do not allege these Defendants ordered them to stop
praying, struck them, sprayed them with chemical spray, or denied them access to medical care.

***Defendant Stange***. Plaintiffs allege that Defendant Stange is currently the warden at
Southeast Correctional Center ("SECC") (*id*. ¶37), that he was a Captain at ERDCC on March 1,
2021 (*id*. ¶84), and that someone named "Bennett" (Plaintiffs do not explain who this person
was) allegedly told them that Defendant Stange was angry upon seeing the video of the February
28, 2021 incident (*id*.). Plaintiffs do not allege Defendant Stange ordered them to stop praying,
struck them, sprayed them with chemical spray, or denied them access to medical care.

***Defendants McFarland and Williams***. All Plaintiffs allege about Defendants McFarland
and Williams is that they were a case managers at ERDCC and that they were "involved in the
events arising on February 28, 2021." Doc. 45 ¶¶32–33. Plaintiffs do not allege how these
Defendants were "involved." They do not claim Defendants McFarland or Williams ordered
them to stop praying, struck them, sprayed them with chemical spray, or denied them access to
medical care. Plaintiffs' allegations of their "involvement" are thus bare conclusions.

***Defendant Raymond***. Plaintiffs allege Defendant Raymond was either the "deputy
warden" or "Associate Warden" at ERDCC. *Id*. ¶¶25, 85. They allege he addressed a group of

Muslim offenders at ERDCC on March 2, 2021, and allegedly "confirmed that the guards' actions were wrong and claimed that the guards would be punished." *Id*. ¶85. Defendant Raymond allegedly "assured Plaintiffs that they would be allowed to pray in the wing moving forward and that their other religious requests would be accommodated." *Id*. ¶154. Plaintiffs allege Plaintiff Kent told Defendant Raymond about the February 28, 2021 incident during this March 2nd gathering. *Id*. ¶126. Defendant Raymond allegedly told Plaintiffs Clemons and Stafford in October 2021 that "it was time to stop filing grievances;" however, Plaintiffs do not allege Defendant Raymond did anything to retaliate against them for filing grievances. *Id*. ¶91. Plaintiffs do not allege Defendant Raymond ordered them to stop praying, struck them, sprayed them with chemical spray, or denied them access to medical care.

The foregoing is the sum total of Plaintiffs' allegations against these Defendants. Plaintiffs do not allege these Defendants did anything to harm them at any time. They do not allege these Defendants ordered them to stop praying, denied them freedom to exercise their religion, struck them, sprayed them with chemical spray, or denied them access to medical care (save for claiming Defendants McFarland and Williams failed to provide Plaintiff Harris with glasses, which claim fails as discussed in §III.A *supra*). Despite the total absence of any allegations of wrongdoing, Plaintiffs bring claims against these Defendants for depriving them the right of free exercise (Count I), excessive force (Count II), deliberate indifference (Count IV), denial of equal protection (Count V), and common law battery (Count VIII).

Since Plaintiffs have not alleged these Defendants did anything wrong, their claims necessarily rely on "group pleading"—*i.e.*, lumping these Defendants in with other Defendants (*e.g.*, Defendants Basham, Hart, etc.) who Plaintiffs do allege actually committed wrongful acts. But group pleading suffices only if the complaint "sets forth allegations that would establish the

basis for holding the individual defendants liable." *Energizer Brands, LLC v. Procter & Gamble Co.*, No. 16-cv-22-CEJ, 2016 WL 2894708, *2 (Mo. App. E.D. May 18, 2016). The Complaint, however, has no allegations connecting these Defendants to the deprivation of constitutional rights and torts alleged against other Defendants. Plaintiffs do not allege any of these Defendants ordered other Defendants to break up the prayer group or pepper spray Plaintiffs, for example. Plaintiffs thus fail to satisfy even Rule 8's relaxed pleading standard.

Moreover, vicarious liability does not apply in §1983 suits. *Iqbal*, 556 U.S. at 676. To bring claims against Defendants McFarland, Williams, David and Teri Vandergriff, Raymond, Morriss, Falkenrath, Stange, and Hancock, Plaintiffs were required to "plead that each [Defendant], through the [Defendant's] own individual actions, violated the Constitution." *Id*. They have failed to do so. The Court should dismiss Plaintiffs' individual capacity claims against Defendants McFarland, Williams, David and Teri Vandergriff, Raymond, Morriss, Falkenrath, Stange, and Hancock.

