UNITED STATES DISTRICT COURT EASTERN DISTRICT OF MISSOURI EASTERN DIVISION

| | |
|---|---|
| REGINALD BYRON CLEMONS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 4:22-cv-00158-SRW |
| v.   ) | |
| ) | |
| MICHELLE BASHAM, et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' MOTION FOR AN ADVERSE INFERENCE FOR SPOLIATION OF EVIDENCE**

# INTRODUCTION

When a group of incarcerated Muslims attempted to pray together at ERDCC, they were met with brutal and unlawful force by ERDCC officials. This force was caught on many of the dozens of cameras situated throughout ERDCC. Yet, when Plaintiffs sought those videos through discovery, Defendants failed to provide a large number of them. Not coincidentally, the videos that Defendants failed to provide were those that would most readily substantiate Plaintiffs' claims. Federal Rule 37 compels Defendants to provide the videos and their failure to do so, as described below, entitles Plaintiffs to an inference that their allegations that could be substantiated by the videos are true.

# BACKGROUND

### A. Defendants Brutalize Plaintiffs While they Attempt to Pray and Continue to Brutalize them for Hours After.

On February 28, 2021, Plaintiffs, nine Muslim inmates, gathered to pray in the Missouri Department of Correction's Eastern Reception, Diagnostic, and Correctional Center's (ERDCC) honors housing unit. ECF 67 at 3-4. Upon seeing the inmates praying, Defendant Michelle Basham approached the Plaintiffs, asked them to cease praying. *Id.* at 4. When they did not, she made an emergency call for backup. *Id.* The officers who arrived drenched several of the Plaintiffs with pepper spray at point blank range and dragged them from the unit slamming them into doors and walls along the way. *Id.* at 4-5. Officers then marched Plaintiffs Clemons, Stafford, Harris, Moore, Howard, Holliman, and Hood to a separate unit and place them in Administrative Segregation. *Id.* at 4-5.

Just outside Housing Unit Four, Plaintiff Stafford was attacked again. Officers who accused him of being uncooperative threw him to the ground, stepped on his back and held him—one officer with a knee on his back and the other with his arm across his throat in a

2

"blood choke." *See* Stafford Dep at 11:21-12:2; 93:12-23. He could not breathe. *Id.* at 93:12-23. Plaintiff Holliman witnessed this attack and begged the officers to stop and let Stafford up. ECF No. 67 at 10. Stafford identifies two cameras directly outside of Housing Unit Four which faced in the direction of the incident. *Id.* at 11:21-12:2; 93:12-23. Defendants have not provided this camera angle to Plaintiffs despite their multiple requests to provide it. See Exhibit A.

Defendants continued to walk the Plaintiffs *barefoot* across the yard, through cold and wet soil, to the Administrative Segregation wing in Housing Unit One. Stafford Dep. at 97:5-6; ECF No. 67 at 6. The barbaric treatment of Stafford and the other Plaintiffs did not let up. Stafford had barely entered his Administrative Segregation cell when he was immediately slammed face first to the ground once again. Stafford Dep. 97:13-14. On the ground officers began kicking and punching him as he begged them to stop. Stafford Dep. 97:20-98:5. Defendant Simonton then proceeded to cut off Stafford's clothing and conduct an invasive strip search including groping Stafford's genitals, Stafford Dep. 98:17-25—in in direct violation of strip search protocols at the facility. Ragan Dep. 124:12-20 (stating that during a strip search there is no reason that an officer would need to touch an inmate's genitals).

Plaintiffs were then left in agonizing pain, without medical attention, and forced to endure a night in their Administrative Segregation cells with little light, no running water, no mattresses, no pillows, no blankets, and no heat. MTD Opp. at 7; see Stafford dep. 99:17-100:3.

### B. Cameras Capture the Entire Incident, but Defendants Fail to Produce the Videos.

The entirety of this incident from the initial attack in Housing Unit Four to Plaintiffs' night of agony in Administrative Segregation is captured on the ERDCC's security cameras.

