UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| REGINALD BYRON CLEMONS, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 4:22-CV-00158-SRW ) ) |
| MICHELLE BASHAM, et al., | ) ) |
| Defendants. | ) ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' PARTIAL MOTION FOR JUDGEMENT ON THE PLEADINGS**

Defendants provide the following Memorandum in Support of their Motion for Judgement on the Pleadings:

**Legal Standard**

In a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), a court must "accept as true all factual allegations set out in the complaint" and "construe the complaint in the light most favorable to the plaintiff[s], drawing all inferences in [their] favor." *Ashley Cty., Ark. V. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (quoting *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)). This standard is fundamentally the same as the standard for determining whether to dismiss for failure to state a claim. A court should grant a motion for judgment on the pleadings "'when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law,' the same standard used to address a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Id.* (citations omitted).

1

A court must determine if a complaint contains sufficient factual matter, beyond mere labels and conclusions, when accepted as true to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While factual allegations are taken as true, conclusions masquerading as facts are not." *Barnes v. Oliver*, 18-CV-00093-RWS, 2018 WL 3239503 at *10 (E.D. Mo. July 3, 2018). Threadbare recitals of elements of a cause of action supported by mere conclusory statements do not suffice. *Iqbal*, 556 U.S., at 678. A claim is facially plausible when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *Id*. The complaint's factual allegations must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570.

## Argument

**1. It was not clearly established as of February 28, 2021, that MDOC's religious accommodation policy violated Plaintiffs' First Amendment rights, and thus the Individual Capacity Defendants named in Count I are entitled to Qualified Immunity and must be dismissed from this action.**

Defendants are governmental officials who, at all times relevant to this action, were performing their official duties. Qualified immunity protects government officials from liability while performing their official duties as long as their conduct does not violate a clearly established constitutional right. *Glover v. Paul*, 78 F.4th 1019, 1021 (8th Cir. 2023) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014). A

right is clearly established when, "any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* at 778–79.

Qualified immunity analysis is determined by "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant[s'] alleged misconduct." *Thurmond v. Andrews*, 972 F.3d 1007, 1011 (8th Cir. 2020) (internal citation omitted). Clearly established law is not defined at a high level of generality. *Id.* at 1012. For a right to be clearly established there needs to be existing precedent that "*must* have placed the statutory or constitutional question *beyond debate.*" *Id.* Courts may decide which of these two prongs of qualified immunity to analyze first. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236, (2009).

Defendants, without conceding the first prong, take up the second: it was not clearly established as of the date of this incident that enforcing MDOC's religious practice policy violated the Plaintiffs' rights to free exercise. Courts have reached varied results on the question of whether policies affecting inmates' ability to gather in a group for the five daily prayers substantially burden their Muslim faith. *Akbar v. Borgen*, 796 F. Supp. 1181, 1182 (E.D. Wis. 1992) (individual prayer was an appropriate alternative means for Muslim inmate to practice faith); *Ahmad v. Ehrmann*, 339 F.Supp.2d 1134, 1138 (D.Colo.2004) (in First Amendment analysis, weekly group prayer was a sufficient substitute for daily prayer in a room without a toilet), reversed on other grounds, 435 F.3d 1196 (10th Cir.2006).

3

Other courts have found that a policy allowing Muslim inmates to pray individually in their cells and together in scheduled services did substantially burden the inmates' religious beliefs, but that the policies met strict scrutiny regardless. *Jihad v. Fabian*, 680 F. Supp. 2d 1021, 1036 (D. Minn. 2010) (holding that the Minnesota DOC's policy prohibiting at-will congregational prayer did not violate the Plaintiff's rights under the First Amendment[1] because "significantly increased movement of prisoners plainly implicates the Defendants' overriding, and compelling interest, in prison safety and security, and no other, less restrictive means is available, since allowing the prisoners to move from their cells more frequently, during the day, imposes the same risks no matter to which area of the prison they should travel."); *Vega v. Lantz*, No. 304CV1215DFM, 2009 WL 3157586, at *9 (D. Conn. Sept. 25, 2009), on reconsideration, No. 3:04CV1215 DFM, 2012 WL 5831202 (D. Conn. Nov. 16, 2012) (holding that policy limiting the 5 daily prayers met the *Turner* standard and survived a First Amendment challenge).

