**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| **REGINALD CLEMONS**, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>**MICHELLE BASHAM**, *et al.*,<br><br>*Defendants*. | Case No.: 4:22-cv-00158-SRW |

**PLAINTIFFS MOTION FOR AWARD OF ATTORNEYS FEES AND COSTS AGAINST DEFENDANTS**

Plaintiffs Reginald Clemons, Steven Stafford, Wendell Harris, Montrell Moore, PreMarcus Howard, Vincent Hood, Mark Holliman, and Mendell Kent, respectfully move for attorneys' fees and costs under 42 U.S.C. § 1988(b).

## BACKGROUND

Plaintiffs are each Muslim men who, at the time of the events giving rise to this action, were incarcerated with the Missouri Department of Corrections. In February 2021, Plaintiffs Clemons, Stafford, Harris, Moore, Howard, Hood, Holliman, and Kent resided at the Missouri Department of Corrections' Eastern Reception Diagnostic and Correctional Center (ERDCC) in Bonne Terre, Missouri. Because of their demonstrated good behavior at the facility, Plaintiffs were housed in the "honor" dorm at Housing Unit 4B. Each day in the Unit, Plaintiffs gathered at about the same time each night to pray in congregation, led by Plaintiff Stafford. They prayed in the open area of the unit, witnessed by inmates and correctional officers in the unit.

On February 28, 2021, at approximately nine in the evening, Plaintiffs gathered to pray in the same manner they had been practicing for months. After the prayer began, Officer Michelle Basham approached Plaintiffs and ordered them to stop praying. Unable to stop in the middle of prayer, the group continued. In return, Basham made an emergency call for backup, resulting in Defendants' pepper-spraying, at point blank range and with spray intended for outdoor riots, Plaintiffs Clemons, Stafford, Harris, Moore, and Howard. All Plaintiffs except for Kent were immediately taken to administrative segregation where they were left without access to water for seventeen hours. Plaintiff Stafford, viewed as the leader, was beaten both on the front porch of the honors unit and in his administrative segregation cell. Plaintiffs were not released from administrative segregation for ten days. Although being allowed back in the honors unit, each received a disciplinary mark on their record, which was later expunged.

In January 2022, Plaintiffs filed a pro se lawsuit against the facility. Counsel for Plaintiffs announced representation in February 2023 and filed Plaintiffs' Fourth Amended Complaint on October 8, 2024. Plaintiffs' Fourth Amended Complaint alleged violations under the First Amendment Free Exercise Clause, the Eighth Amendment's protections against unlawful force and deliberate indifference to medical needs, the Fourteenth Amendment Equal Protection Clause, the Religious Land Use and Institutionalized Persons Act (RLUIPA), and Missouri State Tort Law for Battery.[1] ECF 90. Parties litigated the case for three years, filing three versions of the complaint, litigating motions to dismiss, and

[1] The Fourth Amended Complaint additionally includes a claim for First Amendment Retaliation. Plaintiffs voluntarily dismissed that claim before trial.

undertaking substantial discovery. Plaintiffs additionally filed several motions based on discovery disputes with Defendants and Defendants' Counsel.

On March 9, 2026, following a weeklong trial, a jury returned a verdict in favor of Plaintiffs for their First, Eighth, and Fourteenth Amendment claims, and Plaintiff Clemons' state law claim for Battery. ECF 241. The jury awarded a collective $667,000 in damages. ECF 241. The Court filed an order sustaining Plaintiffs RLUIPA claim and ordering Defendants to treat congregations for religious and non-religious activity in the ERDCC honor dorms equally on March 27, 2026. ECF 249. Defendants filed a renewed Motion for Judgment as a Matter of Law on April 6, 2026, ECF 250, which was granted in part and denied in part on June 26, 2026. ECF 268. The Court's renewed Motion for Judgment as a Matter of Law did not affect the damages awarded to Plaintiffs. ECF 268 at 19.

Plaintiffs now seek attorneys' fees. *See* ECF 252 (Motion for Attorneys' Fees due thirty days from the Courts final judgment on Defendants' Renewed Motion for Judgment as a Matter of Law).