**IV.   Plaintiff Holliman Has Not Alleged Any Claim Against Defendants Spradling, Reagan, Fenwick, or Simonton, and Plaintiff Moore Has Not Alleged Any Claim Against Defendants Spradling, Reagan, or Simonton.**

As noted in §II *supra*, the only Plaintiffs who may have exhausted their administrative remedies are Plaintiffs Holliman and Moore. The Complaint, however, does not allege that Defendants Spradling, Reagan, Fenwick, or Simonton violated Plaintiff Holliman's rights, or that Defendants Spradling, Reagan, or Simonton violated Plaintiff Moore's rights, in any way. The Complaint does not allege any of them ordered these Plaintiffs to stop praying, assaulted them, chemical sprayed them, or failed to provide them with medical care. Plaintiffs Holliman and Moore claim that unnamed "officers"—but not these Defendants—escorted them out of the housing unit once the prayer group broke up. Doc. 45 ¶59. Unidentified "officers"—again, not these Defendants—allegedly "dragged" them to administrative segregation, "slamming them into

16

walls and doors along the way." *Id.* ¶70. Plaintiff Holliman also alleges he was transferred to a different facility after filing grievances, but he does not allege these Defendants had anything to do with the transfer. *Id.* ¶118. Although Plaintiff Holliman allegedly is not allowed to pray in common rooms while at this new prison, there is not even a suggestion that these Defendants—who are or were employed at ERDCC—are responsible for that. *Id.* ¶¶119–20. Similarly, Plaintiff Moore alleges he has not been allowed to wear a kufi (a religious head covering), but does not allege these Defendants have prevented him from wearing one. *Id.* ¶117.

Just as the other Plaintiffs failed to plead any personal misconduct against other Defendants (*see* §III.B, *supra*), there are no allegations that Defendants Spradling, Reagan, Fenwick, or Simonton did anything to violate Plaintiff Holliman's rights, and no allegations that Defendants Spradling, Reagan, or Simonton did anything to violate Plaintiff Moore's rights. Plaintiff Holliman's and Plaintiff Moore's claims against these Defendants fail as a matter of law. *Iqbal*, 556 U.S. at 676.

## V.    Other Than Plaintiff Clemons' Claims Against Defendants Basham And Hart, Plaintiffs' Battery Claims Are Untimely, And Defendant Basham Is Not Alleged To Have Battered Anyone.

With the exception of Plaintiff Clemons, no other Plaintiff's claim for common law battery (Count VIII) is timely, and even Plaintiff Clemons' battery claim is timely only as to Defendants Basham and Hart (and there are no allegations Defendant Basham battered anyone). Count VIII must therefore be dismissed in its entirety as to all Plaintiffs other than Plaintiff Clemons, and for Plaintiff Clemons except as to Defendant Hart.

The statute of limitations for "all actions brought by an offender … against [MDOC] or … any employee or former employee for an act in an official capacity, or by the omission of an official duty," is one year. §516.145, RSMo. "The phrase 'act in an official capacity' means that a public servant is acting within the scope of what he or she is employed to do rather than being

engaged in a personal frolic." *Aldridge v. Hoskin*, 645 S.W.3d 101, 104 (Mo. App. S.D. 2022) (citation omitted). "In its plain and ordinary meaning, the phrase is used to delineate between an action performed for work purposes rather than for personal ones." *Id*.

Here, the alleged battery occurred on February 28, 2021. The only Plaintiff to file a claim within one year of that date was Plaintiff Clemons, who filed this case against Defendants Basham and Hart. Doc. 1.[5] The others filed their claims on March 2, 2023, when they joined this case via the Second Amended Complaint (Doc. 28). This is more than <u>two</u> years after the alleged battery. No Plaintiff (save Plaintiff Clemons) filed suit within the applicable limitations period.

The other Plaintiffs may argue that their battery claim relates back to Plaintiff Clemons' original Complaint.[6] They would be wrong.

"Although Rule 15(c) does not expressly address amendments changing plaintiffs, it does contemplate treating such amendments similar to those changing defendants." *Self v. Equilon Enterprises, LLC*, No. 00-cv-1903-TEA, 2005 WL 3763533, *5 (E.D. Mo. Mar. 30, 2005).