3

The ERDCC has camera on every building, including Unit Four and Housing Unit 1. *See* Stafford Dep. 11:21-23. There are at least two cameras outside of Housing Unit 4, facing the direction of the officers' attack against Stafford. *Id.* at 11:21-12:2; 93:12-23. There are cameras pointed at where officers walked Plaintiffs barefoot across the yard. *See* Vandergriff Dep. at 41:20-23. There are cameras outside Unit 2, an Administrative Segregation unit directly adjacent to Housing Unit 1, where Plaintiffs were ultimately taken. Ragan Dep. at 106:3-11.

Defendants have not made any videos from these cameras available. Within days of the recorded incidents, Plaintiffs made several requests noticing Defendants of their duty to preserve the footage. *See* Stafford Dep. 106:2-3. When requested during discovery, Defendants provided only three angles of video for the entire event: two angles showing the interior of Housing Unit 4B, and one angle from the yard from a separate building pointing to the exterior of Housing Unit 4B.also Despite multiple attempts from Plaintiffs' Counsel to procure the several hours of missing footage from the Unit 4 porch, the walk to Unit 1, and the interior of the Administrative Segregation Wing of Housing Unit 1, Defendants have failed to provide these videos.

## ARGUMENT

Plaintiffs seek and are entitled to an adverse inference instruction on each of the facts related to incidents on the Housing Unit 4 Porch, the walk to Housing Unit 1, and in the Administrative Segregation Wing of Housing Unit 1. Spoliation is the "intentional destruction, mutilation, alteration, or concealment of evidence." Black's Law Dictionary (11th ed. 2019). Rule 37(e) entitles a party to a remedy when the opposing party spoliates. Fed. Rule Civ. Pro. 37(e). One such remedy is "that the lost information was unfavorable to the party. Fed. Rule Civ. Pro. 37(e)(2)(A).

4

"For an adverse inference instruction for spoliation to be warranted, a district court is required to make two findings: (1) there must be a finding of intentional destruction indicating a desire to suppress the truth, and (2) there must be a finding of prejudice to the opposing party." *Lincoln Compoosites, Inc. v. Firetrace USA, LLC*, 825 F.3d 453, 463 (8th Cir. 2016) (quoting *Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 460 (8th Cir. 2013). Here, the evidence shows that Defendants destroyed the videos to hide the truth. Additionally, the destruction of the videos prejudices plaintiffs because the videos would have been helpful to their case. The Court should thus grant Plaintiffs' motion and instruct that Plaintiffs are entitled to an adverse inference related to any destroyed videos.

I. **The failure to produce video is evidence of an intent to hide the truth.**

Under federal law, "there must be a finding of intentional destruction indicating a desire to suppress the truth." *Sherman v. Rinchem Co.*, 687 F.3d 996, 1006 (8th Cir. 2012) (quoting *Stevenson*, 354 F.3d at 746). Since intent can rarely be shown with direct evidence, courts will consider circumstantial evidence in determining whether a party acted with an intent to hide the truth. *See Jones v. Riot Hospitality Grp.*, 95 F.4th 730, 735 (9th Cir. 2024) (citing Fed. R. Civ. P. 37(e); *Morris v. Union Pac. R.R.,*, 373 F.3d 896 901 (8th Cir. 2004) ("Intent rarely is proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witness in a particular case, and other factors.").