The Eighth Circuit case law is a far cry from the level of clarity necessary to overcome the individual capacity Defendants' qualified immunity as to their enforcement of the challenged policy. The individual capacity Defendants did not violate clearly established law, and must therefore be dismissed from Count I.

---

[1] While the District Court here examined this claim in the context of a RLUIPA challenge, that Plaintiff also brought a First Amendment challenge, and the Court examined them together because both "require the same showing of 'substantial burden.'" *Jihad*, 680 F. Supp. 2d, at 1031-32,

4

## 2. Plaintiffs fail to state an equal protection claim on the basis of race, therefore the race-based equal protection claim (Count V) must be dismissed.

The allegations in Plaintiffs' Complaint highlight that the Plaintiffs' race had nothing to do with them being pepper sprayed. Rather, the allegations point to one singular reason: their failure to comply with orders. Plaintiffs allege that, after Defendant Basham instructed them to stop praying, and after she called for backup:

> 48. Upon hearing Defendant Basham call for back-up, Plaintiffs Kent and Smith stopped praying, stood up, and stepped away from the other plaintiffs who continued their prayer.
>
> * * *
>
> 52. Defendant Hart repeatedly screamed "Submit to restraints or get sprayed!" Guards filed in around the left side of the room. A few officers walked behind the Plaintiffs praying on the left side of the shoulder-to-shoulder row of praying men, ready to handcuff them and escort them away. Defendants then instructed the other incarcerees in the wing to return to their cells and lock down.
>
> 53. Plaintiffs Kent and Smith, who had already stopped praying, were allowed to walk to their cells and remain there.
>
> 54. Plaintiffs Holliman and Hood, seeing the pepper spray pointed at them, also stopped praying. They both stood and were cuffed by guards at the same time. Officers escorted Holliman, who is white—but not Hood, who is Black, like the rest of the Plaintiffs—out of range of the pepper spray attack that began moments later, saying "Let's get you out of here before you get sprayed."
>
> 55. After Plaintiff Holliman had been escorted to safety, Defendant Hart attempted to pepper spray Plaintiff Hood, who was in restraints and being pulled away. Hart missed and almost hit the guard standing behind Hood, splattering the orange spray on the wall behind.

Doc. 90. These allegations show that four Plaintiffs were not pepper sprayed: Holliman, Kent, Smith, and Hood. Plaintiff Holliman is white, and Plaintiffs Kent, Smith, and Hood are black. Plaintiffs do not show in their allegations that Holliman

5

was treated any differently than the other three who either complied with or attempted to comply with the officers' commands. To the extent that Plaintiffs rely on Defendant Hart's alleged attempt to pepper-spray Hood, who was still physically located in close proximity to the other, non-compliant Plaintiffs, such an inchoate act cannot form the basis of an equal protection claim, as no actual injury materialized. Thus, this claim fails in two respects: first, Holliman was treated no differently than the similarly situated group—the Plaintiffs who followed orders—and second, he thus received no different treatment on account of his race. Accordingly, Plaintiffs have failed to allege sufficient factual material demonstrating that there was either a racially-discriminatory purpose behind or racially-discriminatory effect of the Defendants' actions, and the race-based claim in Count V must be dismissed.

**3. Plaintiffs fail to state a claim as to Defendants Raymond and D. Vandergriff in their individual capacities for either alleged Eighth Amendment violation, and they must be dismissed from Count II and Count IV.**

Plaintiffs bring Count II alleging that the force used of MDOC officers on February 28, 2021 was excessive, and bring Count IV alleging they were denied medical treatment for their serious medical needs. Doc. 90. The use of force is alleged to have occurred in the early evening hours. *Id.* at ¶ 44 ("Sometime between 9:10 and 9:30 p.m., the men began praying"). The alleged denial of medical treatment for the pepper spray took place through the night of February 28 and into the morning of March 1. Notably, there is no allegation in the Fourth Amended Complaint that Defendants Matt Raymond (who was a Deputy Warden) or David Vandergriff (who was the Warden) were involved in the use of pepper spray or the transport from the

6

housing unit to administrative segregation, that either Defendant knew of a serious medical need and disregarded it, or that either was even present at the institution when these alleged violations occurred.