## <u>ARGUMENT</u>

### I. Plaintiffs are the prevailing party under Section 1988(b).

Plaintiffs are entitled to attorneys' fees for prevailing on their civil rights claims. Generally, both parties to a lawsuit must bear their own attorneys' fees. *Hatfield v. Hayes*, 877 F.2d 717, 719 (8th Cir. 1989). Several statutes, however, provide exceptions to this rule. *Id. E.g.*, 42 U.S.C. § 1988. Section 1988(b) permits prevailing parties to collect "reasonable attorneys' fees" for civil rights violations under several civil rights statutes, including Section 1983 and RLUIPA. 42 U.S.C. § 1988(b). Such fees should be recovered by prevailing parties "unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461

U.S. 424, 429 (1983). A court's discretion to deny attorney fees to prevailing parties is limited. *Hatfield v. Hayes*, 877 F.3d 717, 720 (8th Cir. 1989); *see Jenkins v. Missouri*, 838 F.2d 260, 267 (8th Cir. 1988) (the district court has limited discretion to determine whether special circumstances exist).

Plaintiffs are each prevailing parties under statutes included in the § 1988 fees rule. Plaintiffs "prevail" subject to the statute "if [he] succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing the suit." *Hatfield v. Hayes*, 877 F.3d 717, 720 (8th Cir. 1989) (citing *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983)). Plaintiffs are undoubtedly prevailing parties here. Each of the federal claims in the Fourth Amended Complaint fall under § 1988(b). 42 U.S.C. § 1988(b) (covering claims brought under §1983 and RLUIPA); ECF 90 ¶¶ 152-186. (bringing claims under § 1983 and RLUIPA). At the conclusion of trial, the jury found in favor of Plaintiffs for their First Amendment Free Exercise (Count I), Eighth Amendment Use of Force (Count II), Eighth Amendment Deliberate Indifference (Count IV), and Fourteenth Amendment Equal Protection (Count V) claims, awarding $667,000 in damages. ECF 241. The Court likewise found for the Plaintiffs on their RLUIPA claim (Count VI). ECF 249. Defendants Renewed Motion for Judgment as a Matter of Law failed to overcome these verdicts. ECF 268. As such, Plaintiffs are each prevailing parties entitled to attorneys' fees under § 1988.

## II. Plaintiff Clemons is entitled to attorneys' fees for his state battery claim.

Plaintiffs Clemons additionally prevailed on his State Battery Claim against Defendant Carl Hart and is entitled to attorney fees for those claims. Missouri state courts traditionally adhere to the "American Rule" which requires litigants to bear their own expenses except in "special circumstances." *Robinson v. City of Sikeston*, Mo., No. 1:19CV41 RLW, 2020 WL

588606, *12-13 (E.D.M.O Feb. 6, 2020) (citing *Barr v. Missouri State Dept. of Soc. Servs.*, 565 S.W.3d 683, 691 (Mo. Ct. App. 2018)). Attorneys' fees are permitted, however, where a defendant's conduct was "frivolous, reckless, [or] punitive." *Barr v. Missouri State Dept. of Soc. Servs.*, 565 S.W.3d 683, 691 (Mo. Ct. App. 2018). Here, evidence showed that Carl Hart sprayed Plaintiffs, including Reginald Clemons, with excessive amounts of pepper spray for praying. A jury found that his actions were intentional and, in a separate claim, constituted excessive force in violation of the Eighth Amendment. These circumstances demonstrate conduct that is at least reckless, but certainly punitive, sufficient to permit an award of attorneys' fees. *Cf. Barr v. Missouri State Dept. of Soc. Servs.*, 565 S.W.3d 683, 692 (Mo. Ct. App. 2018) (finding improper child services investigations sufficient to meet the "special circumstances" exception).