> [F]or an amended complaint which adds new plaintiffs to relate back, it must satisfy the three requirements of Rule 15(c): the amended complaint must arise out of the conduct, transaction, or occurrence set forth in the original complaint; the new plaintiffs' interest must be sufficiently related to the original plaintiffs' interest that the defendants received fair notice of the new plaintiffs' claims; and the defendant must not be unduly prejudiced by the addition of the new plaintiffs.

*Id*. "Rule 15(c) bars a new plaintiff's claims to relate back to the original filing date unless there was a 'mistake concerning the identity of the proper party.'" *Id*. Thus, "[a] mistake concerning the identity of the newly-named party is a requirement for an amended complaint to relate back to an original complaint." *Id*. (citing *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 467 n.1 (2000)).

---

[5] Plaintiff Clemons also original brought a claim against Mike Miller. *See* Doc. 1. Mr. Miller has since been dropped as a defendant, and no claim is pending against him.

[6] Plaintiff Clemons' original Complaint brought a claim under 42 U.S.C. §1983 only. Defendants concede for the purposes of this Motion that Plaintiff Clemons' battery claim against Defendants Basham and Hart relate back under Rule 15(c)(1)(B).

"In other words, a new [party] may be added to an action by amendment after the statute of limitations has expired if the [new party] had adequate notice of the action and of the [opposing party's] mistake in failing to name the new [party] at the beginning." *Zimmer v. United Dominion Industries, Inc.*, 193 F.R.D. 620, 622–23 (W.D. Ark. 2000). Even if there is mistake or confusion as to a party's identity, the new party must have had notice of the action and the mistake within 120 days of when the original pleading was filed. *Id*; Fed. R. Civ. P. 15(c)(1)(C); Fed. R. Civ. P. 4(m).

Here, Plaintiffs cannot plausibly argue they were confused or mistaken as to their own or the Defendants' identities. The Complaint's allegations make clear they all were together on the night of February 28, 2021. Plaintiff Clemons was able to file his lawsuit within one year; the others could have as well. The other Plaintiffs' battery claims cannot relate back to Plaintiff Clemons' original Complaint as a matter of law. Those battery claims are thus untimely.

Further, claims against Defendants other than Defendants Basham and Hart cannot relate back because Plaintiffs failed to provide the other Defendants with notice of this lawsuit, and a purported mistake in misidentifying them, within 120 days of Plaintiff Clemons' original complaint. Fed. R. Civ. P. 15(c)(1)(C); Fed. R. Civ. P. 4(m). The Defendants are all individuals. Regardless of whether they work together, there is no legal privity between them. Here, Plaintiff filed suit against Defendants Basham and Hart within a year of the alleged battery, but never served them—or any other current Defendant—until April 2023. *See* Docket. No one was on notice of <u>any</u> of the claims in this case until more than a year after this lawsuit was filed. Battery claims brought by any Plaintiff (other than Plaintiff Clemons) against any Defendant (other than Defendants Basham or Hart) are time barred.

Plaintiff Clemons' battery claim against any Defendant besides Defendants Basham and

Hart do not relate back for the same reason. Plaintiff Clemons would know who struck him on the night of February 28, 2021. He cannot plausibly claim he was confused or mistaken about the identities of any of the other Defendants. He also failed to provide notice to any of the other Defendants he is now suing for battery that claims might be brought against them. To the extent Plaintiff Clemons brings a battery claim against any Defendant other than Defendants Basham and Hart, they cannot relate back to his original Complaint, and thus are time barred.

Additionally, even though Plaintiff Clemons' battery claim against Defendant Basham may relate back to his original complaint, the Complaint does not allege Defendant Basham ever struck anyone. *See* Doc. 45, *passim*. Plaintiff Clemons thus fails to state a claim for battery against Defendant Basham as a matter of law.

## VI.   Plaintiffs Fail To State A Claim Against The Official Capacity Defendants.

Plaintiff brings claims for denial of their right to free exercise of religion (Count I), violation of RLUIPA (Count VI), and violation of the establishment clause (Count VII) against Defendants Precythe, Sturm, Worsham, David Vandergriff, and Raymond. *See* Doc. 45 ¶¶23– 27.[7] The Complaint, however, fails to state a claim against any of these Defendants in their official capacities.