The record establishes that Defendants have failed to produce videos from several cameras that operate in and around the areas where Plaintiffs' injuries occurred. *See, e.g.,* Stafford Dep. 11:21-23, *Id.* at 11:21-12:2; 93:12-23; Vandergriff Dep. at 41:20-23; Ragan Dep. at 106:3-11. In the immediate aftermath of the incidents giving rise to this lawsuit, Plaintiffs

5

notified Defendants of their intent to litigate and Defendants subsequent responsibility to preserve video records. *See* Stafford Dep. 106:2-3. Despite the apparent existence of the videos at one time and the Defendants knowledge that the videos were necessary to pending litigation, Defendants failed to provide many of the videos relevant to Plaintiffs' claims. Additionally, these videos would devastate Defendants' defense. They would conclusively demonstrate that Defendants willfully and repeatedly battered Plaintiffs despite the fact that Plaintiffs posed no threat and did not resist.

Defendants interest in destroying the videos, when combined with (1) the prior existence of the videos and (2) the fact that Defendants were put on notice about litigation within days of the incident is circumstantial evidence sufficient to prove that Defendants destroyed the videos. Even if Defendants had some sort of policy whereby regular video destruction occurred, it would not relieve them of responsibility to preserve the videos since they were on notice of litigation. *See Morris v. Union Pacific Railroad*, 373 F.3d 896, 900 (8th Cir. 2004). There is no reasonable explanation for the absence of the videos except for Defendants' bad faith.

## II. Defendants' Spoliation Prejudices Plaintiffs.

"There must be a finding of prejudice to the opposing party before imposing a sanction for destruction of evidence." *Stevenson*, 354 F.3d at 748 (citing Dillon, 986 F.2d at 267). Once a court finds prejudice, a sanction through an adverse inference is the appropriate remedy. *Id.*

The prejudice requirement may be "satisfied by the nature of the evidence destroyed in the case." *Anderson v. BNSF Railway Co.*, 681 F.Supp.3d 899, 914 (S.D. Iowa 2023) (quoting *Stevenson*, 354 F.3d at 748. There need not be an indication that the destroyed evidence contains smoking-gun records for it to be considered prejudicial. *Stevenson,* 354 F.3d at 748.

6

On the contrary, the Eighth Circuit has held that destroyed evidence is prejudicial when it "may have provided [sic] helpful" to the party seeking the evidence. *Dillon*, 986 F.2d at 268 (quoting Magistrate Judge Kingsland's Report and Recommendation at *9 from the proceedings below). Importantly, when a recording is the "only recording" available as evidence, its spoliation is prejudicial. *Stevenson* 354 F.3d at 748.

The destroyed video recordings clearly prejudice plaintiffs. Plaintiffs allege that Defendants brutalized them, and Defendants failed to produce video evidence of that brutalization. That, alone, is enough to prove prejudice because the videos would be "helpful" to Plaintiffs' claims. *See Dillon*, 986 F.2d at 268. But the existence of prejudice is made even more clear by the fact that the destroyed evidence is the only video that would prove much of Plaintiffs' claims. As the Eighth Circuit has made clear, destruction of the only recording renders said destruction prejudicial. *Stevenson* 354 F.3d at 748. The nature of the evidence destroyed—video that would substantiate much of Plaintiffs' claims—requires a finding of prejudice.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant their motion for sanctions and make the adverse inference that Plaintiffs' allegations related to injuries that occurred on videos not produced by Defendants are true.

| | |
|---|---|
| Dated: June 10, 2025 | Respectful<br>/s/ Lena F. Masri<br>Lena Masri<br>Gadeir Abbas<br>Nadia Bayado<br>Catherine Keck<br>ldf@cair.com<br>Tel: (202) 742-6420<br>453 New Jersey Ave SE<br>Washington, D.C. 20003<br>CAIR LEGAL DEFENSE FUND<br><br>*Counsel for Plaintiffs* |

## STATEMENT OF CONFERENCE

On May 28, 2025, Plaintiffs' counsel met and conferred with Defendants' counsel about, among other things to resolve the dispute over the missing video footage. During this call, Plaintiffs' counsel notified Defendants' counsel of their intent to file a motion if the videos were not produced. Furthermore, Exhibit A evidences Plaintiffs' repeated good faith attempts to receive the videos without the Court's intervention.