Chronologically, the next allegation after this incident against Defendant Raymond is that two days later, he held a meeting with the Muslim community within the prison. Doc. 90, ¶ 80. The only personal involvement of any kind alleged against Defendant D. Vandergriff is that "[i]n his individual capacity, upon information and belief, the Warden made the ultimate decision to suddenly transfer Plaintiffs Clemons, Holliman, Howard, Hood, and Kent as retaliation for praying together in the first place, and for filing grievances and lawsuits regarding the attack afterward." Notably, Plaintiffs have voluntarily dismissed their retaliations claims from Count III of their Fourth Amended Petition. Doc. 213.

Counts II and IV are brought against both of these Defendants in their individual capacities under 42 U.S.C. § 1983. Vicarious liability is inapplicable in § 1983 suits. *Marsh v. Phelps Cty.*, 902 F.3d 745, 754 (8th Cir. 2018). Rather, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). Here, as there is no conduct personally attributable to these Defendants relating to any use of force or denial of medical care, there can be no misconduct found in the Plaintiffs' Fourth Amended Complaint.

There is no personal conduct attributed to these Defendants alleged in the Fourth Amended Complaint which, if proven at trial, would show that they violated

7

any Plaintiffs' Eighth Amendment rights. As such, Plaintiffs fail to state a claim against them in Counts II and VI, and they must be dismissed from those Counts.

4. **Plaintiffs Kent and Holliman have been released from MDOC custody, and this Court lacks subject matter jurisdiction to adjudicate their claims for injunctive relief (Counts I, V, and VI).**

At the February 12, 2026 Initial Pretrial Conference, Plaintiffs' counsel informed the Court and Defendants' counsel that Plaintiffs Mark Holliman and Mandell Kent have been released from MDOC custody. These Plaintiffs assert claims against Official Capacity Defendants seeking injunctive relief (Counts I, V, and VI). Doc. 90.

A claim for injunctive relief is moot "absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). As these Plaintiffs are no longer incarcerated, they face no forward-looking risk of being exposed to the allegedly unconstitutional policies of MDOC, and lack standing to challenge the future application of those policies to them.

This Court can examine this development in the Article III context, in that Plaintiffs Holliman and Kent no longer have an ongoing controversy with MDOC regarding the future application of these policies, or in the equitable relief context, where they are unable to prove a required element of an injunction (future irreparable injury), but the outcome is the same regardless: these Plaintiffs are unable to proceed in seeking injunctive relief from Defendants due to their release from incarceration. *Id.* (holding that the case or controversy requirement of Article

8

III and the requirements of injunctive relief similarly act to prevent past harm alone from forming the basis for a claim of injunctive relief); *see also O'Shea v, Littleon*, 414 U.S. 488, 502 (1974) (same). As these Plaintiffs no longer have a live case or controversy under Article III, their claims for injunctive relief must be dismissed for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

## 5. Pursuant to the Stipulated Dismissal of Count III (Doc. 213), Defendants Doris Falkenrath and Bill Stange must be dismissed from this action.

Plaintiffs and Defendants filed a Joint Stipulation of Dismissal on February 24, 2026 (Doc. 213), dismissing Count III of the Fourth Amended Petition with prejudice. Defendants Doris Falkenrath and Bill Stange were both named only in Count III. Thus, Defendants Falkenrath and Stange must be dismissed from this action.

WHEREFORE Defendants move to dismiss Count I against the individual capacity Defendants; to dismiss the race-based claim in Count V; to dismiss Counts II and IV against Defendants D. Vandergriff and Raymond; to dismiss all injunctive relief claims brought against official capacity Defendants by Plaintiffs Kent and Holliman; and to dismiss Defendants Falkenrath and Stange from this action.

    Respectfully Submitted,

    **CATHERINE L. HANAWAY**
    Missouri Attorney General

    */s/ Scott J. Bower*
    Scott J. Bower, #75486 (MO)
    Isabelle McNally, #78386 (MO)
    Wolfgang A. Schaefer, #78191 (MO)
    Assistant Attorneys General

221 West High Street
Jefferson City, MO 65101
Phone: (573) 751-8108
scott.bower@ago.mo.gov
isabelle.mcnally@ago.mo.gov
wolfgang.schaefer@ago.mo.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2026, the foregoing was filed electronically via the Court's electronic filing system and was served by the operation of the court's electronic filing system on all counsel of record.

*/s/ Scott J. Bower*
Scott J. Bower
Assistant Attorney General

*/s/ Isabelle McNally*
Isabelle McNally
Assistant Attorney General

*/s/ Wolfgang A. Schaefer*
Wolfgang A. Schaefer
Assistant Attorney General