## III. Plaintiffs are entitled to $344,031.22 in fees using the lodestar method.

Plaintiffs are entitled to attorneys' fees using the lodestar method. As the prevailing party under Section 1988, Plaintiffs are entitled to fees based on an objective calculation which is "adequate to attract competent counsel, but . . . . . . do[] not produce windfalls to attorneys." *See Blum v. Stenson*, 465 U.S. 886, 888, 896-97 (1984). The Eighth Circuit employes the lodestar method to determine the appropriate attorneys' fees award. *See Vines v. Welspun Pipes, Inc.*, 9 F.4th 849, 855 (8th Cir. 2021). To calculate the lodestar, the court multiplies the number of hours worked by a reasonable hourly rate. *Id.*; *Bagsby v. St. louis Bd. of Police Com'rs*, 783 F. Supp. 1214, 1216 (E.D.M.O. 1992) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). A reasonable rate is typically calculated in terms of the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886 (1984). It makes no difference whether a nonprofit legal services organization or high-priced private counsel works on the

case, the rate is the same. *M.B. by Eggemeyer v. Tidball*, 18 F.4th 565, 569 (8th Cir. 2021) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). The PLRA's relevance to this case limits the lodestar calculations. 42 U.S. § 1997e(d).

**A. Prison Litigation Reform Act (PLRA) limits the availability of fees.**

The Prison Litigation Reform Act (PLRA) limits Plaintiffs' ability to obtain fees both in terms of total amount and hourly rate. The PLRA limits the amount of attorneys' fees to 150% of the amount awarded in damages. 42 U.S. § 1997e(d)(2); *Royal v. Kautzky*, 375 F.3d 720, 725 (8th Cir. 2004). Secondarily, Plaintiffs' attorneys are limited in their hourly rate to 150% "of the hourly rate established under section 3006A of title 18 for payment of court appointed counsel." 42 U.S. § 1997e(d)(3). The proper attorneys' fees for under section 3006A of title 18—the Criminal Justice Act (CJA)—depends on when the hours are completed. *See Salinas v. Clark*, No. 1:22-cv-00159-AGF, 2025 WL 355673, *3 (E.D.M.O. Dec. 11, 2025) (acknowledging the shifting PLRA rates) (citing United States District Court of the Eastern District of Missouri, Criminal Justice Act (CJA), Rates, *available at* https://www.moed.uscourts.gov/criminal-justice-act-cja). The jury awarded Plaintiffs in this case a total of $667,000 in damages. ECF 241. Because of the restrictions of the PLRA, Plaintiffs' fees recovery is limited to $1,000,500, or 150% of those damages. *See* 42 U.S. § 1997e(d)(2). Plaintiffs' Counsel's fee rates should be assessed at 150% the CJA rates for the time period of the work performed. *See* 42 U.S. § 1997e(d)(3).

**B. Plaintiffs are entitled to $287,853.43 in fees.**

Plaintiffs are entitled to Attorneys' Fees at 150% of the rates established by the CJA at the time of the work performed. Plaintiffs' Counsel worked on this case from February 2023

to July 2026. *See* Abbas Decl., Ex. A ¶ 16; *see* Ex. B-I, P. During that time the CJA established the following hourly rates for non-capital cases:

| Effective Date | Rate[2] |
|---|---|
| January 1, 2023 | $164.00 |
| January 1, 2024 | $172.00 |
| January 1, 2025 | $175.00 |
| January 1, 2026 | $177.00 |

These rates are lower than the rates published in Missouri Lawyers media and with Court determined rates for similar cases. *Sanderson v. Hanaway*, Case No. 4:23-cv-1242-JAR, 2026 WL 1510373, *2-3 (E.D.M.O. May 29, 2026) (awarding attorneys' fees of $650 per hour based on 2023 rates); *see Hyatt v. United States*, 174 Fed. Cl. 643, 660, 662 (2025) (assessing attorneys' fees up to $725 to be reasonable for local attorneys). Because the PLRA cap using the CJA already reflects a deflated rate from the prevailing market rate the Court would use for non-prison cases, *see, e.g.*, *id.*, and because of the substantial work and expertise involved in prosecuting the case, Ex. A ¶ 18, Plaintiffs' Counsel proposes the following fee awards at 150% the relevant CJA rate. *See* 42 U.S. § 1997e(d)(3); *see* CJA Attorney Hourly Rates and Mileage Rates, Eastern District of Missouri, available at https://www.moed.uscourts.gov/sites/moed/files/documents/attorneys/cja_rates.pdf (last visited July 24, 2026).