In Counts I and VI, Plaintiffs claim Defendants Precythe, Sturm, Worsham, David Vandergriff, and Raymond "promulgat[ed] and maintained a policy that forbids Muslims from praying in congregation." Doc. 45 at pages 40 (¶5), 45 (¶26). This allegedly prevents Muslim offenders "from gathering for an Islamic purpose while [allowing] other incarcerees to gather for Christian or secular purposes," and "substantially inhibit[s] and constrain[s]" Plaintiffs' exercise

---

[7] The Complaint's caption purports to bring claims against Defendants Falkenrath, Stange, and Hancock in their official capacities. Doc. 45 at 3. However, Plaintiffs' actual allegations clarify that they are suing these Defendants in their "individual capacit[ies] only." Doc. 45 ¶¶36–38.

of central tents of their religion. *Id*.

But no such "policy" is alleged at all. All Plaintiffs allege is that "MDOC facilities network-wide treat Muslims as gang members" as a matter of policy. *Id*. ¶83. This is not the same as alleging a "policy" of not allowing Muslims to congregate and pray together.

Further, Plaintiffs do not allege that they were prevented from exercising their religious beliefs on the night of February 28, 2021 as a matter of "policy." To the contrary, Plaintiffs explicitly allege that they believed they would be allowed to pray together outside the chapel because "they had prayed together in the housing unit's common space several times each day since the prison locked down [its] chapel in response to the COVID-19 pandemic—and indeed, had prayed together three separate times earlier that very day." *Id*. ¶47. In fact, the **very first** Paragraph of the Complaint alleges that Plaintiffs had been allowed to pray in their housing unit "hundreds of times in the months preceding" the alleged attack. *Id*. ¶1; *see also id*. ¶¶47, 52, 108. Plaintiffs' own allegations prove they were not prevented from praying together on the night of February 28th as a matter of "policy."

Count VII is brought against "ERDCC, FCC, ACC, SECC, JCC, and MECC Official Capacity Defendants only." *Id*. at page 46.  Plaintiffs allege in Count VII that, "[b]y permitting Christians, but not Muslims, to pray together in congregation outside of prison chapels, the Farmington [FCC] and MECC Official Capacity Defendants violated, and continue to violate, the First Amendment." *Id*. at page 46 (¶30). But Plaintiffs have not brought any official capacity claims against officials who work at FCC or MECC (or ACC, SECC, or JCC). The only Defendants alleged to have any connection to FCC or MECC are Defendants Hancock and Teri Vandergriff, and Plaintiffs are suing them "in [their] **individual capacit[ies] only**." *Id*. ¶¶38, 39 (emphasis added). Moreover, Plaintiffs' own allegations confirm that offenders are allowed to

pray in congregation outside of chapels. *Id*. ¶¶1, 47, 52, 108.

Even if Plaintiffs had adequately pled Counts I, VI, and VII (they did not), they have failed to plead them against Defendants Precythe, Sturm, Worsham, David Vandergriff, and Raymond. All Plaintiffs allege about Defendants Precythe, Sturm, and Worsham is that they are the MDOC Director, Deputy Director, and Supervisor of Religious and Spiritual Programming, respectively. *See* Doc. 45 ¶¶21–23. Plaintiffs do not allege Defendants Precythe, Sturm, or Worsham instituted or supervised the supposed "policy" barring Muslims from congregating together. Plaintiffs do not allege they are responsible for enforcing any such supposed "policy." Plaintiffs apparently are claiming that, because Defendants Precythe, Sturm, and Worsham are high-ranking MDOC employees, they "must be" responsible for the alleged policies. But such an implicit claim is entirely conclusory, and cannot withstand scrutiny on a motion to dismiss. Further, the fact that Plaintiffs were allowed to pray together in their housing unit at ERDCC "hundreds of times" before February 28th (*id*. ¶¶1, 47, 52, 108) demonstrates that MDOC has no policy keeping Muslims from praying in congregation.