CAIR-LDF attorneys who worked on this matter and their spent hours are provided on the table below. Abbas Decl., Ex. A. The table summarized the reasonable value of the

[2] For the relevant dates the in-court and out-of-court rates were the same. CJA Attorney Hourly Rates and Mileage Rates, Eastern District of Missouri, available at https://www.moed.uscourts.gov/sites/moed/files/documents/attorneys/cja_rates.pdf (last visited July 24, 2026).

CAIR-LDF attorneys' work considering the limitations established under the PLRA and CJA. *See* 42 U.S. § 1997e(d)(3). Exs. B-I, P.

| CAIR LDF Attorney | Year | CJA Rate | Rate Sought | Hours | Total |
|---|---|---|---|---|---|
| Lena Masri | 2023 | $164.00 | $246.00 | 32 hours | $7,872 |
| | 2025 | $175.00 | $262.50 | 10 hours | $2,625 |
| Gadeir Abbas | 2023 | $164.00 | $246.00 | 11.7 hours | $2,878.20 |
| | 2024 | $172.00 | $258.00 | 9.7 hours | $2,502.60 |
| | 2025 | $175.00 | $262.00 | 15 hours | $3,930.00 |
| | 2026 | $177.00 | $265.00 | 113 hours | $29,945.00 |
| Justin Sadowsky | 2023 | $164.00 | $246.00 | 8.13 hours | $1,999.98 |
| | 2024 | $172.00 | $258.00 | 1.85 hours | $477.30 |
| | 2025 | $175.00 | $262.00 | 6.2 hours | $1624.40 |
| Kimberly Noe-Lehenbauer | 2023 | $164.00 | $246.00 | 124.6 hours | $30,651.60 |
| | 2024 | $172.00 | $258.00 | 45.5 hours | $11,739.00 |
| | 2025 | $175.00 | $262.00 | 3.4 hours | $890.80 |
| Nadia Bayado | 2025 | $175.00 | $262.00 | 62.1 hours | $16,270.20 |
| | 2026 | $177.00 | $265.00 | 128.55 hours | $34,065.75 |
| Catherine Keck | 2025 | $175.00 | $262.00 | 62.4 hours | $16,348.80 |
| | 2026 | $175.00 | $265.00 | 138.2 hours | $36,623 |
| Ahmad Kaki | 2025 | $175.00 | $262.00 | 15.9 hours | $4,165.80 |
| | 2026 | $177.00 | $265.00 | 93.1 hours | $24,671.50 |
| John M. Fossum | 2026 | $177.00 | $265.00 | 18 hours | $4,770.00 |
| Hufsa Hussein | 2026 | $177.00 | $265.00 | 4 hours | $1,060.00 |
| Total | | | | | $235,110.93 |

The Cross Law attorney who worked on this matter and his spent hours are provided on the table below. The table summarized the reasonable value of the Cross Law attorney's work considering the limitations established under the PLRA and CJA. *See* 42 U.S. § 1997e(d)(3). Ex. K.

| Cross Law Attorney | Year | CJA Rate | Rate Sought | Hours | Total |
|---|---|---|---|---|---|
| Ian Cross | 2026 | $177.00 | $265.00 | 166.5 | $44,122.50 |
| Total | | | | | $44,122.50 |

This district additionally permits recovery of compensation for work performed by paralegals, legal assistants, and law students at requested rates "less than that paid to appointed counsel." *See Goodwin v. Roper*, No. 4:06CV848 HEA, 2006 WL 2130456, *3 (E.D.M.O. July 28, 2006). CAIR-LDF legal assistant who worked on this matter and their spent hours are provided on the table below. Ex. K.

| Name | Title | Rate Sought | Hours | Total |
|---|---|---|---|---|
| Elizabeth Dexter | Paralegal | $100 | 86.2 hours | $8,620 |
| Total | | | | $8,620 |

**C. Plaintiffs are entitled to travel expenses and other out-of-pocket costs.**

Travel expenses and other out of pocket expenses that a law firm would normally bill to its client are more properly characterized as part of the attorneys' fee award under Section 1988. *Jenkins v. Kansas City Mo. Sch. Dist.*, 525 F.3d 682, 682 n.1 (8th Cir. 2008). Plaintiffs have additionally incurred the following expenses, Exs. L (CAIR-LDF), M (Cross Law), N (Cross Law Receipts):

| Firm | Costs |
|---|---|
| CAIR LDF | $53,600.98 |
| Cross Law, PLLC | $2,576.81 |
| Total | $56,177.79 |