Similarly, while Defendants David Vandergriff and Raymond are ERDCC's warden and deputy warden, respectively, Plaintiffs do not allege these Defendants were responsible for any policies that restricted Plaintiffs' exercise of their religion at ERDCC. And, as discussed above, Plaintiffs explicitly allege the <u>absence</u> of any policy restricting religious exercise at ERDCC. Doc. 45 ¶¶1, 47, 52, 108.

In sum, while the Second Amended Complaint may state a claim against some Defendants sued in their individual capacities for violating Plaintiffs' religious rights, they have failed to state a claim that any Defendant sued in his or her official capacity promulgated or is continuing to enforce any policy that violates those rights. The Court should dismiss all official

22

capacity claims in Counts I, VI, and VII.

**VII.    Plaintiffs' Claim For Damages Against Official Capacity Defendants Is Barred Under The Eleventh Amendment.**

Even if Plaintiffs had properly alleged claims against the official capacity Defendants (they have not), any claim for damages against them would be barred under the Eleventh Amendment. Thus, any demand for damages against these Defendants must be dismissed.

The Eleventh Amendment confers "sovereign immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens of the citizens of another state." *Woods v. Annesser*, No. 23-cv-21-SRW, 2023 WL 3816660, *8 (E.D. Mo. June 2, 2023) (*citing Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974)). "Sovereign immunity also bars a claim for money damages against a state official sued in an official capacity." *Id.* (*citing Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999)). "42 U.S.C. § 1983—under which this case arises—does not revoke a state's Eleventh Amendment immunity from suit in federal court." *Id.* (*citing Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989)). Additionally, as this Court held in this case already, RLUIPA "does not authorize monetary damages based on official capacity claims. *Clemons v. Basham*, No. 22-cv-158-SRW, 2022 WL 6722377, *6 n.6 (E.D. Mo. Oct. 11, 2022).

Despite this clear and unambiguous authority, Plaintiffs continue to bring claims for damages against Defendants sued in their official capacities. Count I includes a claim against "Official Capacity Defendants." Doc. 45 at 39–40. Plaintiffs ask this Court "to enter a judgment in their favor, and against the Official Capacity Defendants," and to award "damages, including punitive damages, as provided by applicable law." *Id.* at page 41 (¶7). Count VI is against the "Official Capacity Defendants Only." *Id.* at 44–45. Plaintiffs ask this Court to award not only injunctive relief, but also "damages, including punitive damages, as provided by applicable law."

23

*Id.* at page 45 (¶27). Count VII likewise is against "Official Capacity Defendants Only." *Id.* at 45–46. Again, Plaintiffs ask this Court to award "damages, including punitive damages, as provided by applicable law." *Id.* at page 46 (¶31).

The "applicable law" clearly precludes an award of damages against Defendants sued in their official capacities only. The Court should dismiss any claim for damages against such Defendants.

<u>**CONCLUSION**</u>

All claims by Plaintiff Stafford are barred by the *Younger* abstention doctrine. Further, all claims by Plaintiffs other than Plaintiffs Holliman and Moore are barred because the Complaint establishes that Plaintiffs have failed to exhaust their administrative remedies. Even if that were not the case, the Complaint fails to allege individual capacity claims at all against Defendants McFarland, Williams, David and Teri Vandergriff, Raymond, Morriss, Falkenrath, Stange, and Hancock, and fails to allege individual capacity claims by Plaintiff Holliman against anyone other than Defendants Basham and Hart, and individual capacity claims by Plaintiff Moore against anyone other than Defendants Basham, Hart, and Fenwick. The Complaint also fails to allege claims against Defendants Precythe, Sturm, Worsham, David Vandergriff, and Raymond in their official capacities. Even if the Complaint did properly state official capacity claims (it does not), Plaintiffs' claim for damages is barred under the Eleventh Amendment.

For the foregoing reasons, Defendants respectfully request that this Court GRANT their Motion to Dismiss.

Respectfully submitted,

**ANDREW BAILEY**
Attorney General

/s/ *Stephen M. Hoeplinger*
Stephen M. Hoeplinger, MO62384
Assistant Attorney General
815 Olive St., Suite 200
St. Louis, MO 63101
Tel:     (314) 340-7849
stephen.hoeplinger@ago.mo.gov

*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of June 2023, a true and correct copy of the

foregoing was served on counsel of record for all parties via the Court's CM/ECF system.

/s/Stephen M. Hoeplinger
Assistant Attorney General

25