**D. The hours on this matter were reasonably expended and should not be adjusted downwards.**

The hours on this matter were reasonably expended as this matter necessitated intensive factual investigation and filings. The docket reflects extensive efforts required to develop the factual and legal challenges at multiple stages of this case, including discovery disputes, protective orders, the preparation for and conduction of a multi-day jury trial. The hours expended are thus entirely reasonable considering the complexity of the case, the volume of discovery and discovery motion, and the fruition of trial.

The hours listed by attorneys were reasonably expended and the accompanying lodestar should not be adjusted downward by this Court. Because of the PLRA limitations on fees, Plaintiffs do not seek any multipliers of the lodestar value. The Court, however, may adjust the lodestar in either direction based on what hours were "reasonably expended" using the *Johnson* factors. *Vines v. Welspun Pipes, Inc.*, 9 F.4th 849, 855 (8th Cir. 2021) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974)). The *Johnson* factors allow for reasonable adjustments based on: (1) the time and labor required, (2) the novelty and difficulty of the questions presented, (3) the skill required by the attorney, (4) "the preclusion of other employment by the attorney due to acceptance of the case," (5) the customary fee for similar work, (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances, such as new counsel, (8) the amount involved and results obtained, (9) the experience and reputation of attorneys, (10) the "undesirability" of the case, (11) the length of professional relationship with the clients, and (12) awards in similar cases. *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974). Here, no applicable factor supports shrinking the lodestar value.

**The time and labor required on this matter was extensive.** Plaintiffs' Counsel worked on this matter from the Amended Complaint through trial. *See* ECF 15. As discussed in more detail above, this case was extraordinarily complicated. Over the course of almost four years, Plaintiffs' Counsel dedicated substantial time and efforts to successfully gather and develop facts for each Plaintiff and several defendants, file and respond to motions, engage in extensive discovery, and ultimately prepare for and try this case. See Ex. A ¶ 16.

**The skill requisite to perform the legal service properly was substantial.** *See Hensley*, 461 U.S. at 430 n.3. As described above, the nature of this action necessitated the use of out-

of-State attorneys with national practice and specialized skill in litigating religious accommodations and prison rights cases under RLUIPA and Section 1983. Ex. A ¶¶ 22-24. Plaintiffs' Counsel has extensive expertise and experience litigating prison rights cases. Exs. A (Abbas Decl.), O (Cross Decl.). CAIR-LDF specifically has developed expertise in the RLUIPA niche. *See* Ex. A ¶ 22. Likewise, federal trial practice requires a unique and specialized skillset.[3]

**Working on this matter precluded Counsel from taking other cases.** If the attorney's acceptance of the case precluded them from taking other lucrative work, this could be a factor in determining a reasonable fee. *Hensley*, 461 U.S. at 430 n.3. Both CAIR LDF and Cross Law forewent other employment and cases to dedicate the requisite time to this case. *E.g.*, Ex. A ¶ 20. CAIR LDF is a non-profit organization with limited resources. *Id.* ¶ 17. It does its best to represent as many clients with meritorious religious discrimination claims as possible. *See Id.* ¶¶ 13, 20. It is limited in the number of lawsuits it can file on behalf of clients. *Id.* ¶ 20. At all times during this lawsuit, CAIR LDF was at capacity and thus every minute spent working on this case was one less minute it could not spend working on another case and therefore rejecting a potential client. *Id.* Likewise, Cross Law PLLC joined this case when it could have taken other lucrative cases. *See* Cross Decl., Ex. O.

**This fee agreement was contingent.** The nature of the fee arrangement (e.g., hourly, contingent) can be a relevant factor. *See Hensley*, 461 U.S. at 430 n.3. Lead counsel for this case, CAIR LDF, is a 501(c)(3) non-profit corporation that represents clients on a pro bono basis. Abbas Decl., Ex. A ¶ 19. The fee arrangement in this matter was contingent. *See Id.*

[3] *See, e.g.*, Ibiere N. Seck, *Why Would Anyone Want to Practice in Federal Court?*, Advocate Magazine (May 2024), available at https://www.advocatemagazine.com/article/2024-may/why-would-anyone-want-to-practice-in-federal-court.

Further, since this case was primarily about changing policy—which it successfully accomplished—rather than simply maximizing financial returns, the value of the contingency was mostly in the fee award itself. *See id.* ¶¶ 14, 19, 24; *see* ECF 249.

**The results obtained were significant.** Plaintiffs succeeded in nearly every one of their claims both by jury verdict and judgments by this Court and obtained a jury award of $667,000 in total damages. ECF 241.

**All firms in this case have strong experience and reputation in the federal civil rights space.** The skill, desirability, and reputation of Plaintiffs' Counsel may be a factor in determining whether the lodestar is appropriate. *See Hensley*, 461 U.S. at 430 n.3. As discussed above, CAIR LDF has a strong reputation in both civil rights and prison rights practice area. *See* Ex. A ¶¶ 14, 18. CAIR LDF has a particularly strong reputation in resolving cases brought under RLUIPA. *See id.* ¶¶ 21-24. Likewise, Cross Law PLLC, has a premier civil rights practice and success rate trying prison rights cases. *See* Cross Decl., Ex. O. Cross Law PLLC has obtained awards of upwards of 300 million dollars for their clients. *E.g.*, Verdict Form, *Jackson v. CHS Tex., Inc., et al.*, Case 2:19-cv-13382-GAD-PTM, ECF No. 290 (E.D. Mich. Apr. 2, 2026).

**The case was "undesirable."** If a case was particularly unpopular or difficult to staff, this could be a factor. *See Hensley*, 461 U.S. at 430 n.3. This case was particularly unpopular given the Plaintiffs' status as incarcerated felons and Muslim identity. Additionally, and as described above, the policy-oriented nature of this case, and the significant inclusion of the lesser used RLUIPA statute necessary to obtain Plaintiffs desired relief made it extraordinarily difficult for Plaintiffs to find trusted, competent counsel. *See* Ex. A ¶ 24.

**Plaintiffs built a strong relationship with Counsel**, some for over several years. A longstanding relationship with the client may be a factor. *See Hensley*, 461 U.S. at 441 (Burger, C.J., concurring). Plaintiffs began working with CAIR LDF in 2023. *See* Ex. A ¶ 16. To date, they have represented Plaintiffs for over three years. *Id.* CAIR LDF has built strong and lasting relationships with each of the Plaintiffs in the Amended Complaint.

**Awards in similar cases are only marginally useful in this case.** Examining fee awards in comparable cases can provide guidance. *See Hensley*, 461 U.S. at 447 (referencing legislative history) (Brennan, J., concurring in part and dissenting in part). The PLRA cap, discussed *supra*, however, limits the usefulness of a comparison in this case. The PLRA award-based limits create a gross disparity in attorneys' fees award, as low as zero dollars (where no damages are awarded), to $1.50 where nominal damages are awarded—despite the stage of litigation. *See, e.g.*, *Foulk v. Charrier*, 262 F.3d 687, 704 (8th Cir. 2001). The proportional nature of the awards makes comparisons less useful to determine the reasonableness of the lodestar. Even then, several courts have awarded attorneys the full 150% of the jury award. *E.g.*, *Boesing v. Hunter*, No. 4:04CV1268-DJS, 2007 WL 148596, *3 (E.D.M.O. May 18, 2007) (awarding the full 150% allowed by the PLRA).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court award Plaintiffs $344,031.22 in attorneys' fees and costs.

Dated: July 27, 2026

Respectfully Submitted,

CAIR LEGAL DEFENSE FUND

/s/ Lena F. Masri
Lena Masri (1000019 DC)
lmasri@cair.com

Gadeir Abbas (81161 VA)*
gabbas@cair.com
Catherine Keck (90027891 DC)
ckeck@cair.com
Ahmad Kaki (101167 VA)
akaki@cair.com
453 New Jersey Ave SE
Washington, D.C. 20003
Tel: (202) 742-6420
Email: ldf@cair.com

*Mr. Abbas is admitted in VA. Practice limited to federal matters.

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all registered users of record in this case.

/s/ Lena Masri
Lena Masri